1   MORRISON & FOERSTER LLP
    Jessica L. Grant (CA SBN 178138)
2   Michael Burshteyn (CA SBN 295320)
    Ernesto Rojas Guzman (CA SBN 339964)
3   425 Market Street
    San Francisco, California  94105-2482
4   Telephone: 415.268.7000

5   MORRISON & FOERSTER LLP
    J. Alexander Lawrence (CA SBN 208715)
6   Tamara Wiesebron (CA SBN 5882287)
    250 West 55th Street
7   New York, New York  10019-9601
    Telephone: 212.468.8000

8
    Attorneys for Defendant
9   SNAP INC.

10

11              UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13

14  L.W., *minor child through her legal*      Case No. 3:22-cv-00619-
    *guardian Jane Doe, on behalf of herself*  LAB-MDD
15  *and all others similarly situated*
                                               **MEMORANDUM OF**
16                  Plaintiff,                 **POINTS AND**
                                               **AUTHORITIES IN**
17          v.                                 **SUPPORT OF SNAP INC.'S**
                                               **MOTION TO DISMISS**
18  SNAP INC., APPLE INC., and GOOGLE
    LLC,                                       Hon. Larry Alan Burns
19                                             Date Action Filed: May 2, 2022
                    Defendants.
20                                             Date:      August 29, 2022
                                               Time:      11:15 a.m.
21                                             Courtroom: 14A

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    Snapchat's ephemeral messaging encourages real-life conversations between friends and promotes online privacy. .............. 2

    B.    Snap actively combats sexual crimes online .......................................... 3

    C.    B.P. perpetrated heinous crimes against Plaintiff. ................................ 4

LEGAL STANDARD ........................................................................................... 5

ARGUMENT ....................................................................................................... 5

    A.    The CDA requires dismissal of Plaintiff's Complaint. ......................... 5

        1.    The CDA provides a complete defense to all of Plaintiff's causes of action. ...................................................................... 5

        2.    Pleading a TVPA or product liability claim does not avoid § 230 immunity. ................................................................... 12

            a.    FOSTA-SESTA's § 230 exception does not apply to Plaintiff's claims. ....................................... 12

            b.    Plaintiff's product liability theory does not overcome § 230. .............................................. 14

            c.    None of Plaintiff's other claims are subject to a § 230 carve-out or exception. ............................. 14

    B.    Plaintiff fails to state a claim upon which relief can be granted with respect to each cause of action. ........................................ 15

        1.    Seventh Cause of Action: Plaintiff's TVPA claims must be dismissed pursuant to Rule 12(b)(6). ................................. 15

            a.    Plaintiff cannot plausibly allege that Snap perpetrated sex trafficking in violation of TVPA § 1591. ..................................................................... 15

            b.    Plaintiff also fails to state a TVPA § 1595 violation because the allegations about Snap fall short of the actual or constructive knowledge standards. ................... 16

        2.    First Cause of Action: The Court should dismiss Plaintiff's strict product liability claim, which is based on intangible software services and moderation processes— not an actual product. ................................................................. 17

        3.    Second Cause of Action: Plaintiff has not—and cannot— plausibly allege the elements of duty or causation required to state a claim for negligence or "negligence per se." ............ 18

        4.    Third and Fourth Causes of Action: Plaintiff fails to state a claim under California's Unfair Competition Law, False Advertising Law, or for Fraudulent or Negligent Misrepresentations. ................................................................. 20

a.    Plaintiff fails to satisfy the Rule 9(b) pleading requirements for the UCL, FAL, and misrepresentation claims. ................................................ 20

b.    Plaintiff fails to state a claim for violations of the UCL, FAL, or any fraudulent or negligent misrepresentation cause of action. ................................. 21

5.    Fifth and Sixth Causes of Action:  Plaintiff fails to state a claim for unjust enrichment or injunctive relief. ..................... 25

CONCLUSION ................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Cases**

5

*Abuelhawa v. Santa Clara Univ.*,
   529 F. Supp. 3d 1059 (N.D. Cal. 2021)..................................................25

6

7

*Aguilar v. Hartford Accident & Indem. Co.*,
   No. CV 18-8123-R, 2019 WL 2912861 (C.D. Cal. Mar. 13, 2019) ..................19

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................5

9

10

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ...........................................................25

11

12

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009).....................2, 10

13

14

*Beckman v. Match.com, LLC*,
   668 F. App'x 759 (9th Cir. 2016)..................................................15, 19

15

16

*Beckman v. Match.com, LLC*,
   743 F. App'x 142 (9th Cir. 2018)......................................................19

17

18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................5

19

20

*Caraccioli v. Facebook, Inc.*,
   700 F. App'x 588 (9th Cir. 2017)......................................................14

21

22

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003).....................................................2, 6, 11

23

24

*Chowning v. Kohl's Dep't Stores, Inc.*,
   733 F. App'x 404 (9th Cir. 2018)......................................................25

25

26

*Circle Click Media, LLC v. Regus Mgmt. Grp., LLC*,
   743 F. App'x 883 (9th Cir. 2018)......................................................24

27

28

*Cole v. Wright Med. Tech. Inc.*,
   No. 2:20-CV-03993-RGK-E, 2020 WL 5846460 (C.D. Cal. July
   27, 2020) ................................................................................................ 22

*Corales v. Bennett*,
   567 F.3d 554 (9th Cir. 2009) ............................................................... 19

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................... 20

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016) ............................................................... 10

*Doe v. Kik Interactive, Inc.*,
   482 F. Supp. 3d 1242 (S.D. Fla. 2020) .......................................... 13, 16

*Doe v. Mindgeek USA Inc.*,
   No. SACV2100338CJCADSX, 2021 WL 5990195 (C.D. Cal. Dec.
   2, 2021) ................................................................................................ 13

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................ 17

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ............................................................... 10

*Doe v. Reddit, Inc.*,
   No. SACV2100768JVSKESX, 2021 WL 5860904 (C.D. Cal. Oct.
   7, 2021) ........................................................................................*passim*

*Doe v. SexSearch.com*,
   551 F.3d 412 (6th Cir. 2008) ............................................................... 23

*Doe v. SuccessfulMatch.com*,
   70 F. Supp. 3d 1066 (N.D. Cal. 2014)................................................. 24

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021)........................................*passim*

*Dyroff v. Ultimate Software Grp., Inc.*,
   No. 17-cv-05359-LB, 2017 WL 5665670 (N.D. Cal. Nov. 26,
   2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) ...................................... 11

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) ..........*passim*

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ................................................................ 5

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................ 23

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) (en banc) ......................................*passim*

*Fields v. Twitter, Inc.*,
   200 F. Supp. 3d 964 (N.D. Cal. 2016) ............................................... 10

*Fields v. Twitter, Inc.*,
   217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th
   Cir. 2018) ...................................................................................... 8, 11

*Fyk v. Facebook, Inc.*,
   808 F. App'x 597 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1067
   (2021) ................................................................................................. 12

*G.G. v. Salesforce.com, Inc.*,
   No. 20-CV-02335, 2022 WL 1541408 (N.D. Ill. May 16, 2022) ............... 8, 13

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ........................................................... 2, 10

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d
   Cir. 2019) .......................................................................................... 23

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ........................................................... 22

*HomeAway.com, Inc. v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2019) ............................................................... 9

*Intellect Art Multimedia Inc. v. Milewski*,
   24 Misc. 3d 1248(A) (Sup. Ct. 2009) ................................................. 18

*In re iPhone 4S Consumer Litig.*,
   637 F. App'x 414 (9th Cir. 2016) ....................................................... 21

*J. B. v. G6 Hosp., LLC*,
   No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug, 20,
   2020) ............................................................................................... 16, 17

*J.B. v. G6 Hosp., LLC*,
   No. 19-CV-07848-HSG, 2021 WL 4079207 (N.D. Cal. Sept. 8,
   2021), *motion to certify appeal granted*, 2021 WL 6621068 (N.D.
   Cal. Dec. 16, 2021) .................................................................... 13, 15, 16

