Natalie J. Morgan, State Bar No. 211143
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real
San Diego, CA 92130
Telephone: (858) 350-2303
Facsimile: (858) 350-2399
Email: NMorgan@wsgr.com

Brian M. Willen, State Bar No. 419730 (*pro hac vice*)
Vivek V. Tata, State Bar No. 5480470 (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: BWillen@wsgr.com
        VTata@wsgr.com

Attorneys for Defendant
Google LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.W., *minor child through her legal guardian Jane Doe, on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SNAP INC., APPLE INC., and GOOGLE LLC,<br><br>Defendants. | CASE NO.: 3:22-cv-00619-LAB-MDD<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>The Hon. Larry Alan Burns<br>Hearing Date: August 29, 2022<br>Time: 11:15 a.m.<br>Courtroom: 14A<br><br>Complaint Filed: May 2, 2022 |

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................. 1

FACTUAL & PROCEDURAL BACKGROUND .................................................. 1

ARGUMENT ....................................................................................................... 4

I.    PLAINTIFF LACKS ARTICLE III STANDING BECAUSE SHE FAILS TO ALLEGE THAT GOOGLE'S ACTIONS CAUSED HER INJURIES ... 4

II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER STATE LAW ............ 5

    A.    Plaintiff's Strict Liability Claim Fails As A Matter Of Law .............. 5

    B.    Plaintiff's Negligence Claim Fails As A Matter of Law ..................... 8

    C.    Plaintiff's UCL, False Advertising, And Misrepresentation Claims Fail ...................................................................................................... 10

        1.    Plaintiff's Fraud Allegations Do Not Satisfy Fed. R. Civ. P. 9(b) ............................................................................................ 11

        2.    Plaintiff Fails To Allege Reliance On Any Alleged Misrepresentation ....................................................................... 11

        3.    Plaintiff Lacks UCL And FAL Standing Because She Has Not Lost Money Or Property As A Result Of Any Alleged Misrepresentation ....................................................................... 13

    D.    Plaintiff's Remaining State Law Claims Fail As A Matter of Law ... 14

III.  SECTION 230 BARS PLAINTIFF'S STATE LAW CLAIMS ................. 14

    A.    Plaintiff Seeks To Hold Google Liable As A Publisher .................... 14

    B.    Plaintiff Cannot Evade Section 230 With Product Liability Claims . 16

IV.   PLAINTIFF'S TVPRA CLAIM MUST BE DISMISSED .......................... 17

    A.    Plaintiff's Sex Trafficking Claim Is Barred By Section 230 ............. 17

1.    FOSTA Only Exempts Claims Alleging That An Online Service Provider's Actions Constitute A Criminal Violation of Section 1591 ................................................................ 18

2.    Because Plaintiff Does Not Allege That Google Violated Section 1591, The FOSTA Exception Does Not Apply .......... 21

B.    Even If FOSTA Carved Out All Claims Under Section 1595, Plaintiff's Claim Against Google Still Fails Under A Negligence Standard ............................................................................ 22

CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amato v. Narconon Fresh Start*,
    2014 U.S. Dist. LEXIS 150724 (S.D. Cal. Oct. 23, 2014)....................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................ 10

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
    518 F. Supp. 3d 505 (D.D.C. 2021),
    *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022) ..................................................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................ 10

*Brown v. USA Taekwondo*,
    483 P.3d 159 (Cal. 2021).................................................................... 8, 9

*Carpenter v. Amazon.com, Inc.*,
    2019 U.S. Dist. LEXIS 45317 (N.D. Cal. Mar. 19, 2019) ........................ 8

*Castillo v. Seagate Tech., LLC*,
    2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sep. 14, 2016)...................... 8

*Coffee v. Google, LLC*,
    2021 U.S. Dist. LEXIS 26750 (N.D. Cal. Feb. 10, 2021)............... 14, 15

*Coffee v. Google, LLC*,
    2022 U.S. Dist. LEXIS 4791 (N.D. Cal. Jan. 10, 2022)................. 15, 16

*Doe v. Kik Interactive, Inc.*,
    482 F. Supp. 3d 1242 (S.D. Fla. 2020)...........................................*passim*

*Doe v. Mindgeek USA Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021)......................................... 19, 22

*Doe v. Red Roof Inns, Inc.*,
    2020 U.S. Dist. LEXIS 67141 (N.D. Ga. Apr. 13, 2020),
    *aff'd*, 21 F.4th 714 (11th Cir. 2021) .................................................24

*Doe v. Red Roof Inns, Inc.*,
 21 F.4th 714 (11th Cir. 2021) .................................................................. 23

*Doe v. Reddit, Inc.*,
 2021 U.S. Dist. LEXIS 129876 (C.D. Cal. July 12, 2021) ................................ 22, 23

*Doe v. Reddit, Inc.*,
 2021 U.S. Dist. LEXIS 235993 (C.D. Cal. Oct. 7, 2021),
 *appeal docketed*, No. 21-56293 (9th Cir. Nov. 30, 2021) ...................................... 19

*Doe v. Twitter*,
 555 F. Supp. 3d 889 (N.D. Cal. 2021),
 *appeal docketed*, No. 22-15103 (9th Cir. Jan. 21, 2022) ........................... 17, 19, 22

*Doe v. Uber Techs., Inc.*,
 79 Cal. App. 5th 410 (2022) ...................................................................... 9

*Durell v. Sharp Healthcare*,
 183 Cal. App. 4th 1350 (Ct. App. 2010) ................................................. 12

*Dyroff v. Ultimate Software Grp., Inc.*,
 934 F.3d 1093 (9th Cir. 2019) ............................................................. 8, 14

*Evans v. Hewlett-Packard Co.*,
 2013 U.S. Dist. LEXIS 115856 (N.D. Cal. Aug. 15, 2013) .................................. 15

*Flores v. Uber Techs.*,
 2022 Cal. Super. LEXIS 9648 (Super. Ct. L.A. Cnty. Mar. 22, 2022) ................ 6, 7

*Foyer v. Wells Fargo Bank, N.A.*,
 2020 U.S. Dist. LEXIS 121671 (S.D. Cal. July 10, 2020) .................................... 13

*Free Kick Master LLC v. Apple Inc.*,
 140 F. Supp. 3d 975 (N.D. Cal. 2015) ..................................................... 15

*G.G. v. Salesforce.com, Inc.*,
 2022 U.S. Dist. LEXIS 87616 (N.D. Ill. May 16, 2022) ............................... *passim*

*Ginsberg v. Google Inc.*,
 2022 U.S. Dist. LEXIS 30166 (N.D. Cal. Feb. 18, 2022) ............................ *passim*

*Gonzalez v. Google LLC*,
 2 F.4th 871 (9th Cir. 2021) ................................................................ 2, 15, 16

*Greenman v. Yuba Power Products, Inc.*,
    59 Cal. 2d 57 (1963) ........................................................................ 5

*In re LinkedIn User Privacy Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) .......................................... 12

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ............................................................ 11, 12

*J.B. v. G6 Hosp., LLC*,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021) ............... 18, 19, 20, 23

*J.C. v. Choice Hotels Int'l, Inc.*,
    2020 U.S. Dist. LEXIS 201073 (N.D. Cal. Oct. 28, 2020) ................... 24

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002) ............................................................ 7

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................ 11

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .................................................... 15, 16

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ........................................................ 8

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011) ................................................................ 13