*James v. Meow Media, Inc.*,
   90 F. Supp. 2d 798 (W.D. Ky. 2000) ............................................... 18

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
   No. 20-CV-1765-GPC(BGS), 2021 WL 148063 (S.D. Cal. Jan. 15,
   2021) ....................................................................................................... 22

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................... 20, 21

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ........................................................ 14

*King v. Facebook, Inc.*,
   No. 21-CV-04573-EMC, 2021 WL 5279823 (N.D. Cal. Nov. 12,
   2021) ................................................................................................ 12, 25

*L.H. v. Marriott Int'l, Inc.*,
   No. 21-22894-CIV, 2022 WL 1619637 (S.D. Fla. May 23, 2022) ................ 8, 13

*La Park La Brea A LLC v. Airbnb, Inc.*,
   285 F. Supp. 3d 1097 (C.D. Cal. 2017) ............................................. 6

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ..................................................... 24

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ...................................................... 6, 14

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
   No. 20-cv-06703-TSH, 2021 WL 151978 (N.D. Cal. Jan. 18, 2021) ................ 22

*Lucas v. City of Visalia*,
   726 F. Supp. 2d 1149 (E.D. Cal. 2010) ........................................... 17

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ................................................................. 5

*McLellan v. Fitbit, Inc.*,
    No. 3:16-cv-00036-JD, 2018 WL 2688781 (N.D. Cal. June 5, 2018) ............... 25

*Mendoza v. City of Los Angeles*,
    66 Cal. App. 4th 1333 (1998) ............................................................ 19

*Miller v. Easy Day Studios Pty Ltd.*,
    No. 20CV02187-LAB-DEB, 2021 WL 4209205 (S.D. Cal. Sept.
    16, 2021) ................................................................................. 3, 23

*M.L. v. craigslist, Inc.*,
    No. C19-6153 BHS-TLF, 2022 WL 1210830 (W.D. Wash. Apr. 25,
    2022) ..................................................................................... 7, 10

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) ................................................................ 24

*Nixon in Int. of Moore v. Buck*,
    No. CV1904610CJCSHSX, 2019 WL 6620504 (C.D. Cal. Sept. 11,
    2019) ...................................................................................... 20

*Quinteros v. InnoGames*,
    No. C19-1402RSM, 2022 WL 898560 (W.D. Wash. Mar 28, 2022) ................ 18

*Scripps Health v. nThrive Revenue Sys., LLC*,
    No. 19-CV-00760-H-BLM, 2019 WL 4193405 (S.D. Cal. Sept. 3,
    2019) ...................................................................................... 22

*Seaver v. Est. of Cazes*,
    No. 2:18-CV-712-DB, 2019 WL 2176316 (D. Utah May 20, 2019) ................. 8

*Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................ 6, 7

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................ 25

*Stewart v. Kodiak Cakes, LLC*,
    537 F. Supp. 3d 1103 (S.D. Cal. 2021) ................................................. 21

*United States v. Afyare*,
   632 F. App'x 272 (6th Cir. 2016) ........................................................... 15

*United States v. Miller*,
   982 F.3d 412 (6th Cir. 2020) ................................................................. 25

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................... 21

*Wilson v. Midway Games*, *Inc.*,
   198 F. Supp. 2d 167 (D. Conn. 2002) .................................................... 18

*Winter v. G.P. Putnam's Sons*,
   938 F.2d 1033 (9th Cir. 1991) ............................................................... 18

**Statutes**

18 U.S.C. § 1591 ...................................................................................... 16

18 U.S.C. § 1595 ............................................................................... *passim*

47 U.S.C. § 230 ................................................................................. *passim*

Cal. Bus. & Prof. Code § 17200 ............................................................. 21

Cal. Bus. & Prof. Code § 17204 ............................................................. 24

**Other Authorities**

*California Civil Jury Instructions* § 1200 .............................................. 17

**INTRODUCTION**

The circumstances of this case are undoubtedly tragic.  A criminal contacted Plaintiff via Instagram and solicited Child Sexual Abuse Material ("CSAM") from her.  As part of his scheme, the criminal targeted numerous victims and misused multiple online messaging applications, including Snapchat.  Snap takes combatting CSAM seriously and invests significant resources to stop criminal abuse of its platform, including detecting CSAM and reporting it to the authorities.  Snap abhors the crime and empathizes with Plaintiff.  But Plaintiff has not—and could not—assert any legal theory under which Snap would be liable to her.

Plaintiff's theories of liability—that Snap allegedly did not do enough to monitor, detect, and prevent third-party criminal activity on its platform—lie at the core of what Congress intended to prevent with the passage of Section 230 of the Communications Decency Act (the "CDA" or "§ 230").  The CDA aims to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation[.]"  47 U.S.C. § 230(b)(2).  In pursuit of that goal, § 230 "immunizes providers of interactive computer services against liability arising from content created by third parties."  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).  Imposing liability on technology platforms whenever criminals abuse those platforms would make it impossible to operate internet services (including email and other ephemeral communication services like web-based video calling or telephone services), eviscerate consumer privacy online, and undermine ongoing efforts to combat CSAM and other platform abuse.  The Ninth Circuit consistently rejects attempts to hold online platforms liable for the actions of criminals who misuse such platforms to further their criminal activity.  The Ninth Circuit also rejects attempts to hold online platforms liable for a claimed failure to prevent, detect, or remove harmful third-party content ranging from ISIS terrorist recruitment, drug

1    sales resulting in fatal overdoses, online bullying, and the type of sexual crimes at

2    issue here.[1]  No such claim has survived § 230 immunity, nor could it.

3        Plaintiff attempts to circumvent § 230 by alleging claims under the

4    Trafficking Victims Protection Act ("TVPA"), but these claims do not overcome

5    the narrow statutory exception to § 230 because there is no allegation—required by

6    courts considering such claims—that Snap "knowingly" participated in a sex

7    trafficking venture.  Snap did not, and Plaintiff has not and cannot allege otherwise.

8        Even setting aside § 230 immunity, all of Plaintiff's causes of action are also

9    subject to dismissal under Rule 12(b)(6) for failure to state a claim.  Plaintiff cannot

10   allege duty or causation required for negligence, given the many intervening

11   circumstances and criminal acts of third parties that caused her injury.  As to

12   Plaintiff's product liability claims, they do not relate to an actual product, but rather

13   to an assortment of intangible services, policies, processes, and acts.  None of

14   Snap's claimed "misrepresentations" are alleged with Rule 9(b)'s required

15   specificity, and they do not rise to the level needed to state claims for negligent

16   misrepresentation, fraud, or violations of California's unfair or false advertising

17   statutes.  Plaintiff's unjust enrichment and injunctive relief claims fail as well.

18       Because § 230 bars all of Plaintiff's claims, and Plaintiff cannot allege any

19   viable cause of action, the Court should dismiss Plaintiff's Complaint pursuant to

20   Rule 12(b)(6) without leave to amend.

21                           **BACKGROUND**

22   **A.    Snapchat's ephemeral messaging encourages real-life
            conversations between friends and promotes online privacy.**

23   Snap is the developer of the Snapchat mobile app, which allows users to

24

25   _____

26   [1] *Gonzalez v. Google LLC*, 2 F.4th 871, 895 (9th Cir. 2021) (ISIS recruitment); *Dyroff v.
     Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761
     (2020) (fatal overdoses); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009), *as
     amended* (Sept. 28, 2009) (sex crime issues)*; Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119
     (9th Cir. 2003) (sex crime issues).

27

28

communicate via text or "snaps"—photos and short videos taken in the Snapchat app.  Messages sent via Snapchat are, by default, ephemeral—once they are viewed by the recipients, they are deleted unless affirmatively saved.  Snapchat did not invent ephemeral communication—indeed, throughout history, almost all communication has been ephemeral (in-person conversations, telephone calls, etc.).  Snap strives to provide users the ability to have natural and spontaneous communications online—resembling real-life interactions as much as possible—without the pressure that everything they say and do online will "live forever."  Snap is committed to the notion that ephemeral messaging allows users the opportunity to feel comfortable expressing themselves, free from many of the features and harmful behaviors fueled by traditional social media platforms.[2]

Snapchat is also designed with privacy at its foundation.  Snap does not stockpile users' private messages.  It does not publicly showcase a timeline of everything users have ever posted.  Snap users can instead decide what to share with others and for how long they want to share and preserve it.  Snap does not force users to chronicle their lives with every utterance saved for posterity.  Users can elect to keep messages with friends, share to a wider audience, or allow their messages to expire.