*L.H. v. Marriott Int'l, Inc.*,
    2022 U.S. Dist. LEXIS 91756 (S.D. Fla. May 20, 2022) ............. 16, 18, 19

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) .................................................... 16, 17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 4

*M.L. v. Craigslist, Inc.*,
    2022 U.S. Dist. LEXIS 74884 (W.D. Wash. Apr. 25, 2022) ................. 16

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010) .......................................................... 9

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) ................................................................ 14

*O'Handley v. Padilla*,
    2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ............................................................ 5

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008),
     *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ............................................................ 11

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ............................................................................ 14

*Peviani v. Nat. Balance, Inc.*,
    774 F. Supp. 2d 1066 (S.D. Cal. 2011) .............................................................. 11

*Phillips v. Apple Inc.*,
    2016 U.S. Dist. LEXIS 53148 (N.D. Cal. Apr. 19, 2016) .................................. 12

*PICC Prop. & Cas. Co. v. UNIS, LLC*,
    2021 U.S. Dist. LEXIS 51842 (C.D. Cal. Feb. 1, 2021) .................................... 10

*Pierson v. Sharp Memorial Hospital, Inc.*,
    216 Cal. App. 3d 340 (1989) ................................................................................ 6

*Pirozzi v. Apple Inc.*,
    913 F. Supp. 2d 840 (N.D. Cal. 2012) ................................................................ 12

*Quinteros v. Innogames*,
    2022 U.S. Dist. LEXIS 55640 (W.D. Wash. Mar. 28, 2022) ................................ 6

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) ...................................................................... 22, 24

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ............................................................................................ 20

*Sanders v. Acclaim Entm't, Inc.*,
    188 F. Supp. 2d 1264 (D. Colo. 2002) ................................................................. 7

*Sloma v. Mercedes-Benz United States, LLC*,
    2009 U.S. Dist. LEXIS 140385 (C.D. Cal. July 14, 2009) ................................... 5

*Smith v. Tobinworld*,
   2016 U.S. Dist. LEXIS 83960 (N.D. Cal. June 28, 2016) ...................................... 13

*Smolen v. Deloitte, Haskins & Sells*,
   921 F.2d 959 (9th Cir. 1990) ...................................................................... 11

*Soule v. Gen. Motors Corp.*,
   882 P.2d 298 (Cal. 1994) ........................................................................ 5, 6

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................. 4

*United States v. Afyare*,
   632 F. App'x 272 (6th Cir. 2016) ............................................................ 21

*Wanetick v. Mel's of Modesto, Inc.*,
   811 F. Supp. 1402 (N.D. Cal. 1992) ........................................................ 10

*Wilson v. Midway Games*,
   198 F. Supp. 2d 167 (D. Conn. 2002) ........................................................ 7

*Winter v. G.P. Putnam's Sons*,
   938 F.2d 1033 (9th Cir. 1991) ................................................................... 7

## STATUTES

Cal. Bus. & Prof. Code § 17200 ....................................................................... 2

Cal. Bus. & Prof. Code § 17500 ....................................................................... 2

18 U.S.C. § 1591 ............................................................................... *passim*

18 U.S.C. § 1595 ............................................................................... *passim*

47 U.S.C. § 230 ................................................................................ *passim*

## RULES

Fed. R. Civ. P. 9(b) ..................................................................................... 11

Fed. R. Civ. P. 12(b)(1) ........................................................................... 1, 4, 25

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 4, 25

## INTRODUCTION

Plaintiff was sexually abused by a stranger, a now-convicted criminal who persuaded her to send him explicit pictures and videos of herself on Snapchat and then exchanged those images with others on a private messaging service called Chitter. What happened to Plaintiff is horrifying. But her effort to sue Google—in its capacity as the operator of an online app marketplace that distributed the Chitter mobile app along with millions of other apps—is without legal merit. Plaintiff lacks Article III standing to sue Google: the Complaint does not allege that the abusers who shared Plaintiff's images obtained the Chitter app from Google's marketplace or that Google's operation of its app store actually caused Plaintiff's injuries. Beyond that, Plaintiff's efforts to hold Google liable—whether on theories of product liability, fraud, or participating in a "sex trafficking venture"—fail as a matter of law. These theories do not state a viable cause of action, and they are also barred by 47 U.S.C. § 230 ("Section 230"), which protects Google from liability for disseminating or failing to remove the third-party Chitter app from its platform. Plaintiff's claims against Google should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff L.W. is a minor who was victimized by B.P., a third party who has pleaded guilty to sexual abuse and production and distribution of child pornography. Complaint ("Compl.") ¶ 23. B.P. connected with L.W. on Snapchat, and "coerced L.W. into sending him pornographic images and videos of herself." *Id.* ¶ 7. "B.P. then utilized another application called Chitter which allows strangers to connect and send anonymous messages and exchange photos and videos." *Id.* ¶ 20. He "traded [child sexual abuse material] [("CSAM")] depicting Plaintiff" with another Chitter user. *Id.* ¶ 22. Chitter was developed and is operated by a third party, not a defendant in this case. *Id.* ¶¶ 71, 74.

Defendant Google LLC ("Google") develops Android, an operating system for mobile phones, and operates Google Play, an online platform that allows Android users to download a vast array of mobile apps. *Id.* ¶ 87. Plaintiff does not allege that Google had any connection to or relationship with her, with B.P., or with anyone else directly involved

in her abuse. Nor does she allege that Google hosted or distributed any CSAM depicting her, or that Google had any role in creating or developing the Chitter app. The sole basis for Plaintiff's claims against Google is that Chitter was allegedly one of the millions of apps available for third parties to download on Google Play. Plaintiff claims Google is responsible "for enabling, recommending, and steering users on ... Google's Play Store ('Google Play') to the [sic] Chitter." *Id.* ¶ 67; *see also id.* ¶ 74. For example, the Complaint alleges that when Google Play users looked for apps related to "anonymous new people," Chitter was one of the apps included in the search results. *Id.* ¶ 99.[1] Missing from the Complaint is any allegation that B.P. (or anyone else involved in Plaintiff's abuse) obtained the Chitter app from Google Play.

Based on these allegations, Plaintiff sued Google, along with Defendants Snap and Apple, asserting various claims under California and federal law: strict liability for product design and defect (Count I); negligence in product design and defect (Count II); violation of California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17200, 17500 (Count III); fraudulent and negligent misrepresentation (Count IV); unjust enrichment (Count V); injunctive relief (Count VI); and violation of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, 1595 (Count VII). At bottom, these claims seek to hold Google responsible for hosting the Chitter app and for displaying it to users in Play's "You Might Also Like" feature (*id.* ¶ 84) and in search results within Play (*id.* ¶ 99).

Recognizing that such claims are barred by Section 230, *e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021), Plaintiff tries to plead around that immunity by framing her claims as grounded in products liability and fraud. For example, Plaintiff alleges that Google Play's systems for "provid[ing] 'customized search results' and ... 'detect[ing] illegal content'" "fail[] to serve [their] intended function[s] and [are] thus defectively

---

[1] Plaintiff's reference to allegedly "anti-competitive contractual restrictions" on Google Play (Compl. ¶ 106) is entirely irrelevant and appears to have been copied and pasted from a different complaint filed by a different law firm in a different case.

designed." Compl. ¶¶ 135-36. The supposed defect is that these systems "failed to undertake quality control" by not removing Chitter from Google Play and "still suggest[ing] Chitter to users." *Id.* ¶ 136. Plaintiff thus seeks to characterize Google's decisions about what messaging apps it should allow users to download, and what content to display to users, as a product defect.