## B.    Snap actively combats sexual crimes online.

Snapchat has over 300 million daily active users.[3]  Providing a safe place where users can express themselves is critically important for Snap.  While not

---

[2] *See* https://snap.com/en-US/safety-and-impact/page/2; https://investor.snap.com/files/doc_downloads/snapReports/2020_CitizenSnap_Report.pdf.  Plaintiff's Complaint incorporates and relies on the Snap.com and Snapchat.com websites to describe the functionality of the Snapchat platform and Snap's efforts relating to CSAM.  (Compl. fn. 16, 19, 21, 24, 26, 27.)  Thus, the Court can properly consider these as factual background in evaluating the motion to dismiss.  *See, e.g.*, *Miller v. Easy Day Studios Pty Ltd.*, 2021 WL 4209205, at *2 (S.D. Cal. Sept. 16, 2021) (allowing incorporation by reference and judicial notice of certain website pages cited in a complaint).

[3] *See* https://investor.snap.com/news/news-details/2022/Snap-Inc.-Announces-Fourth-Quarter-and-Full-Year-2021-Financial-Results/default.aspx.

CASE NO. 3:22-cv-00619-LAB-MDD
MPA ISO SNAP INC.'S MOTION TO DISMISS

necessary for the purposes of this motion, it bears noting that Snap "work[s] diligently to combat" the abuse of Snapchat by people trying to share child sexual assault material ("CSAM") by "evolving our capabilities to prevent, detect and eradicate abuse on our platform including [CSAM] and other types of child sexually exploitative content."[4]  Community safety is a "top priority" for Snap.  *Id*.

Snap's Trust and Safety teams use active technology detection tools, such as PhotoDNA robust hash-matching and Google's Child Sexual Abuse Imagery (CSAI) Match to identify known illegal images and videos of CSAM and report them to the U.S. National Center for Missing and Exploited Children (NCMEC), as required by law.  NCMEC then, in turn, coordinates with domestic or international law enforcement, as required.  *Id*.  While no tool or process can prevent all criminal conduct, Snap's efforts are highly effective.  For instance, in the second half of 2021, Snap "proactively detected and actioned 88% of the total CSAM violations reported," leading to the deletion of 198,109 accounts.[5]  Snap also partners with safety experts to report emergency escalations regarding CSAM and provides safety education, wellness resources, and reporting guidance to support the Snapchat community.[6]

### C.    B.P. perpetrated heinous crimes against Plaintiff.

According to Plaintiff's allegations, a criminal coerced her into sending and receiving CSAM after initially contacting her on Instagram.  (Compl. ¶¶ 2-3, 7.)  Plaintiff alleges that the criminal subsequently distributed that material to others through an app called Chitter, available on the Google and Apple mobile

---

[4] *See* https://snap.com/en-US/safety-and-impact/post/our-transparency-report-for-the-first-half-of-2021, cited in Complaint ¶ 47 n.16.

[5] *See* https://www.snap.com/en-US/privacy/transparency, cited in Complaint ¶ 50 n.19.

[6] *See* https://snap.com/en-US/safety-and-impact/post/our-transparency-report-for-the-first-half-of-2021, cited in Complaint ¶ 47 n.16.

CASE NO. 3:22-CV-00619-LAB-MDD
MPA ISO SNAP INC.'S MOTION TO DISMISS

1  application stores.  (*Id*. ¶¶ 20-22.)[7]  Law enforcement uncovered this scheme and

2  arrested the criminal perpetrator.  (*Id*. ¶ 23.)  He was criminally charged and pled

3  guilty.  (*Id*. ¶ 23.)  The crime is abhorrent, and no one disputes that the

4  circumstances are tragic or that the criminal punishment was warranted.  However,

5  Plaintiff cannot allege any viable claim that Snap's mere provision of a neutral

6  communications platform violated any statute or common law duty.

7                                    **LEGAL STANDARD**

8          Courts should dismiss complaints under Rule 12(b)(6) if the plaintiff either

9  fails to state a cognizable legal theory or has not alleged sufficient facts establishing

10  a claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

11  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

12  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017).

13          Conclusory allegations without more are insufficient to defeat a motion to

14  dismiss.  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *see also*

15  *Twombly*, 550 U.S. at 555 ("plaintiff's obligation to provide the grounds of []

16  entitle[ment] to relief requires more than labels and conclusions, and a formulaic

17  recitation of the elements of a cause of action will not do") (quotations omitted).

18                                    **ARGUMENT**

19  **A.      The CDA requires dismissal of Plaintiff's Complaint.**

20          **1.      The CDA provides a complete defense to all of Plaintiff's
                        causes of action.**

21  The CDA immunizes computer service providers, like Snap, from claims

22  arising from third-party content—even if that content is criminal.  47 U.S.C.

23  § 230(c)(1).  The "basic policy" behind the CDA is "to promote the free exchange

24  of information and ideas over the Internet" with "a minimum of government

25

26  ────────────
27  [7] Unlike Chitter, Plaintiff does not allege that Google or Apple should not have allowed Snapchat into their app stores, which underscores that Snapchat is a fundamentally neutral app, even if it is misused by a small number of its users.

28

1   regulation." *Carafano*, 339 F.3d at 1122.  The Ninth Circuit has held that even

2   "close cases"—which this is not—"must be resolved in favor of immunity, lest we

3   cut the heart out of section 230 by forcing websites to face death by ten thousand

4   duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly

5   assented to—the illegality of third parties." *Roommates.com*, 521 F.3d at 1174.

6   This is precisely what Plaintiff seeks to do here—hold Snap liable based on

7   allegations that it somehow "promoted or encouraged—or at least tacitly assented

8   to—the illegality of" B.P.'s criminal conduct on the platform.  Such claims cannot

9   survive § 230 immunity.

10        Ninth Circuit authority holds that "[i]mmunity from liability exists for '(1) a

11   provider or user of an interactive computer service (2) whom a plaintiff seeks to

12   treat, under a state law cause of action, as a publisher or speaker (3) of information

13   provided by another information content provider.'" *Dyroff*, 934 F.3d at 1097.  The

14   Court should decide this question at the motion to dismiss stage and not permit

15   "creative pleading" attempts to contort the allegations "outside the CDA's

16   purview." *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1105

17   (C.D. Cal. 2017) (citing cases).  Here, all elements required for § 230 immunity are

18   easily satisfied.

19        Snap qualifies as an interactive computer service.  *See*, *e.g.*, *Sikhs for Just.*

20   *"SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015)

21   (Facebook was an interactive computer service because it provided or enabled

22   computer access by multiple users to a computer service); *Doe v. Reddit*, *Inc.*,

23   2021 WL 5860904, at *3 (C.D. Cal. Oct. 7, 2021) (Reddit is an interactive

24   computer service since it provides a system that "enables computer access by

25   multiple users to a server"); *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir.

26   2021) (finding that Snap is an interactive computer service "given the CDA's

27   'expansive' definition of that term") (citation omitted).