Plaintiff also claims that by not removing the Chitter app, Google contradicted its written policies, giving rise to claims of "unfair and deceptive" "business activities." *Id.* ¶ 148. Plaintiff further alleges that Google misrepresented itself as protecting users from CSAM. *Id.* ¶ 153; *see also id.* ¶¶ 92-96 & nn. 39-44. For example, Google's policies say that it "prohibits apps that feature User Generated Content that contains sexual content and child endangerment material" (*id.* ¶ 95), and that it will remove apps that "develop a reputation among users of being a place where such content thrives" (*see id.* ¶ 96). Plaintiff does not allege that she read or relied on any of Google's policies—or even that she ever used Google Play or had any relationship with Google—though she alleges that a "reasonable user would have relied" on them. *Id.* ¶¶ 149, 154.

Plaintiff's sex trafficking claim alleges that all defendants "knowingly … violate[d] 18 U.S.C. § 1595" (*id.* ¶ 169), via "participation in a venture which [they] knew or should have known" amounted to sex trafficking. *Id.* ¶ 168 (quoting 18 U.S.C. § 1595(a)). In other words, Plaintiff claims that Google benefitted from an alleged sex trafficking venture by hosting and distributing the Chitter app on Google Play. *Id.* ¶¶ 91, 174.

Plaintiff also seeks to represent a putative "Google Class" including "All United States residents who, between May 2, 2012 and the date of judgment in this action, were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on a Computer Application sold or listed for download on the Google Play Store …." *Id.* ¶ 113. Plaintiff does not limit this putative class to those appearing in CSAM, or to those who might allege injury as a result of appearing in a video or image. Nor is the class limited to users whose images or videos were uploaded without their consent (or the consent of a parent or guardian). Instead,

Plaintiff's class definition includes individuals whose images or videos were uploaded to an application that happens to be available on Google Play, even if neither the putative plaintiff nor the person who uploaded the image or video to that third party application ever interacted with Play.

Google moves to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## ARGUMENT

## I.   PLAINTIFF LACKS ARTICLE III STANDING BECAUSE SHE FAILS TO ALLEGE THAT GOOGLE'S ACTIONS CAUSED HER INJURIES

At the outset, there is a fundamental Article III standing problem with Plaintiff's case. "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (internal quotation marks omitted); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable' to the challenged action of the defendant"). Here, the Complaint fails to establish any causal link between Plaintiff's injuries and Google's actions, and so she lacks standing to pursue her claims against Google.

Plaintiff alleges that B.P. used Snapchat to coerce Plaintiff into sharing sexually explicit images, which B.P. then shared on Chitter, inflicting psychological harm on Plaintiff. But these allegations have nothing to do with Google. The only alleged link to Google is that Chitter was available for download in Google Play. But there is no allegation that any of the third parties involved in Plaintiff's abuse obtained the Chitter app from Google Play. Accordingly, even taking the allegations in the Complaint as true, there is no causal connection whatsoever between Google's operation of Play and the use of Chitter to distribute CSAM depicting Plaintiff.

Simply put, Plaintiff has not alleged that her injuries were in any way caused by Google's alleged misconduct. If the bad actors did not use Google Play, Google's policies

could not possibly have played any role in bringing harm to Plaintiff. And without establishing any such link between Google's actions and her injuries, Plaintiff lacks Article III standing to assert any of her claims against Google. The Court need—and indeed should—go no further to dismiss all of Plaintiff's claims for lack of jurisdiction. *See, e.g., O'Handley v. Padilla*, 2022 WL 93625, at \*16 (N.D. Cal. Jan. 10, 2022) (dismissing claims for lack of standing where alleged harms were not "fairly traceable" to alleged conduct); *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 515 (D.D.C. 2021) ("Plaintiffs cannot satisfy the causation element of standing because all the alleged harms stem from the actions of parties not before the Court"), *aff'd*, 23 F.4th 1028, 1034-35 (D.C. Cir. 2022) ("appellants' allegations have not presented a plausible account of causation"); *Sloma v. Mercedes-Benz United States, LLC*, 2009 U.S. Dist. LEXIS 140385, at \*8 (C.D. Cal. July 14, 2009) (no Article III standing with respect to certain defendants where plaintiff failed to include sufficient allegations).

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER STATE LAW

Plaintiff asserts a variety of state law claims, including for alleged product liability and fraud. All of these claims fail, and on top of that Plaintiff's effort to plead around the immunity conferred by Section 230 does not work.

### A.    Plaintiff's Strict Liability Claim Fails As A Matter Of Law

The doctrine of strict product liability protects consumers from tangible products that cause harm. *See generally Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57 (1963). Here, however, Plaintiff seeks to apply it in an entirely unprecedented way: to intangible features of an online marketplace that allegedly helped facilitate the distribution of a third-party software messaging service that was misused by third-party criminals to share illegal content that caused Plaintiff harm. California's strict liability regime cannot be stretched so far.

***Plaintiff cannot state a claim for strict product liability because Google Play is a service, not a "product."*** Strict product liability applies to "[a] manufacturer, distributor, or retailer" of a defective "product." *Soule v. Gen. Motors Corp.*, 882 P.2d 298, 303 (Cal.

1994). A "product" is defined under California law as "*tangible* personal property distributed commercially for use or consumption"; "[s]ervices, even when provided commercially, are not products." *Flores v. Uber Techs.*, 2022 Cal. Super. LEXIS 9648, at *6 (Super. Ct. L.A. Cnty. Mar. 22, 2022) (quoting Restat. 3d of Torts: Prods. Liab., § 19(a), (b) (Am. L. Inst. 1998)) (emphasis added).

Plaintiff's strict product liability claim fails from the start because she alleges defects in what she concedes are intangible *services*, not products. That is clear from the Complaint, which alleges that "Google is strictly liable for its defectively designed *services*." Compl. ¶ 136 (emphasis added). And the alleged defects in these services are themselves entirely intangible, relating to specific algorithmic features of Google Play that help display or recommend apps. These features of an intangible service simply are not the kinds of *products* that can be the subject of strict liability defect claims. California courts have repeatedly refused to impose strict liability on similar service providers, including software developers and providers of telecommunications, healthcare, travel, accounting, and engineering services. *See Flores*, 2022 Cal. Super. LEXIS 9648, at *6-7 (holding that Uber's Driver Application is a service, not a product, and explaining that "California law recognizes a fundamental and reasonable basis for imposing strict tort liability on persons providing products but not upon those rendering services.") (citations omitted); *accord Pierson v. Sharp Memorial Hospital, Inc.*, 216 Cal. App. 3d 340, 345 (1989)) (collecting cases and explaining that a "product" is treated differently because it "is a physical article which results from a manufacturing process and is ultimately delivered to a consumer"); *Quinteros v. Innogames*, 2022 U.S. Dist. LEXIS 55640, at *19 (W.D. Wash. Mar. 28, 2022) (video game was "software as a service, not an 'object,' hence Plaintiff's product liability claim must fail as a matter of law").