28        The Complaint also treats Snap as a publisher for purposes of the alleged

6    CASE NO. 3:22-CV-00619-LAB-MDD
     MPA ISO SNAP INC.'S MOTION TO DISMISS

1  causes of action and seeks to hold Snap liable for third-party content—the

2  criminal's predatory messages and unlawful CSAM distribution scheme.  *See*, *e.g.*,

3  *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 897, n. 2 (N.D. Cal. 2021) ("undisputed"

4  that claims about CSAM sought to treat online platform liable for third-party

5  content) (citing cases).  And the Complaint itself makes clear that Snap "did not

6  create or develop the posts that led to [the plaintiff's harm]." *Dyroff*, 934 F.3d at

7  1098.  Rather, it was the criminal and Plaintiff who "posted" and "provided"

8  messages to each other.  *Id.*; *see also Facebook, Inc.*, 144 F. Supp. 3d 1088 at 1094

9  (content posted by a platform user was considered "provided by" the plaintiff user,

10  not the defendant online platform).  Plaintiff does not—and cannot—allege that

11  Snap "required users to post specific content, made suggestions regarding the

12  content of potential user posts, or contributed to making unlawful or objectionable

13  user posts." *Dyroff*, 934 F.3d at 1099.  Plaintiff concedes that the criminal created

14  the offending content as he sought out explicit images and conversations with

15  minors and coerced children into producing and transmitting CSAM.  (Compl.

16  ¶¶ 10-11, 15, 20.)  Thus, Plaintiff's claims must be dismissed pursuant to § 230.

17  *Dyroff*, 934 F.3d at 1099.

18  Plaintiff's theory hinges on the conclusory allegation that Snapchat's

19  ephemeral messaging platform supposedly provides a haven for sexual predators.

20  (Compl. ¶¶ 36-41.)  As a platform with over 300 million daily active users, there

21  will inevitably be some bad actors on Snapchat.  But the suggestion that Snap

22  provides a forum intentionally designed for miscreants cannot survive *Twombly*'s

23  plausibility requirement.

24  Courts in the Ninth Circuit and elsewhere have consistently held that

25  messaging systems fall squarely within § 230's protection. *M.L. v. craigslist*, *Inc.*,

26  2022 WL 1210830, at *14 (W.D. Wash. Apr. 25, 2022).  The court in *craigslist*

27  recently ruled that providing "neutral tools, such as . . . an ***embedded messaging***

28  ***system***[,] does not turn craigslist into a content creator or developer" in the context

1  of CSAM.  *Id. at *16.* (emphasis added).  And any claim that an online platform

2  falls outside of § 230's protections by providing a forum for confidential

3  communications has been rejected time and again.  *See, e.g.*, *Dyroff*, 934 F.3d at

4  1100 ("allegation that user anonymity equals promoting [criminal conduct] is not

5  plausible").  The Ninth Circuit in *Dyroff* recognized that "online privacy is a

6  ubiquitous public concern for both users and technology companies" in rejecting

7  claims that private conversation features suggested "collusion with . . . bad actors."

8  *Id*.  This is consistent with Snapchat's ephemeral messaging system, developed to

9  replicate, as much as possible, the nature of real-life conversations between friends.

10  In the CSAM context in particular, "courts have consistently found that § 230 bars

11  imposing liability on a provider of messaging or e-mail services for content and

12  activities conducted via those services."  *See G.G. v. Salesforce.com, Inc.*, 2022 WL

13  1541408, at *6 (N.D. Ill. May 16, 2022) (§ 230 precluded sex-trafficking claims

14  against Salesforce).[8]

15      Plaintiff recognizes that Snap actively combats CSAM on the platform, but

16  she nevertheless alleges that Snap did not do enough to stop criminals from

17  engaging in criminal activity on Snapchat.  (Compl. ¶¶ 42-52.)  Although not

18  relevant to this motion, it bears noting that Snap invests significant resources into

19  detecting CSAM and reporting instances of it to authorities, consistent with the

20

21

22  [8] *See also L.H. v. Marriott Int'l, Inc.*, 2022 WL 1619637, at *9 (S.D. Fla. May 23, 2022) (§ 230
23  immunized craigslist from sex-trafficking claims, notwithstanding claims based on "features like
craigslist's embedded messaging system (which allows for confidential communications between
24  buyers and sellers, along with the exchange of sexually explicit photographs)." ); *Doe v. Reddit,
Inc.*, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021) ("pseudonymous, private messaging apply
25  broadly . . . and do not play any special role in the illegality of the CSEM"); *Fields v. Twitter,
Inc.*, 217 F. Supp. 3d 1116, 1128 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018)
26  (dismissing claims involving direct messages because "the private nature of Direct Messaging
does not remove the transmission of such messages from the scope of publishing activity under
27  section 230(c)(1)") (citing multiple cases in California and other jurisdictions); *Seaver v. Est. of
Cazes*, 2019 WL 2176316, at *3 (D. Utah May 20, 2019) (dismissing claims pursuant to § 230
28  against anonymous peer-to-peer communications protocol where users posted about drugs).

industry's best practices.[9]  But this case is not about—and consistent with

§ 230, cannot be about—whether Snap's CSAM-prevention tools are sufficiently

robust.  The CDA was designed precisely to encourage online platforms to engage

in *voluntary* content moderation, *without* the specter of liability if their content

moderation efforts proved to be less than perfect.  Congress passed the law to

address the "grim choice" that websites faced whereby efforts they took to

"voluntarily filter some messages" could make them "liable for all messages

transmitted . . . that they didn't edit or delete."  *Roommates.com*, 521 F.3d at 1163.

This is reflected in the section title, "Protection for 'good samaritan' blocking and

screening of offensive material," and subsequent case law holding that

§ 230 "should be interpreted consistent with its caption."  *Id.*  Section 230's

legislative scheme is especially crucial given the impossibility of perfect content

moderation, given the billions of messages that are sent on leading social platforms

every day.  *Id.*  (noting that because "manual review of every message [is]

impossible" given the "sheer volume" of content, websites "forced to choose

between taking responsibility for all messages and deleting no messages at all"

would "choose the latter course").

Plaintiff's allegations, therefore, implicate the core of § 230 immunity.  The

Ninth Circuit has held that when determining whether § 230 immunity applies, it

looks to "whether the duty [alleged to have been breached] would necessarily

require an internet company to monitor third-party content."  *HomeAway.com, Inc.

v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019).  The Ninth Circuit has

also squarely held that "any activity that can be boiled down to deciding whether to

exclude material that third parties seek to post online is perforce immune under

section 230."  *Roommates.com*, 521 F.3d at 1170-1171.  Thus, § 230 immunity

---

[9]Snap explicitly details the measures it takes to combat criminal conduct, referenced in materials cited in the Complaint. *See* https://snap.com/en-US/safety-and-impact/post/our-transparency-report-for-the-first-half-of-2021, cited in Complaint ¶ 47 n.16.

1    applies to any claim that Snap "[f]ail[ed] to remove posts or verify identities."

2    *craigslist*, 2022 WL 1210830, at *16; *see also Fields v. Twitter, Inc.*, 200 F. Supp.

3    3d 964, 970 (N.D. Cal. 2016) ("courts have repeatedly described publishing activity

4    under section 230(c)(1) as including decisions about what third-party content may

5    be posted online").

6          The Ninth Circuit and other courts have already rejected a multitude of

7    attempts to hold online platforms liable for third-party criminal conduct.  In each

8    instance, § 230 immunized the platform from the asserted claims.

9        • **Terrorism.**  In *Gonzalez*, the Ninth Circuit held that § 230 shielded

10          Google from liability related to third-party content posted by the terrorist

11          group ISIS, because Google provided "neutral" tools and prohibited

12          content promoting terrorism, even if Google was unable to detect all such

13          content.  *Gonzalez*, 2 F.4th at 895.

14        • **Drugs crimes.**  *Dyroff* held that an online platform that provided

15          forums—including anonymous messaging capabilities—was immunized

16          by § 230 for third-party criminal content related to drug sales causing fatal

17          overdoses.  *Dyroff*, 934 F.3d at 1096.

18        • **Sex crimes.**  Revenge pornography did not give rise to liability for Yahoo

19          in the *Barnes* case, because "removing content is something publishers

20          do, and to impose liability on the basis of such conduct necessarily

21          involves treating the liable party as a publisher of the content it failed to

22          remove."  *Barnes*, 570 F.3d at 1103.[10]  And a victim of online sexual

23

---

24    [10] Other circuits are in accord.  The Fifth Circuit, for instance, held that negligence claims related
to sexual grooming of a child on Myspace were barred by § 230.  *Doe v. MySpace, Inc.*, 528 F.3d

25    413, 420 (5th Cir. 2008) ("No matter how artfully Plaintiffs seek to plead their claims, the Court
views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening

26    capacities.") (cited with approval in *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir.
2016) (holding § 230 immunity would apply where the "tort duty asserted . . . arise[s] from an

27    alleged failure to adequately regulate access to user content or to monitor internal
communications that might send up red flags about sexual predators")).