The impropriety of extending strict liability is even stronger here because this case involves not just intangible software functions, but a platform for the distribution of *expressive content*—a private messaging app that allows users to exchange information with one another. Courts have consistently rejected efforts to hold the creators or exclusive

distributors of expressive content liable on product defect theories, even when that content is alleged to have led to horrifying real-world consequences. *See, e.g.*, *James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002) (violent video games and pornographic websites that allegedly inspired young man to commit mass shooting were "not sufficiently 'tangible' to constitute products"); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (violent video games accused of helping cause the Columbine mass shooting were intangible and not a "product" for purposes of strict liability law); *Wilson v. Midway Games*, 198 F. Supp. 2d 167, 173-74 (D. Conn. 2002) (same as to another video game, which allegedly caused a child to become addicted and stab his friend). As the Ninth Circuit has explained in declining to "expand products liability law to embrace the ideas and expression in a book": "We know of no court that has chosen the path to which the plaintiffs point." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991).

This case is therefore even more straightforward than those involving creators or distributors of expressive content: if those who actually create expressive content cannot be held liable under strict product liability theories, it is even more obvious that a marketplace where a general-purpose tool for exchanging private communications cannot be. Google Play, and its features that help arrange or allow users to search for the millions of software apps that can be downloaded from that platform, simply are not the kind of manufactured "products" that can give rise to strict liability claims.

***Plaintiff has not established that the supposedly defective features of Google Play caused her injuries.*** There is a separate problem with the strict liability claim: Plaintiff fails to allege that the purported defects in Google Play's features caused her any harm. *See Flores*, 2022 Cal. Super. LEXIS 9648, at *5 (strict product defect claims require a showing that "the defect causes injury"). As discussed above, Plaintiff does not allege that B.P. (or anyone else involved in Plaintiff's abuse) downloaded Chitter from Google Play, let alone that Google suggested the app to those abusers. In short, there is no allegation— much less a plausible one—that Google Play's supposed defects had any connection to the injuries she claims to have suffered. That rules out any product defect claim.

### B.    Plaintiff's Negligence Claim Fails As A Matter of Law

For her negligence-based product liability claim, Plaintiff must prove the standard elements of negligence: "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." *Carpenter v. Amazon.com, Inc.*, 2019 U.S. Dist. LEXIS 45317, at *17-18 (N.D. Cal. Mar. 19, 2019) (emphasis in original). Here, Plaintiff's allegations fail to establish any of these elements.

***No legal duty of care.*** Plaintiff claims that Google had a duty "to exercise reasonable care to prevent foreseeable and known harms from CSAM distribution and sexual grooming of children." Compl. ¶ 141. But "plaintiffs may not simply aver that a defendant owed them a duty." *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, at *7-8 (N.D. Cal. Sep. 14, 2016). And in general, "there is no duty to act to protect others from the conduct of third parties." *Brown v. USA Taekwondo*, 483 P.3d 159, 165 (Cal. 2021). California courts "have uniformly held the defendant owes no legal duty to the plaintiff" if "the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm." *Id.* at 166.

No duty exists here: Google, as the operator of Google Play, does not owe the entire world a legal duty to prevent the criminal misuse of third-party software apps by third-party users. The Ninth Circuit has squarely rejected the idea that a website has a duty of care even to its own users: "No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019); *accord Klayman v. Zuckerberg*, 753 F.3d 1354, 1359-60 (D.C. Cir. 2014) (no special relationship between Facebook and its users). That applies even more strongly here, where the alleged duty is not to protect users of Google Play, but rather third parties like Plaintiff, who does not claim to use any Google products or services. Google has no duty to protect legal strangers who have no alleged relationship with Google *at all*, let alone a special relationship analogous to the relationships "between parents and children, colleges and

students, employers and employees, common carriers and passengers, and innkeepers and guests." *Brown*, 483 P.3d at 216. Indeed, the Northern District of California recently dismissed a very similar claim against Google on exactly this basis. *Ginsberg v. Google Inc.*, 2022 U.S. Dist. LEXIS 30166, at *21-22 (N.D. Cal. Feb. 18, 2022) ("Google does not owe a general duty to the public base[d] on its operation of the Play Store.").

Nor does the Complaint allege that Google committed any act that increased the risk of Plaintiff's harm. A duty arises only if "the third party conduct was a necessary component of the [defendant's] conduct at issue." *Doe v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 427 (2022) (cleaned up). In *Doe*, the court found that Uber did not have a duty to protect rideshare users from third parties who falsely posed as Uber drivers (using decals they obtained from Uber's website), then abducted and sexually assaulted the riders they picked up. *Id.* at 429. The court held, "That assault and rape by third parties is a foreseeable result of a defendant's actions, or that this conduct may not have occurred absent the defendant's actions, is insufficient to establish" that the plaintiffs' harm was "a necessary component of the Uber business model." *Id.* at 427. The plaintiffs did not allege that Uber actually "'[took] … action to stimulate the criminal conduct'" and thus did not allege a duty. *Id.* (quoting *Melton v. Boustred*, 183 Cal. App. 4th 521, 535 (2010)).

So too here. Plaintiff does not claim that *any* CSAM (much less CSAM depicting Plaintiff) was distributed on Google's services or that the third parties who harmed her had any connection to Google. Beyond that, Plaintiff does not even try to allege (nor could she) that the distribution of CSAM on third-party apps is "a necessary component" of Google's operation of Play or that Google actively took steps to stimulate criminal behavior by third-party users. Finding a duty here would be akin to finding that an electronics store selling walkie-talkies has a duty to protect the world from harm caused by criminals who use walkie-talkies which *may* have been purchased at the store to commit a crime. The Court need go no further to reject Plaintiff's negligence claim.

***No plausible allegation of breach.*** Even if Google did owe Plaintiff a duty of care, Plaintiff's conclusory allegation of breach should not survive a motion to dismiss. *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Plaintiff alleges without elaboration that "All defendants breached [their] duty by providing defectively designed services, tools and products to Plaintiff and Plaintiff Class that render no protection from the known harms of CSAM distribution and online sexual grooming of children." Compl. ¶ 142. Beyond being boilerplate, this allegation is nonsensical: Plaintiff suggests that Google's breach was providing defectively designed services, tools, and products *to her*, but, as discussed, the Complaint nowhere alleges that Plaintiff ever used Play or any Google service or product. *See PICC Prop. & Cas. Co. v. UNIS, LLC*, 2021 U.S. Dist. LEXIS 51842, at *3 (C.D. Cal. Feb. 1, 2021) ("Aside from its conclusory allegation of breach uniformly applying to all Defendants and their agents and employees, [plaintiff] does not plead any facts indicating how [this defendant's] acts or omissions breached any duty…. This is insufficient.").

**No proximate causation.** In addition to her failure to allege breach of a legal duty, Plaintiff also fails to allege causation. The Complaint merely asserts that "Defendants' breach of duty was the proximate cause of [Plaintiff's] harm." Compl. ¶ 143. Again, this is a legal conclusion wholly unsupported by factual allegations that cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Moreover, as discussed above, Plaintiff does not link her injuries to Google's alleged wrongdoing. *See supra* Section II.A. Her injury is not merely "too attenuated from Defendants' alleged conduct to meet the proximate causation requirement," there is no alleged causal connection between Plaintiff's injury and Google at all. *Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1408 (N.D. Cal. 1992).

## C.    Plaintiff's UCL, False Advertising, And Misrepresentation Claims Fail

Plaintiff's UCL, FAL, and fraudulent and negligent misrepresentation claims sound in fraud: they are based on the allegation that Google's policies and developer guidelines are misleading. Compl. ¶ 148, 153. These claims fail for at least three different reasons.

1          1.   Plaintiff's Fraud Allegations Do Not Satisfy Fed. R. Civ. P. 9(b)

2          First, Plaintiff's fraud-based claims fail to satisfy Rule 9(b), which requires pleading

3    fraud with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir.