28

1    harassment that forced her to flee her home could not overcome

2    § 230 immunity.  *Carafano*, 339 F.3d at 1119.

3    Indeed, under Plaintiff's theory, no online communications platform could

4    function or exist.  The district court in *Dyroff* correctly observed that requiring an

5    online platform to stop crimes committed after people meet on the platform would

6    make "all social-network websites potentially liable whenever they connect their

7    members by algorithm" and have a "'chilling effect' on the internet by opening the

8    floodgates of litigation."  *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL

9    5665670, *14 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019).

10   Many internet-based ephemeral messaging services, like Zoom, Google Hangouts,

11   or Microsoft Teams, provide the capability to record all communications over the

12   platform, but like Snap, do not do so by default.  Plaintiff's theory of liability would

13   open up all of these platforms to liability for not *mandating* that communications be

14   recorded and for not preventing illegal communications that take place over the

15   platforms.

16   Plaintiff's theory would not only disregard § 230 and thereby preclude online

17   platforms from functioning, it would also undermine consumer privacy and

18   industry efforts to combat CSAM.  In the world Plaintiff's theory envisages, online

19   platforms would need to pre-screen, monitor, and censor users' private

20   communications *en masse*, eviscerating the privacy protections that Snapchat's over

21   300 million daily users currently expect.  Efforts to combat CSAM would be

22   disincentivized as well.  *See, e.g.*, *Fields*, 217 F. Supp. 3d at 1129 (noting that

23   absent § 230 protection, "[i]f content-specific controls are expensive enough to

24   institute, and the penalties for failure to adequately control objectionable content

25   are sufficiently severe, companies like Twitter will be encouraged to reduce their

26   services or stop offering them all together").

27   This is precisely why § 230's protection exists—to "promote the continued

28   development of the Internet[,]" to "encourage the development of technologies

which maximize user control over what information is received by individuals [and] families," and to "remove disincentives for the development and utilization of blocking and filtering technologies," while "ensur[ing] vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity" and other crimes. *Twitter*, 555 F. Supp. 3d at 897 (finding § 230 immunity for CSAM distribution aligned with the "policies underlying [its] enactment").

Thus, under the clear language of the statute, overwhelming case law, and underlying policy goals, § 230 immunizes Snap from all of Plaintiff's claims. Courts routinely dismiss such cases at the pleading stage, and with prejudice, even though "there will always be close cases where a clever lawyer could argue that something the website operator did encouraged the illegality." *Roommates.com*, 521 F.3d at 1174; *see also Fyk v. Facebook, Inc.*, 808 F. App'x 597 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1067 (2021) (affirming dismissal based on § 230 with prejudice); *King v. Facebook, Inc.*, 2021 WL 5279823, at *4 (N.D. Cal. Nov. 12, 2021) (where § 230 barred claims, dismissal with prejudice warranted because "amendment would be futile").

### 2. Pleading a TVPA or product liability claim does not avoid § 230 immunity.

#### a. FOSTA-SESTA's § 230 exception does not apply to Plaintiff's claims.

The "FOSTA-SESTA" exception provides that sex trafficking claims brought under the TVPA are not subject to § 230 immunity. *See* 47 U.S.C. § 230(e)(5)(A) (§ 230 immunity does not "impair or limit [] any claim in a civil action brought under section 1595 [of the TVPA], if the conduct underlying the claim constitutes a violation of section 1591 [of the TVPA]"). Not only does Plaintiff fail to state a TVPA claim against Snap, as shown below in Section (B)(1), Plaintiff's TVPA claims do not overcome § 230 immunity.

To fit within the exception to § 230 immunity, Plaintiff must allege that Snap

"knowingly" participated in a sex trafficking venture.  *See*, *e.g.*, *Reddit*, 2021 WL 5860904, at *7-8 (applying the "knowingly" standard, "instead of the more lenient," standard of "known or should have known," in dismissing claims against Reddit).  Here, Plaintiff does not allege that Snap participated in sex trafficking or had any contemporaneous knowledge of the criminal's bad acts.[11]  Instead, Plaintiff merely alleges in conclusory fashion that Snap knew that its technology was inadequate to detect newly generated CSAM, that Snap "attracted, solicited, and patronized users like B.P.," and that Snap "knew or should have known" that the messages being shared on the platform depicted CSAM.  (Compl. ¶ 172.)

Multiple courts have held that such allegations are not enough to overcome § 230 immunity, even if an online provider knew that sex trafficking incidents occurred on its platform.  *See*, *e.g.*, *Reddit*, 2021 WL 5860904 at *7-8; *Doe v. Kik Interactive*, *Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020) (plaintiffs must allege that the online platform "knowingly participated in the sex trafficking venture involving her[,]" and even though Kik "knew that other sex trafficking incidents occurred on Kik[,]" this "does not satisfy FOSTA's requirement"); *J.B. v. G6 Hosp., LLC*, 2021 WL 4079207, at *12 (N.D. Cal. Sept. 8, 2021), *motion to certify appeal granted*, 2021 WL 6621068 (N.D. Cal. Dec. 16, 2021) (noting that FOSTA-SESTA "limit[s] the scope of civil sex trafficking claims against interactive computer services" to "circumstances in which the defendant's conduct amounts to" knowing participation in sex trafficking in violation of section 1591).[12]

---

[11] Indeed, Plaintiff cites to evidence documenting Snap's efforts to *stop* sex trafficking on its platform and partnering with experts to protect its community.  (Compl. ¶¶ 47, 55-58.)

[12] *See also Marriott*, 2022 WL 1619637; *Salesforce.com*, 2022 WL 1541408; *but see Twitter*, 555 F. Supp. 3d at 922 (disagreeing with *Kik* and ruling that the "more stringent requirements" of actual knowledge did not apply to the plaintiff's claims against Twitter); *Doe v. Mindgeek USA Inc.*, 2021 WL 5990195, at *9 (C.D. Cal. Dec. 2, 2021) (finding constructive knowledge sufficient to overcome § 230 immunity based on allegations that Mindgeek created content and profited from child pornography).

### b. Plaintiff's product liability theory does not overcome § 230.

Plaintiff's attempt to shoehorn her claims into a product liability theory cannot circumvent § 230 immunity either.  (Compl. ¶¶ 127-132.)  Plaintiff will undoubtedly cite to *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), to argue that her claims bypass § 230 immunity.  But in *Lemmon*, which is factually and legally inapposite, the Ninth Circuit noted that the case presented "a clear example of a claim that simply does not rest on third-party content."  *Id.* at 1093.  The Ninth Circuit further made clear that § 230 immunity *will* apply where, as here, the plaintiff seeks to hold a provider of neutral online tools liable "for the content that third parties generate with those tools."  *Id.* at 1094.

Indeed, subsequent courts citing *Lemmon* have held that where the nature of the alleged design flaw involves a failure to prevent the posting of CSAM—like Plaintiff's allegations here—such claims arise from third-party content itself and are subject to § 230 immunity.  *See Twitter*, 555 F. Supp. 3d at 930.  The Court in *Twitter* distinguished *Lemmon*, noting that "[t]he facts here differ . . . from those in *Lemmon* because the nature of the alleged design flaw in this case—and the harm that is alleged to flow from that flaw—is directly related to the posting of third-party content" on the platform.  *Id*.  Because the plaintiffs sought to "impose liability on Twitter based on how well Twitter [] designed its platform to prevent the posting of . . . child pornography[,]" the allegations were tied to third-party content rather than a "design defect."  *Id*.  So too here.