4    2009); *Peviani v. Nat. Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) (Rule

5    9(b)'s "heightened pleading standards apply to claims for violation of the UCL, FAL, or

6    CLRA that are grounded in fraud"). "[P]laintiffs seeking to satisfy Rule 9(b) must 'set forth

7    an explanation as to why the statement or omission complained of was false and

8    misleading.'" *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008),

9    *aff'd*, 322 F. App'x 489 (9th Cir. 2009).

10         While Plaintiff cites several statements from Google's Privacy Policy and Developer

11   Policy (*see* Compl. ¶¶ 92-97), she does not identify with particularity what allegedly made

12   these statements false or misleading. Nor could she. Nothing in the referenced statements

13   could be reasonably construed as a guarantee that no apps would ever be permitted on

14   Google Play if they could be used to distribute CSAM. Indeed, a recent case squarely

15   rejected similar claims against Google based on statements in its app developer guidelines.

16   The court explained that despite pointing to statements that Google does not allow apps

17   promoting violence or hate speech on Play, "Plaintiffs do not allege that Google promised

18   Android owners that the Google Play Store would be free of hate speech." *Ginsberg*, 2022

19   U.S. Dist. LEXIS 30166, at *19-20. Those statements "govern Google's relationship with

20   app developers, not with the general public," and failure to enforce those guidelines cannot

21   amount to an allegation that "those guidelines constituted fraudulent misrepresentations."

22   *Id.* The same is true here.

23         2.   Plaintiff Fails To Allege Reliance On Any Alleged Misrepresentation

24         Second, Plaintiff fails to allege that she read (or even knew about) Google's

25   allegedly misleading statements, much less that she actually relied on those statements,

26   which she must show for each of her fraud-based causes of action. *See In re Tobacco II*

27   *Cases*, 207 P.3d 20, 26 (Cal. 2009); *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 964

28   (9th Cir. 1990). Courts have consistently rejected fraud claims that suffer from this basic

defect. In *Pirozzi v. Apple Inc.*, for example, the court dismissed UCL, FAL, and misrepresentation claims where plaintiff "identifie[d] a number of representations made by Apple on its App Store website, in its privacy policy, and in the App Store Review Guidelines," but did not "provide the particulars of her own experience reviewing or relying upon" those statements, let alone "when she was exposed to the statements or which ones she found material to her decisions." 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012); *accord In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) ("Plaintiffs do not even allege that they actually read the alleged misrepresentation—the Privacy Policy—which would be necessary to support a claim of misrepresentation."); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (Ct. App. 2010).

Here, however, Plaintiff does not claim to have used Google Play at all, much less relied to her detriment on Google's representations about the apps that can be listed on Play or how it enforces those policies. At most, the Complaint alleges that unspecified putative class "Plaintiffs … conferred a tangible economic benefit on Defendants by signing up as users" in consideration for a service meant to include protection from CSAM—but Plaintiff nowhere alleges that she in fact signed up as a user of Google Play or Chitter. Compl. ¶ 157. Indeed, Plaintiff does not suggest that she made *any decisions at all* with regard to Google's products or services, let alone any decisions that caused her harm.

Plaintiff cannot cure this problem with further pleading. Reliance requires a showing that the defendant's alleged misrepresentations "'played a substantial part' in the plaintiff's decisionmaking." *Phillips v. Apple Inc.*, 2016 U.S. Dist. LEXIS 53148, at *16 (N.D. Cal. Apr. 19, 2016) (quoting *Tobacco II*, 207 P.3d at 26). But her injuries—which were inflicted by the coerced creation and subsequent sharing of her images by malicious third parties— simply have nothing to do with any decisions made by Plaintiff with respect to Google products, or with any statements (misleading or otherwise) supposedly made by Google. Because there is no way Plaintiff could plead reliance, her fraud-based UCL, FAL, and misrepresentation claims necessarily fail.

3.    <u>Plaintiff Lacks UCL And FAL Standing Because She Has Not Lost</u>
      <u>Money Or Property As A Result Of Any Alleged Misrepresentation</u>

Plaintiff also lacks standing to bring UCL and FAL claims. To establish standing under these statutes, a plaintiff must show (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*," and (2) "that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011).

Plaintiff cannot establish either element. First, her psychological injuries, though horrific, do not satisfy the economic injury requirement. *See, e.g.*, *Foyer v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 121671, at *35 (S.D. Cal. July 10, 2020) ("emotional harms are not 'money or property' for the purposes of statutory standing under the UCL"); *Smith v. Tobinworld*, 2016 U.S. Dist. LEXIS 83960, at *21 (N.D. Cal. June 28, 2016) (dismissing UCL claim for lack of standing where plaintiff suffered only "physical and psychological injuries"). And second, as discussed above, Plaintiff does not identify any causal link between Google and the abuse she suffered *at all*. Even if Plaintiff had alleged that B.P. downloaded Chitter from Google Play (which she does not), she fails to explain how *statements* in Google's Developer Policy would have prevented the abuse from occurring, let alone caused her to suffer some monetary injury.

Indeed, Plaintiff's causation story is even weaker than the one rejected in *Ginsberg*. 2022 U.S. Dist. LEXIS 30166. There, the plaintiffs claimed that Google violated the UCL's "unfair" prong by allowing a third-party messaging app on which users posted harmful content to be downloaded from Play in violation of Google's developer policies. *Id.* at *16. The court dismissed the claim for lack of standing, finding that "Plaintiffs have failed to allege facts demonstrating that they suffered an economic injury as a result of Google's allegedly unfair practice of failing to enforce its guidelines for app developers." *Id.* at *20. The plaintiff in *Ginsberg* showed at least some connection to Google: he had purchased an Android phone on which he could have accessed Play and downloaded the offending app. Here, Plaintiff does not allege that either she or B.P. ever used any Google product or

1  service at all. Because she has failed to show how Google's alleged misrepresentations

2  caused her any economic harm, Plaintiff's UCL and FAL claims must be dismissed.

### D.  Plaintiff's Remaining State Law Claims Fail As A Matter of Law

Plaintiff's token claims for unjust enrichment and injunctive relief also fail.

***Unjust enrichment.*** Plaintiff's unjust enrichment claim (Count V) alleges that she and class members "conferred a tangible economic benefit upon Defendants by signing up as users and giving up personal data and information … for using Defendants' service." Compl. ¶ 157. But this makes no sense as to Google: Plaintiff has not alleged that she used Google Play at all, much less that she enriched Google by doing so.

***Injunctive relief.*** Plaintiff styles Count VI as a claim for injunctive relief. Compl. ¶¶ 161-65. But "California does not recognize a standalone claim for injunctive relief." *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1161 (N.D. Cal. 2020).

## III.  SECTION 230 BARS PLAINTIFF'S STATE LAW CLAIMS

### A.  Plaintiff Seeks To Hold Google Liable As A Publisher

Even if Plaintiff had pleaded a viable cause of action, her claims against Google would run squarely into Section 230, which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The provision establishes "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (cleaned up). "Immunity from liability exists for (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Dyroff*, 934 F.3d at 1097 (cleaned up). Plaintiff's state law claims satisfy all three prongs, as courts have repeatedly found in applying Section 230 to bar similar claims against Google. *E.g.*, *Ginsberg*, 2022 U.S. Dist. LEXIS 30166, at *15 (dismissing claims against Google for distributing the Telegram private messaging app in Play); *Coffee v. Google, LLC*, 2021 U.S. Dist. LEXIS

26750, at *24 (N.D. Cal. Feb. 10, 2021) (same as to claims based on distribution of certain gambling apps in Google Play).