### c. None of Plaintiff's other claims are subject to a § 230 carve-out or exception.

There is no CDA exception for Unfair Competition Law ("UCL") or False Advertising Law ("FAL") claims based on third-party content.  *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (upholding dismissal of UCL claim based on § 230, because its basis was third-party content); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (upholding dismissal of state law

1    consumer protection claims based on § 230's "expansive" protection).  Nor can

2    Plaintiff sidestep § 230 immunity via negligent or fraudulent misrepresentation

3    claims.  *Beckman v. Match.com, LLC*, 668 F. App'x 759 (9th Cir. 2016) (affirming

4    dismissal of misrepresentation claims pursuant to the CDA).

5         All these claims treat Snap as a publisher of third-party content and are thus

6    barred by § 230.

7         **B.    Plaintiff fails to state a claim upon which relief can be granted
          with respect to each cause of action.**

8

9         **1.    Seventh Cause of Action:  Plaintiff's TVPA claims must be
               dismissed pursuant to Rule 12(b)(6).**

10        Snap addresses Plaintiff's seventh cause of action for TVPA violations first,

11   because Plaintiff will likely argue that the statutory exception to § 230 applies.

12   That is incorrect.  But even if the CDA did not bar Plaintiff's TVPA claims—which

13   it does—the allegations do not satisfy the pleading standards for either § 1591 or

14   § 1595.

15        **a.    Plaintiff cannot plausibly allege that Snap perpetrated
               sex trafficking in violation of TVPA § 1591.**

16

17        Plaintiff cannot state a TVPA § 1591 claim because there is no plausible

18   claim that Snap engaged in sex trafficking.  *Twitter*, 555 F. Supp. 3d at

19   915 (dismissing § 1591 claim based on failure to allege direct sex trafficking

20   against Twitter).  Here, the Complaint merely recites the language of § 1591 (¶ 167)

21   and pleads in conclusory fashion that "Defendants knowingly . . . violated

22   18 U.S.C. § 1595."  (¶ 169).  This is nowhere near sufficient to allege that Snap

23   perpetrated the sex trafficking—and there is no way Plaintiff could plausibly allege

24   such an outlandish claim.  *See J. B.*, 2021 WL 4079207, at *12 (dismissing

25   § 1591 claim where plaintiff could not allege that craigslist was subject to

26   "perpetrator liability pursuant to § 1591") (citation omitted); *United States v.*

27   *Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (noting that § 1591 requires pleading

28   that the defendant committed an "'overt act' that further[ed] the sex trafficking

1    aspect of the venture").

2        **b.    Plaintiff also fails to state a TVPA § 1595 violation
         because the allegations about Snap fall short of the
3        actual or constructive knowledge standards.**

4        To state a claim for a civil remedy under TVPA § 1595, Plaintiff must allege

5    that Snap "*knowingly* . . . benefit[ed] . . . from [its] participation in a venture which

6    has engaged in [sex trafficking] in violation of [Section 1591(a)(1)]."  18 U.S.C.

7    § 1591(a)(2).  "[P]articipation in a venture" means "*knowingly* assisting,

8    supporting, or facilitating" sex trafficking.  *Id*. § 1591(e)(4).

9        Here, Plaintiff's allegations are conclusory and fall far short of the conduct

10   required to state a valid § 1595 claim.  (Compl. ¶¶ 168-173.)  Alleging that a

11   messaging app generally "knew that other sex trafficking incidents occurred on [the

12   platform]" does not "plausibly establish that Defendants knowingly participated in

13   the sex trafficking venture involving her[.]"  *See Kik Interactive*, 482 F. Supp. 3d at

14   1251.  District courts in the Ninth Circuit have held that because "websites," such

15   as Snap, "receive billions of posts[,]" that means that "interaction with a specific

16   venture may be hard to show."  *J. B. v. G6 Hosp., LLC*, 2020 WL 4901196, at

17   *10 (N.D. Cal. Aug, 20, 2020).  Snap, like other platform operators facing similar

18   claims, should "[]not be deemed to have participated in all ventures arising out of

19   each post on its site[.]"  *Id*.

20       The statute's "plain language" and legislative history confirms such a

21   "heightened pleading standard" requires alleging actual knowledge.  *J. B.*, 2021 WL

22   4079207, at *11.  Congress "narrowed" the "federal civil carve-out" so that the law

23   "targets bad actor websites"—not neutral platforms such as Snapchat used by

24   hundreds of millions of people, which some bad actor *users* may misuse to

25   perpetrate crimes.  *Id.*  Thus, to state a TVPA § 1595 claim, a plaintiff "must allege

26   facts supporting the inference that [Snap] made a tacit agreement with the sex

27   traffickers who victimized [p]laintiff[.]"  *J. B.*, 2020 WL 4901196, at *10.  In *J.B.*,

28   the court noted that the plaintiff had "not done so" against craigslist, and the same

holds true as to Plaintiff's claims against Snap. *Id*.

Even under the more permissive constructive knowledge standard articulated by some courts, Plaintiff fails to state a claim. In those cases, for instance, the plaintiffs alleged that a defendant's employee "reviewed, approved, and uploaded a video of a plaintiff[.]" *See Reddit*, 2021 WL 5860904, at *8 (distinguishing *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) for this reason). Here, Plaintiff does not allege that any Snap employee reviewed, approved, or uploaded any videos of her. Nor does Plaintiff allege (as in another case) that the defendant's employees refused to take down videos, despite being put on notice multiple times that the videos contained sexual images of children obtained without their consent. *Twitter*, 555 F. Supp. 3d at 922-23. Because Plaintiff does not, and cannot, allege that Snap employees reviewed, uploaded, or refused to remove the CSAM at issue, the Court should dismiss Plaintiff's conclusory and wholly insufficient claim for violations of TVPA § 1595.

### 2.   <u>First Cause of Action</u>:  The Court should dismiss Plaintiff's strict product liability claim, which is based on intangible software services and moderation processes—not an actual product.

To state a cause of action for strict product liability, a plaintiff must allege that the defendant manufactured, distributed, and sold a product. Judicial Council of California, *California Civil Jury Instructions* ("CACI") § 1200.[13]

Here, the Complaint does not plead that Plaintiff was harmed by a "product." Instead, Plaintiff refers to "services" provided by Defendants. (Compl. ¶ 127.) And throughout the Complaint, Plaintiff vaguely references a mix of Snap's

---

[13] Plaintiff must also allege and prove that the product did not perform as safely as an ordinary consumer would have expected it to based on reasonably foreseeable use or misuse, that Plaintiff was harmed, and that the product's failure to perform safely was a substantial factor in causing Plaintiff's harm. *See* CACI § 1200. The Complaint's allegations on these elements are conclusory as well—doing nothing more than parroting the legal elements of the claim. *See*, *e.g.*, *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) (dismissing product defect claim where bare assertion that the product suffered from a design defect was an insufficient legal conclusion).

software services, third-party CSAM detection tools from Google and Microsoft,
Snap's law enforcement cooperation processes, and Snap's content moderation
policies.  (Compl. ¶¶ 36, 47, 57, 60.)  These are all components of different services
and operational aspects of Snap's business.  They are not a singular product, which
requires dismissal of Plaintiff's strict product liability cause of action for failure to
state a claim.  Indeed, Plaintiff's only product liability allegations against Snap are
that it "provided" undefined "services" to "consumers," that its "implementation of
[third-party] CSAM detection systems" did not protect minors, and that its "safety
measures" were "not effective."  (¶¶ 127, 131, 132.)

       Such amorphous services, processes, and third-party tools are not a tangible
product for purposes of pleading product liability claims.  *See Quinteros
v. InnoGames*, 2022 WL 898560, at *7 (W.D. Wash. Mar 28, 2022), *on appeal*,
No. 22-35333 (9th Cir.) (appeal docketed Apr. 26, 2022) (holding on motion to
dismiss that video game was a series of software "service[s]" and not a "tangible"
"object" for purposes of product liability claims).[14]

       Thus, the Court should dismiss Plaintiff's product liability cause of action,
because there is no allegation of a defective product—just an amalgamation of
processes, services, policies, and actions.