*First*, the "Google app store[] [is a] paradigmatic interactive computer service[], as [it is a] website[] from which customers can locate and download apps developed, written, and branded by third parties." *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 981 (N.D. Cal. 2015); *accord Coffee*, 2021 U.S. Dist. LEXIS 26750, at *13 (Google Play is an "interactive computer service" protected by Section 230).

*Second*, Plaintiff seeks to hold Google liable for making the Chitter app available on Google Play—or for failing to remove it. That is core publisher conduct. *See, e.g.*, *Ginsberg*, 2022 U.S. Dist. LEXIS 30166, at *9 ("Google's alleged activity boils down to deciding whether to exclude material (Telegram) that a third party seeks to place in the online Play Store. Thus, Plaintiffs' claims inherently require the Court to treat Google as the publisher of content provided by another."); *Coffee v. Google, LLC*, 2022 U.S. Dist. LEXIS 4791, at *14 (N.D. Cal. Jan. 10, 2022) ("Plaintiffs were seeking to treat Google as publisher, as Plaintiffs wanted Google to screen all apps submitted for inclusion in the Play Store."); *Evans v. Hewlett-Packard Co.*, 2013 U.S. Dist. LEXIS 115856, at *8-9 (N.D. Cal. Aug. 15, 2013) (plaintiffs sought to treat defendant as a publisher based on distribution of app in its app store); *accord Gonzalez*, 2 F.4th at 892 ("Publishing encompasses any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online"—including "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content.").

*Third*, Plaintiff seeks to hold Google liable based on information provided by a third party: either the third-party developer of the Chitter app, or B.P., the third-party abuser who distributed Plaintiff's CSAM. Compl. ¶¶ 71, 74. The Complaint does not suggest that Google was involved in the creation or development of Chitter—just one of millions of apps available on its store—much less the creation of the CSAM that led to B.P.'s criminal conviction. An online service "does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent

choosing online." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016). Thus, in a similar case brought by a minor against an anonymous messaging app, the court explained that Section 230 applies because the relevant third-party information (the harmful videos and identifying information exchanged by the minor and the abuser) was supplied by third parties—not by the app itself, much less the app *store*. *Id.*; *accord Ginsberg*, 2022 U.S. Dist. LEXIS 30166, at *13 ("Plaintiffs do not allege that Google helped to develop Telegram or created any of the online content giving rise to this lawsuit.").

Nor did Google create or develop the relevant content by displaying Chitter in search results or content-suggestion features. As the Ninth Circuit has made clear, a service "is not transformed into a content creator or developer by virtue of supplying 'neutral tools' that deliver content in response to user inputs." *Gonzalez*, 2 F.4th at 893; *see also id.* at 894-96 (applying Section 230 to "allegation that Google's algorithms recommend ISIS content to users"); *Kimzey,* 836 F.3d at 1271 ("proliferation and dissemination of content does not equal creation or development of content"); *accord L.H. v. Marriott Int'l, Inc.*, 2022 U.S. Dist. LEXIS 91756, at *34 (S.D. Fla. May 20, 2022) ("[A] website does not 'create' or 'develop' content simply by providing tools that make user-created content available and usable to others."); *M.L. v. Craigslist, Inc.*, 2022 U.S. Dist. LEXIS 74884, at *46-47 (W.D. Wash. Apr. 25, 2022) (same). In short, what the court said in *Coffee* applies equally here: "[T]he conduct alleged in the FAC amounts to Google's publication of third-party apps in the Play Store and provision of neutral tools and services to all developers across the Google Play platform. This alleged conduct falls squarely within the protection of § 230." 2022 U.S. Dist. LEXIS 4791, at *20.

**B.     Plaintiff Cannot Evade Section 230 With Product Liability Claims**

Plaintiff may invoke the Ninth Circuit's ruling in *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), to argue that Section 230 does not bar her product liability claims. But *Lemmon* is inapposite here. That case was about a product feature that allegedly caused users to engage in dangerous real-world behavior. The plaintiff was killed when driving

recklessly while using Snap's "Speed Filter." The claim against Snap thus did not result from or relate to third-party content posted on its service.

*Lemmon* did not suggest that product liability claims are categorically exempt from Section 230. Far from it: the Ninth Circuit was careful to explain that its holding was premised on the fact that Snap's alleged duty "ha[d] nothing to do with its editing, monitoring, or removing of the content that its users generate through Snapchat." *Id.* at 1092. The court emphasized that the plaintiffs were ***not*** seeking to hold Snap liable for exposing them to "Snapchat-user content (e.g., snaps of friends speeding dangerously) that may have incentivized the boys to engage in dangerous behavior." *Id.* at 1093 n.4.

This case is entirely different. The duty that Plaintiff seeks to impose on Google—to not host, make available, or suggest third-party apps like Chitter—has everything to do with Google's publication, monitoring, and removal of such apps. Plaintiff seeks to hold Google liable for the harm allegedly caused by the dissemination of content on its service (the Chitter app) and the publication of content on that app (CSAM depicting Plaintiff). Claims seeking liability for the harms caused by the publication or dissemination of online content are barred—even if couched under the rubric of products liability. *See, e.g.*, *Doe v. Twitter*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021) (distinguishing *Lemmon* and applying Section 230 to dismiss products liability claim where the alleged design flaw "is directly related to the posting of third-party content on Twitter.").

## IV.  PLAINTIFF'S TVPRA CLAIM MUST BE DISMISSED

### A.  Plaintiff's Sex Trafficking Claim Is Barred By Section 230

Finally, Plaintiff asserts a single claim under federal law—accusing Google of sex trafficking under the TVPRA, 18 U.S.C. § 1595. The theory underlying Plaintiff's TVPRA claim, as it pertains to Google, is that Google benefitted from a "sex trafficking venture" in violation of 18 U.S.C. § 1595 by distributing and failing to remove the Chitter app. Compl. ¶¶ 168-69, 174-75.

Like her state law claims, this claim is barred by Section 230 because it seeks to hold Google liable as the publisher of content created and disseminated by third parties. *See*

*G.G. v. Salesforce.com, Inc.*, 2022 U.S. Dist. LEXIS 87616, at *10 (N.D. Ill. May 16, 2022) ("Specifically in the context of sex trafficking claims, including under § 1595, courts have found that § 230 precludes liability where the allegations are predicated on the posting of user content."); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020) ("Plaintiff's failure to warn claims are inextricably linked to the harmful content solicited and posted by Kik's users. This is precisely the type of claim for which Congress has determined that interactive computer website providers should be immune.").

Plaintiff will argue that a 2018 amendment to Section 230 that carves out certain causes of action brought under the TVPRA saves her claim. That is wrong.

1.  <u>FOSTA Only Exempts Claims Alleging That An Online Service Provider's Actions Constitute A Criminal Violation of Section 1591</u>

In 2018, Congress carved out certain sex trafficking claims from Section 230's protection through the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA"). But the FOSTA exception is narrow: it applies to some criminal charges (§ 230(e)(5)(B)-(C)), and one specific kind of civil claim: "any claim in a civil action brought under section 1595 of title 18, ***if the conduct underlying the claim constitutes a violation of section 1591 of that title***" (§ 230(e)(5)(A) (emphasis added)). Section 1595 creates civil liability for participating in and knowingly benefitting from a venture that the defendant "knew or should have known has engaged in an act in violation of" chapter 77 of title 18. 18 U.S.C. § 1595(a). Section 1591 is one of the criminal offenses in chapter 77, which establishes the crime of "sex trafficking of children or by force, fraud, or coercion." 18 U.S.C. § 1591.