       **3.    <u>Second Cause of Action</u>:  Plaintiff has not—and cannot—
              plausibly allege the elements of duty or causation required to
              state a claim for negligence or "negligence per se."**

       Negligence requires pleading a duty, breach of that duty, proximate

---

[14] *See also Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034-35 (9th Cir. 1991) (affirming
grant of summary judgment that alleged injury from ideas and expressions in a book not sufficient
for product liability claim); *Intellect Art Multimedia Inc. v. Milewski*, 24 Misc. 3d 1248(A), at *7
(Sup. Ct. 2009) (granting motion to dismiss noting that the court was "not persuaded that [a]
website" was a "product" and dismissing product liability claim); *Wilson v. Midway Games*, *Inc*.,
198 F. Supp. 2d 167, 172-73 (D. Conn. 2002) (granting motion to dismiss holding game was not a
product for purposes of products liability claims); *James v. Meow Media*, *Inc*., 90 F. Supp. 2d
798, 810 (W.D. Ky. 2000) (granting motion to dismiss holding "intangible thoughts, ideas, and
messages contained within games, movies, and website materials are not products for [the]
purposes of strict products liability").

1    causation, and harm. *Aguilar v. Hartford Accident & Indem. Co.*, 2019 WL

2    2912861, at *2 (C.D. Cal. Mar. 13, 2019) (applying *Corales v. Bennett*, 567 F.3d

3    554, 572 (9th Cir. 2009)). Conclusory and implausible allegations are insufficient.

4         Contrary to Plaintiff's allegation, Snap had no legal duty to prevent B.P.'s

5    criminal conduct. Plaintiff's theory amounts to a requirement that Snap must detect

6    and stop all instances of sexual misconduct or other crimes perpetrated by criminals

7    abusing its platform. The Ninth Circuit and district courts routinely dismiss such

8    negligence claims. *See*, *e.g.*, *Dyroff*, 934 F.3d at 1100–01. Holding that such a

9    duty existed would mean that no messaging, video conference, telephone service,

10   and, more generally, "[n]o website could function" or exist. *Id*. at 1100–01

11   (affirming dismissal and holding that online platforms do not have a duty to detect

12   and stop all instances of misconduct perpetrated by criminals abusing the platform).

13        Plaintiff also cannot allege the type of special relationship necessary for such

14   a duty, since Snap was nothing more than a provider of neutral communications

15   tools to Plaintiff. *Beckman v. Match.com*, *LLC*, 743 F. App'x 142, 143 (9th Cir.

16   2018) (no special relationship sufficient to create duty between online platform and

17   user who was sexually assaulted) (affirming dismissal). Plaintiff here, just like the

18   plaintiff in *Beckman*, fails to allege that her "ability to provide for [her] own

19   protection was limited by [her] submission to the control of [Snap] such that a

20   special relationship should be found[.]" *Id*. (quotations omitted).

21        Moreover, too many intervening factors break the chain of causation between

22   Snap and Plaintiff's alleged harm, including the criminal first contacting Plaintiff

23   on Instagram (Compl. ¶ 2) and perpetrating his illegal CSAM distribution scheme

24   (¶ 20). *See Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1342 (1998)

25   (proximate cause "limits the defendant's liability to those foreseeable consequences

26   that the defendant's negligence was a substantial factor in producing").

27        Nor can Plaintiff premise her negligence per se claim on violations of the

28   TVPA (¶ 141) because Plaintiff fails to state a claim for violation of any section of

the TVPA, as explained in Section (B)(1).  *See Nixon in Int. of Moore v. Buck*,
2019 WL 6620504, at *6 (C.D. Cal. Sept. 11, 2019) (dismissing negligence per se
claim based on a violation of California's Drug Dealer Liability Act because
negligence per se "does not provide a private right of action for violation of a
statute").

**4.    Third and Fourth Causes of Action:  Plaintiff fails to state a claim under California's Unfair Competition Law, False Advertising Law, or for Fraudulent or Negligent Misrepresentations.**

Plaintiff asserts a kitchen sink of representation-related allegations based on
purportedly misleading statements Snap made about its safety measures.  None of
these alleged representations supports Plaintiff's causes of action for violations of
California's UCL or FAL, fraudulent misrepresentation, or negligent
misrepresentations.  Due to the repetitive nature and overlap of Plaintiff's third and
fourth causes of action, Snap addresses them together.

**a.    Plaintiff fails to satisfy the Rule 9(b) pleading requirements for the UCL, FAL, and misrepresentation claims.**

The Court should dismiss Plaintiff's UCL, FAL, fraudulent, and negligent
misrepresentation claims under Rule 9(b) because the allegations lack requisite
specificity.  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009).
Rule 9(b) requires that a complaint "state with particularity the circumstances
constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The complaint must "identify
the who, what, when, where, and how of the misconduct charged, as well as what is
false or misleading about the purportedly fraudulent statement, and why it is false."
*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting
*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.
2011).  These heightened pleading standards "apply to claims for violations of the

1    . . . UCL" and FAL.  *Kearns*, 567 F.3d at 1125.[15]  They also apply to Plaintiff's

2    misrepresentation claims.

3         Plaintiff's claims about Snap's misrepresentations merely consist of

4    insufficient conclusory allegations that (1) "Snap declared that it has set up

5    protection systems to counter Snap [CSAM distribution]," and (2) Snap "explicitly

6    represents that it collects various user data for purposes of enhancing security and

7    to provide protection of users . . . but instead, Snap uses . . . data for advertisement

8    profit."  (Compl. ¶ 147.)  These bare assertions do not come close to meeting the

9    requirements of Rule 9(b).  None of these allegations identifies why Snap's

10    statements were false, fraudulent, or misleading.  *See Cafasso*, 637 F.3d at

11    1055 (Rule 9(b) requires pleading of "why [challenged statement] is false")

12    (citation and internal quotation marks omitted); *In re iPhone 4S Consumer Litig.*,

13    637 F. App'x 414, 415 (9th Cir. 2016) (dismissing FAL and UCL claims because

14    "Plaintiffs failed to describe how and why [defendant's] statements were fraudulent

15    or misleading"); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

16    2003) (rejecting allegations that statements were false or misleading because they

17    were "unsupported by details" and "not particular enough to satisfy Rule 9(b)").

18         While Plaintiff's FAL, UCL, fraudulent, and negligent misrepresentation

19    claims should be dismissed on this basis alone, each claim suffers from additional

20    fatal pleading deficiencies.

21
22            **b.**    **Plaintiff fails to state a claim for violations of the UCL, FAL, or any fraudulent or negligent misrepresentation cause of action.**

23         The UCL prohibits "any unlawful, unfair or fraudulent business act or

24    practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof.

25    Code § 17200.  "The UCL expressly incorporates the FAL's prohibition on unfair

26

27    [15] In cases like this one, courts examine the "FAL, and the fraudulent UCL prong together under Rule 9(b) and the 'reasonable consumer test.'"  *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1130 (S.D. Cal. 2021).

28

1    advertising as one form of unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d

2    1098, 1103 (9th Cir. 2013).  Pleading fraudulent and negligent misrepresentations

3    requires specifically alleging a particular misrepresentation, actual reliance on that

4    misrepresentation, and harm.  *Cole v. Wright Med. Tech. Inc.*, 2020 WL 5846460,

5    at *4 (C.D. Cal. July 27, 2020) (fraudulent misrepresentation standard); *Scripps*

6    *Health v. nThrive Revenue Sys., LLC*, 2019 WL 4193405, at *3 (S.D. Cal.

7    Sept. 3, 2019) (negligent misrepresentation standard) (internal citation and

8    quotations omitted).  UCL and FAL claims require pleading "actual reliance on the

9    allegedly deceptive or misleading statements" as well.  *Jerome's Furniture*

10   *Warehouse v. Ashley Furniture Indus., Inc*., 2021 WL 148063, at *5 (S.D. Cal.

11   Jan. 15, 2021) (internal citation omitted).  Plaintiff must allege that she "suffered

12   injury in fact and [] lost money or property as a result of the unfair competition."

13   *Hinojos*, 718 F.3d at 1103 (internal quotes omitted).