While district courts have come to different conclusions on what is required to bring a § 1595 claim that falls within Section 230's FOSTA exemption, "a conspicuous majority" have correctly held that plaintiffs must allege that the online service provider defendant's *own conduct* amounted to sex trafficking in violation of § 1591. *L.H.*, 2022 U.S. Dist. LEXIS 91756, at *41; *accord J.B. v. G6 Hosp., LLC*, 2021 U.S. Dist. LEXIS 170338, at *39 (N.D. Cal. Sept. 8, 2021) ("[T]he most persuasive reading of section 230(e)(5)(A) is

that it provides an exemption from immunity for a section 1595 claim if, but only if, the defendant's conduct amounts to a violation of section 1591."); *G.G.*, 2022 U.S. Dist. LEXIS 87616, at *28-29 (same); *Kik*, 482 F. Supp. 3d at 1251 (same). A minority of courts have held, in contrast, that the FOSTA exemption applies to any § 1595 claim predicated on sex trafficking in violation of § 1591, whether or not the online service provider committed the violation. *See Twitter*, 555 F. Supp. 3d at 922; *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 835-36 (C.D. Cal. 2021). Google respectfully submits that those decisions are incorrect and that the interpretation set out in *J.B.*, *G.G.*, *L.H.*, and *Kik* properly reflects the plain language of the statute and Congress's intent. *See L.H.*, 2022 U.S. Dist. LEXIS 91756, at *41 n.7 (noting that *Twitter* and *Mindgeek* "did not fully address the contextual and legislative history arguments exhaustively considered in other cases").[2]

That conclusion is based, first and foremost, on the text of FOSTA. The "most straightforward reading" of the statute—which exempts "any claim in a civil action brought under section 1595 . . . if the conduct underlying the claim constitutes a violation of section 1591"—is that the defendant's own conduct must constitute the violation. *J.B.*, 2021 U.S. Dist. LEXIS 170338, at *18, *30; § 230(e)(5)(A). As the court in *G.G.* reasoned, "the 'claim in a civil action' and the 'claim' which the conduct must underlie are the same." 2022 U.S. Dist. LEXIS 87616, at *29-30. After all, it is the defendant's conduct, not that of some unidentified third party, that "underlies" a given plaintiff's claim against that defendant. If Congress had intended to "exempt all claims involving sex trafficking, it could have said if the claim arises out of a violation of section 1591, or if the plaintiff is a victim of a violation of section 1591." *J.B.*, 2021 U.S. Dist. LEXIS 170338, at *18 (cleaned up). But the language Congress selected requires looking at the conduct of the defendant.

---

[2] This issue is currently on appeal before the Ninth Circuit. *See, e.g.*, *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021), *appeal docketed*, No. 22-15103 (9th Cir. Jan. 21, 2022); *Doe v. Reddit, Inc.*, 2021 U.S. Dist. LEXIS 235993 (C.D. Cal. Oct. 7, 2021), *appeal docketed*, No. 21-56293 (9th Cir. Nov. 30, 2021).

This reading is also supported by "the specific context in which that language is used." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Congress used the same phrase—"the conduct underlying the" claim or charge—repeatedly in Section 230(e)(5), including in connection with criminal charges where "the underlying conduct necessarily refers to the conduct of the criminal defendant." *J.B.*, 2021 U.S. Dist. LEXIS 170338, at *19. "That Congress included nearly identical language in the same subsection, at the same time, strongly suggests that it intended to give the 'conduct underlying' phrases the same meaning." *Id.*; *accord G.G.*, 2022 U.S. Dist. LEXIS 87616, at *31-32.

In *J.B.*, Judge Gilliam also thoroughly discussed FOSTA's legislative history, which underscores that Congress intended to remove Section 230's protections only for "defendants whose own conduct violates section 1591"—that is, for online services that knowingly assist a sex trafficking violation. 2021 U.S. Dist. LEXIS 170338, at *31. Multiple legislative reports and legislators reiterated that the bill "would eliminate section 230 as a defense for websites that *knowingly* facilitate sex trafficking." *Id.* (quoting legislative reports and floor statements) (emphasis added). After an extended legislative process, "Congress reached a compromise by including a narrowed federal civil sex trafficking carve-out that requires plaintiffs to show the civil defendant's knowing assistance, support or facilitation" of sex trafficking. *Id.* at *37; *accord Kik*, 482 F. Supp. 3d at 1250-51 & n.6. This compromise recognized "that § 1595's 'knew or should have known' language was too expansive and risked encouraging litigation against law-abiding intermediaries." *G.G.*, 2022 U.S. Dist. LEXIS 87616, at *33.

In short, text, history, and purpose establish that the FOSTA exception limits "the scope of civil sex trafficking claims against interactive computer services that otherwise meet the requirements for CDA immunity to circumstances in which the defendant's conduct amounts to a violation of section 1591." *J.B.*, 2021 U.S. Dist. LEXIS 170338 at *17. That means that "a finding of actual knowledge and overt participation in a venture of sexual trafficking is required to defeat CDA immunity." *Kik*, 482 F. Supp. 3d at 1250-51.

2.    <u>Because Plaintiff Does Not Allege That Google Violated Section 1591,</u>
<u>The FOSTA Exception Does Not Apply</u>

There is not even a gesture in the Complaint suggesting that Google engaged in conduct that would be criminal under Section 1591. This is fatal to Plaintiff's claim.

Section 1591(a)(2) makes it unlawful to knowingly "benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in" a sex trafficking act as defined in subsection (a)(1). 18 U.S.C. § 1591(a)(2). The statute defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," *id.* § 1591(e)(4), which requires "knowing and active participation in sex trafficking by the defendants," *Kik*, 482 F. Supp. 3d at 1251 (citing *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)).

Plaintiff does not allege Google did anything like that. For one, the Complaint pleads the sex trafficking claim based on a "knew or should have known" standard (Compl. ¶¶ 168, 175), which falls well short of the "knowing and active participation" required for a criminal violation of § 1591. *See Kik*, 482 F. Supp. 3d at 1251. And there are certainly no facts alleged that Google knowingly assisted, supported, or facilitated a violation of subsection (a)(1)'s prohibitions on the sex trafficking of minors. Indeed, Plaintiff does not allege that Google had any relationship whatsoever with actual sex traffickers, much less that it knew about their criminal activities and actively worked to support them. The only thing Google supposedly did was distribute the Chitter app, along with millions of other online apps on Google Play. But there is no suggestion, nor could there be, that Google actively promoted the Chitter app as a tool to distribute CSAM or deliberately structured its platform to encourage the exchange of CSAM. Providing neutral tools to third-party apps on which third-party users allegedly disseminate CSAM is nowhere near a criminal violation of § 1591. *See G.G.*, 2022 U.S. Dist. LEXIS 87616, at *35 (plaintiff failed to allege that Salesforce violated § 1591 by providing CRM tools to Backpage, a website used to post sex trafficking advertisements depicting plaintiff, even though Salesforce was aware of allegations that Backpage was being used for sex trafficking); *Kik*, 482 F. Supp.

MEMO OF POINTS &
AUTHORITIES ISO GOOGLE'S
MOT. TO DISMISS COMPLAINT

21

3:22-cv-00619-LAB-MDD

3d at 1251 (messaging platform used to solicit sexual activity with minors did not violate § 1591 despite its general knowledge that sex trafficking incidents were occurring on the platform).