14       Plaintiff's UCL, FAL, and misrepresentation claims fail for four distinct

15   reasons, apart from the Rule 9(b) deficiencies.  The conclusory allegations (1) fail

16   to allege reliance on any allegedly false statement; (2) do not meet the "reasonable

17   consumer test"; (3) fail to allege economic injury; and (4) fail to plead risk of future

18   harm required for injunctive relief.

19       ***First***, Plaintiff does not plead that she read—much less relied upon—Snap's

20   purportedly false or misleading statements.  Courts have held that "reliance is an

21   essential element" under the fraudulent prong of the UCL, as well as Plaintiff's

22   misrepresentation claims.  *Jerome's Furniture Warehouse*, 2021 WL 148063, at

23   *5 (internal citations omitted); *Cole*, 2020 WL 5846460 at *4; *Scripps Health*, 2019

24   WL 4193405 at *3.

25       Here, Plaintiff merely alleges that a "reasonable user" would have relied on

26   defendants' misrepresentation "to the user's detriment."  (Compl. ¶ 149.)  This

27   boilerplate allegation is insufficient because it does not plead that *plaintiff* relied on

28   any misrepresentation allegedly made by Snap.  *See, e.g., Lona's Lil Eats, LLC v.*

1  *DoorDash, Inc*., 2021 WL 151978, at *11 (N.D. Cal. Jan. 18, 2021) (for "consumer

2  claims based on fraud under the UCL or FAL, a plaintiff must demonstrate actual

3  reliance on the allegedly deceptive or misleading statements") (citation and internal

4  quotations marks omitted).  Moreover, although Plaintiff notes that Snap

5  represented that it collects data to enhance safety and security, among other reasons

6  (Compl. ¶¶ 55-57; 147), Plaintiff fails to allege how any statement is false, or how

7  she personally relied on those statements.  On the contrary, Plaintiff cites Snap's

8  website, which explains that Snap *does* collect data to enhance safety and security,

9  and as a result of its "increased proactive detection capability," Snap "proactively

10  detected and actioned 70 percent of CSAM violations."[16]  None of these alleged

11  statements are false or misleading or could have been plausibly relied upon by

12  Plaintiff.  Indeed, multiple courts have held that generalized statements about safety

13  features are not enough to state a misrepresentation claim.  *Herrick v. Grindr*, *LLC*,

14  306 F. Supp. 3d 579, 597-98 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir.

15  2019) (dismissing misrepresentation claim regarding online platform's general

16  safety representations); *Doe v. SexSearch*.*com*, 551 F.3d 412, 417 (6th Cir. 2008)

17  (upholding dismissal of negligent misrepresentation claim where online terms

18  provided notice of danger and disclaimed responsibility for third-party criminal

19  acts).

20      ***Second***, even under the UCL's "reasonable consumer test," Plaintiff's

21  allegations fail.  This test requires Plaintiff to "show that members of the public are

22  likely to be deceived by the business practice or advertising at issue."  *Elias v.*

23  *Hewlett-Packard Co*., 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012).  Yet Plaintiff

24  alleges only that Snap made generalized statements about its security:  for example,

25  that Snap set up "protection systems," or that it collects user data "for purposes of

26  

27  [16] Plaintiff's Complaint incorporates both Snap.com and Snapchat.com (Fn. 16, 19, 21, 24, 26, 27), including parts of the website detailing Snap's "Work To Combat Child Sexual Abuse Material."  *See Miller*, fn. 1, *supra*.

28

1    enhancing security." (Compl. ¶ 147.)  As a matter of law, such general statements

2    cannot deceive consumers.  *See*, *e.g.*, *Murphy v. Twitter*, *Inc.*, 60 Cal. App. 5th 12,

3    40-41 (2021) (requiring actual reliance and rejecting UCL claims that a reasonable

4    consumer would rely on Twitter's representations about its service, because they

5    were "non-actionable" and not likely to deceive or mislead members of the public).

6        *Third*, Plaintiff fails to allege economic injury needed to establish standing

7    under the UCL and FAL.  The UCL permits an action only by a person who "has

8    suffered injury in fact and has lost money or property *as a result of* the unfair

9    competition."  *See* Cal. Bus. & Prof. Code § 17204 (emphasis added).  Plaintiff's

10   UCL and FAL allegations against Snap (¶ 147) allege harm, but not an economic

11   injury.  Courts reject UCL claims based on sexual misconduct in similar

12   circumstances.  *See*, *e.g.*, *Reddit*, 2021 WL 5860904, at *9 ("there is no indication"

13   that claims about sexual misconduct involved "lost money or property as a result of

14   Reddit's alleged conduct") (citation and internal quotation marks omitted); *Doe v.*

15   *SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1081 (N.D. Cal. 2014) ("[i]f Plaintiffs

16   cannot allege . . . that they lost money or property . . . , then they lack statutory

17   standing to sue under the UCL").

18       *Fourth*, Plaintiff does not and cannot allege facts establishing that she is

19   entitled to restitution or injunctive relief—the only remedies available under the

20   UCL.  In order "to have Article III standing for injunctive relief," Plaintiff "must

21   demonstrate" that she "is likely to suffer future injury" from the "allegedly

22   improper behavior of the defendant."  *Circle Click Media, LLC v. Regus Mgmt.*

23   *Grp., LLC*, 743 F. App'x 883, 884 (9th Cir. 2018) (citation omitted).  An allegation

24   of "intent" to use Snapchat in the future (Compl. ¶ 35) is "simply not enough to

25   satisfy Article III" standing requirements, particularly "without any description of

26   concrete plans, or indeed even any specification of when the some day will be[.]"

27   *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (affirming

28   lack of standing for injunctive relief claims under UCL and FAL) (citation and

internal quotes omitted).  Plaintiff's UCL claims must be dismissed for this reason, as well.[17]

### 5.    <u>Fifth and Sixth Causes of Action</u>:  Plaintiff fails to state a claim for unjust enrichment or injunctive relief.

Neither unjust enrichment nor injunctive relief is a standalone cause of action.  *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015) (quotations omitted) ("there is not a standalone cause of action for unjust enrichment"); *see also Abuelhawa v. Santa Clara Univ*., 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) ("California does not recognize a separate cause of action for unjust enrichment").  This requires dismissal.[18]

Moreover, Plaintiff's allegation that Snap somehow benefits from the presence of CSAM is implausible and conclusory.  Such content harms Snap as evident by Snap's efforts to delete such accounts and implement systems to protect users.  *United States v. Miller*, 982 F.3d 412, 419 (6th Cir. 2020) ("[c]ompanies like Google have business reasons to make . . . efforts to remove child pornography" because, as the company stated there, "[i]f our product is associated with being a haven for abusive content and conduct, users will stop using our services").

### CONCLUSION

For the foregoing reasons, Snap requests that the Court grant its Motion to Dismiss Plaintiff's Complaint without leave to amend.

---

[17] Plaintiff also wrongfully attempts to seek disgorgement damages.  But Plaintiff is not entitled to seek restitutionary or non-restitutionary disgorgement as a matter of law because the Complaint fails to allege that Plaintiff lacks an adequate remedy at law.  *See Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844-45 (9th Cir. 2020) (holding that a consumer was not entitled to equitable restitution for violation of UCL because she did not allege that she lacked an adequate remedy at law).  Additionally, non-restitutionary disgorgement is unavailable in UCL and FAL claims.  *See, e.g.*, *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018) (citing *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (2015)).

[18] *See also McLellan v. Fitbit, Inc*., 2018 WL 2688781, at *4 (N.D. Cal. June 5, 2018) ("The unjust enrichment claim is dismissed with prejudice, since unjust enrichment is a remedy and not an independent claim."); *King v. Facebook, Inc.*, 2021 WL 5279823, at *5 (N.D. Cal. Nov. 12, 2021) (dismissing injunctive relief claim because "it is not an independent cause of action").

1

2    Dated:      June 30, 2022              MORRISON & FOERSTER LLP

3

4                                          By:  /s/ Jessica L. Grant
                                                JESSICA L. GRANT
5
                                                Attorneys for Defendant
6                                               SNAP INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28