Because the Complaint does not, and could not, allege that Google did anything that amounted to a criminal violation of Section 1591, Plaintiff's sex trafficking claim does not fit within FOSTA's narrow exception and is therefore barred by Section 230.

## B.   Even If FOSTA Carved Out All Claims Under Section 1595, Plaintiff's Claim Against Google Still Fails Under A Negligence Standard

Even if § 1595 did not require Google's conduct to amount to a criminal violation of § 1591, Plaintiff's sex trafficking claim would still fail. To establish a violation of § 1595, a plaintiff must show that the defendant "(1) knowingly benefitted, (2) from participation in a venture … , (3) which [it] knew or should have known was engaged in conduct that violated the TVPRA." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *see also Twitter*, 555 F. Supp. 3d 889, at 921-22; *Mindgeek*, 555 F. Supp. 3d at 837. Plaintiff has not met that standard.

*First*, Plaintiff's allegations involving Google simply do not describe a "sex trafficking venture." Section 1591 sets forth what constitutes sex trafficking for this purpose: the "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing]" of a victim to engage in a "commercial sex act." 18 U.S.C. § 1591(a)(1). Google itself obviously did none of those things. And there is no suggestion that it had any relationship, business dealings, or communications whatsoever with B.P., who actually obtained the CSAM of Plaintiff and shared that material via the Chitter app—much less the "continuous business relationship" required for "participation in a venture" under Section 1591. *Twitter*, 555 F. Supp. 3d at 922 (plaintiffs "must 'allege at least a showing of a continuous business relationship between the trafficker and Twitter'" to establish "a pattern of conduct" or a "tacit agreement"); *accord Doe v. Reddit, Inc.*, 2021 U.S. Dist. LEXIS 129876, at *12-13 (C.D. Cal. July 12, 2021) ("Plaintiffs allege that Reddit maintains 'affiliations with sex traffickers

22                    3:22-cv-00619-LAB-MDD

by enabling the posting of child pornography on its websites' and 'making it easier to connect traffickers with those who want to view child pornography.' But this allegation is not sufficient to show 'a continuous business relationship between' Reddit and traffickers"); *J.B.*, 2020 U.S. Dist. LEXIS 151213, at *27 (rejecting argument that "'all web-based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public,' lest such platforms be deemed to have participated in the venture.").

Instead, Plaintiff's theory is that Google "derive[d] financial benefit and ha[d] an [ongoing] business relationship with Chitter." Compl. ¶ 174. But Chitter is not a sex trafficker either. There is no suggestion that Chitter lured Plaintiff (or anyone else) into a "commercial sex act" or that it created or posted the CSAM at issue. At most, Chitter is alleged to have facilitated the dissemination, by third parties, of child pornography. But that is not "sex trafficking" covered by § 1591. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1251 (messaging platform used by third parties to solicit sexual activity with minors did not violate § 1591). For Google to publish or help distribute a private messaging app like Chitter, which can be used for good or for ill, does not make Google a participant in a sex trafficking "venture." That is all the more so because there is no allegation that Google's "relationship" with Chitter was any different than its relationship with any of the millions of other developers whose apps are hosted on Google Play.

*Second*, there are no plausible allegations that Google "knew or should have known" that Chitter was involved in conduct that violated § 1591. Courts have held that § 1595 requires "that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021) (emphasis added); *accord G.G.*, 2022 U.S. Dist. LEXIS 87616, at *44 (§ 1595 requires the plaintiff "to allege that the defendant knew (or should have known) about the *specific* sex trafficking venture—that is, the venture tied to the underlying § 1591 violation *of the plaintiff*") (emphasis in original).

The Complaint does not suggest that Google had any knowledge—or reason to know—that Chitter users were sharing CSAM images of her. There certainly is no allegation that Plaintiff ever notified Google. Instead, Plaintiff claims that Google "knew or should have known that CSAM is readily distributed and traded on Chitter" on account of user reviews, government warnings, and its own monitoring tools. Compl. ¶ 175. But these generalized allegations are not sufficient to allege that Google knew or should have known that Plaintiff was a victim of sex trafficking. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1250 n.5 (dismissing TVPRA claim where plaintiff "does not allege any facts that would plausibly establish Defendants knew or should have known about her particular situation" and rejecting knowledge allegations as "conclusory and lack[ing] factual support"); *Doe v. Red Roof Inns, Inc.*, 2020 U.S. Dist. LEXIS 67141, at *10 (N.D. Ga. Apr. 13, 2020) ("Allegations that customers complained about prostitution existing on properties itself is insufficient to meet a known or should have known standard under either 18 U.S.C. §§ 1595(a) or 1591(a)"), *aff'd*, 21 F.4th 714 (11th Cir. 2021); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 U.S. Dist. LEXIS 201073, at *14 (N.D. Cal. Oct. 28, 2020) ("[G]eneral allegations about sex trafficking problems throughout the hospitality industry is not enough to put [hotel franchisor defendants] on notice about the sex trafficking of this plaintiff."); *accord Ratha*, 35 F.4th at 1177 ("Sweeping generalities about the Thai shrimp industry are too attenuated to support an inference that Wales knew or should have known of the specifically alleged TVPRA violations at the Songkhla factory.").

In short, even apart from Section 230 and FOSTA, Plaintiff's TVPRA claim still would fail. No court has ever applied the statute to hold an app platform liable because one of the apps it makes available was (mis)used by criminals. Google did not participate in a sex trafficking venture by hosting the Chitter app alongside millions of other apps.[3]

---

[3] Because Google did not violate the TVPRA, Plaintiff's follow-on negligence per se claim necessarily fails as well. *See* Compl. ¶ 141 (alleging that Google breached a duty not to violate the TVPRA). Negligence per se is not an independent cause of action, but an evidentiary doctrine under which a "presumption of negligence … arises from the

(continued...)

**CONCLUSION**

Plaintiff's claims against Google should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing and under Fed. R. Civ. P. 12(b)(6) because they fail as a matter of law and are barred by Section 230.

Dated:  June 30, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  */s/ Natalie J. Morgan*
Natalie J. Morgan, SBN 211143
E-mail: NMorgan@wsgr.com

Brian M. Willen, SBN 419730 (*pro hac vice*)
Vivek V. Tata, SBN 5480470 (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Email: BWillen@wsgr.com
        VTata@wsgr.com

*Attorneys for Defendant Google LLC*

---

violation of a statute … enacted to protect a class of persons." *Amato v. Narconon Fresh Start*, 2014 U.S. Dist. LEXIS 150724, at \*24 (S.D. Cal. Oct. 23, 2014). Where there is no statutory violation, there can be no presumption of negligence.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 30, 2022, Defendant Google LLC's Memorandum of Points and Authorities in Support of Defendant Google LLC's Motion to Dismiss Complaint was filed with the Clerk of the U.S. Court for the Southern District of California, in compliance with L.R. 5.2 and using the Court's electronic filing system (ECF), in compliance with L.R. 5.4.

Dated:  June 30, 2022                                    WILSON SONSINI GOODRICH & ROSATI
                                                                          Professional Corporation

                                                           By:   */s/ Natalie J. Morgan*
                                                                   Natalie J. Morgan, SBN 211143
                                                                   E-mail: NMorgan@wsgr.com

                                                                   *Attorneys for Defendant Google LLC*