Natalie J. Morgan, State Bar No. 211143
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real
San Diego, CA 92130
Telephone: (858) 350-2303
Facsimile: (858) 350-2399
Email:  NMorgan@wsgr.com

Brian M. Willen, N.Y. State Bar No. 4191730 (*pro hac vice*)
Benjamin D. Margo, N.Y. State Bar No. 5318944 (*pro hac* forthcoming)
Vivek V. Tata, N.Y. State Bar No. 5480470 (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email:  BWillen@wsgr.com
        BMargo@wsgr.com
        VTata@wsgr.com

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.W., *minor child through her legal guardian Jane Doe*, et al., *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> SNAP INC., APPLE INC., and GOOGLE LLC, <br><br> Defendants. | CASE NO.:  3:22-cv-00619-LAB-MDD <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES I/S/O DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> The Hon. Larry Alan Burns <br> Hearing Date: November 15, 2022 <br> Time: 11:15 A.M. <br> Courtroom: 14A <br><br> First Am. Complaint Filed: 8/22/2022 |

# **TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ........................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND .................................. 1

ARGUMENT ................................................................................. 3

I.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW ........... 3

   A.   Plaintiffs' Design Defect Claim (Count I)
      Fails As A Matter of Law ........................................................ 3

   B.   Plaintiffs' Failure to Warn Claim (Count II)
      Fails As A Matter of Law ........................................................ 6

   C.   Plaintiffs' Negligence Claim (Count III)
      Fails As A Matter of Law ........................................................ 8

   D.   Plaintiffs' Consumer Protection, False Advertising,
      And Misrepresentation Claims Fail As A Matter of Law ........... 11

      1.   Plaintiffs' Fraud Allegations Do Not Satisfy
         Fed. R. Civ. P. 9(b) ........................................................ 11

      2.   Plaintiffs Fail To Allege Reliance On Any Alleged
         Misrepresentations ........................................................ 12

      3.   Plaintiffs Lack Standing Under the UCL and FAL ............... 13

      4.   Plaintiff C.A. Lacks Standing Under the KCPA ................... 14

   E.   Plaintiffs' Remaining State Law Claims Fail As A Matter of Law ... 15

II.  SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS ................. 15

   A.   Plaintiffs Seek to Hold Google Liable As A Publisher ...................... 15

   B.   Plaintiffs Cannot Evade Section 230 With Product Liability Claims 17

III. PLAINTIFFS' TVPRA CLAIM MUST BE DISMISSED ......................... 19

   A.   Plaintiffs' Sex Trafficking Claim Is Barred By Section 230 ............. 19

      1.   FOSTA Only Exempts Claims Alleging That A Service
         Provider Defendant's Actions Constitute A Criminal Violation
         Of § 1591 ...................................................................... 20

      2.   Because Plaintiffs Do Not Allege That Google Violated Section
         1591, The FOSTA Exception Does Not Apply ..................... 22

B.    Even If FOSTA Carved Out All Claims Under Section 1595, Plaintiffs' Claim Against Google Still Fails Under A Negligence Standard ............................................................................... 23

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Advanced Exteriors, Inc. v. Allstate Vehicle & Prop. Ins. Co.*,
2022 WL 3577260 (D. Colo. Aug. 19, 2022)..........................................15

*Amato v. Narconon Fresh Start*,
2014 WL 5390196 (S.D. Cal. Oct. 23, 2014).........................................25

*Anderson v. Owens-Corning Fiberglas Corp.*,
53 Cal. 3d 987 (1991) ...............................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................10

*Beckman v. Match.com, LLC*,
2017 WL 1304288 (D. Nev. Mar. 10, 2017),
*aff'd*, 743 F. App'x 142 (9th Cir. 2018) .................................................10

*Bill v. Superior Court*,
137 Cal. App. 3d 1002 (1982) ...............................................................6, 9

*Bristoe v. State Farm Mut. Auto. Ins. Co.*,
2021 WL 951025 (W.D. Ky. Mar. 12, 2021) .........................................14

*Brown v. USA Taekwondo*,
483 P.3d 159 (Cal. 2021).......................................................................8, 10

*Carpenter v. Amazon.com, Inc.*,
2019 WL 1259158 (N.D. Cal. Mar. 19, 2019) .........................................8

*Castillo v. Seagate Tech., LLC*,
2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sep. 14, 2016).....................8

*Coffee v. Google, LLC*,
2021 WL 493387 (N.D. Cal. Feb. 10, 2021).............................4, 15, 16

*Coffee v. Google, LLC*,
2022 WL 94986 (N.D. Cal. Jan. 10, 2022)........................................16, 17

*Crowe v. Tull*,
126 P.3d 196 (Colo. 2006).........................................................................12

*Dehen v. Does*,
   2018 WL 4502336 (S.D. Cal. Sep. 19, 2018) (Burns, J.)........................................ 15

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) ................................................................................. 12

*Diep v. Apple, Inc.*,
   2022 WL 4021776 (N.D. Cal. Sep. 2, 2022).................................................. 12, 16, 17

*Doe v. Internet Brands, Inc.*,
   2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) .................................... 10

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016) ................................................................................. 18

*Doe v. Kik Interactive, Inc.*,
   482 F. Supp. 3d 1242 (S.D. Fla. 2020)...........................................................*passim*

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021).............................................................. 20, 21

*Doe v. Red Roof Inns, Inc.*,
   2020 WL 1872333 (N.D. Ga. Apr. 13, 2020),
   *aff'd*, 21 F.4th 714 (2021).............................................................................. 24, 25

*Doe v. Reddit, Inc.*,
   2021 WL 5860904 (C.D. Cal. Oct. 7, 2021),
   *appeal docketed*, No. 21-56293 (Aug. 29, 2022) ...........................................*passim*

*Doe v. Snap, Inc.*, 2022 WL 2528615 (S.D. Tex. July 7, 2022),
   *appeal docketed*, No. 22-20408 (5th Cir. Aug. 9. 2022)................................. 17, 18

*Doe v. Twitter*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021)............................................................*passim*

*Doe v. Uber Techs., Inc.*,
   79 Cal. App. 5th 410 (2022),
   *review denied* 2022 Cal. LEXIS 5038 (Aug. 24, 2022) ......................................... 9

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010)............................................................................... 13

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ....................................................................... 8, 15, 17

*Est. of B.H. v. Netflix, Inc.*,
  2022 WL 551701 (N.D. Cal. Jan. 12, 2022),
  *appeal docketed*, No. 22-15260 (9th Cir. Feb. 23, 2022)...................................... 5, 9

*Flores v. Uber Techs.*,
  2022 Cal. Super. LEXIS 9648 (L.A. Cnty. Super. Ct. Mar. 22, 2022) ......... 3, 4, 5, 6

*Foyer v. Wells Fargo Bank, N.A.*,
  2020 WL 3893031 (S.D. Cal. July 10, 2020).................................................... 13, 14

*Free Kick Master LLC v. Apple Inc.*,
  140 F. Supp. 3d 975 (N.D. Cal. 2015)................................................................ 4, 16

*G.G. v. Salesforce.com, Inc.*,
  2022 WL 1541408 (N.D. Ill. May 16, 2022).....................................................*passim*

*G.P v. Sears Roebuck & Co.*,
  2014 WL 12966429 (C.D. Cal. Oct. 8, 2014) ......................................................... 7

*Garman v. Magic Chef, Inc.*,
  117 Cal. App. 3d 634 (1981) .............................................................................. 7, 8

*Ginsberg v. Google Inc.*,
  2022 WL 504166 (N.D. Cal. Feb. 18, 2022).....................................................*passim*

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) ..........................................................................2, 16, 17

*Greenman v. Yuba Power Prods., Inc.*,
  59 Cal.2d 57 (1963) ................................................................................................ 3

*Herrick v. Grindr, LLC*,
  306 F. Supp. 3d 579 (S.D.N.Y. 2018),
  *aff'd*, 765 F. App'x 586 (2d Cir. 2019) ........................................................... 10, 19

*In re Facebook, Inc.*,
  625 S.W.3d 80 (Tex. 2021) ................................................................................... 19

*In re LinkedIn User Privacy Litig.*,
  932 F. Supp. 2d 1089 (N.D. Cal. 2013)................................................................ 13

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009)................................................................................... 12, 13

GOOGLE'S MOTION
TO DISMISS FAC

v

3:22-cv-00619-LAB-MDD

*In re Zoom Video Commc'ns Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) .................................................. 19

*J.B. v. G6 Hosp., LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ........................................ 24

*J.B. v. G6 Hosp., LLC*,
    2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ..................................... 20, 21

*J.C. v. Choice Hotels Int'l, Inc.*,
    2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ........................................ 25

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002) .................................................................. 5

*Johnson v. Int'l Labs.*,
    2019 WL 1877289 (E.D. Ky. Apr. 26, 2019) ....................................... 12

*Kane v. Chobani, Inc.*,
    973 F. Supp. 2d 1120 (N.D. Cal. 2014),
    *vacated on other grounds*, 645 F. App'x 593 (9th Cir. 2016) ............... 12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................ 11

*Kimco Staffing Servs., Inc. v. Wolverine World Wide, Inc.*,
    2015 WL 2227833 (C.D. Cal. May 11, 2015) ....................................... 7

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ....................................................... 16, 17

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011) ..................................................................... 13

*L.H. v. Marriott Int'l, Inc.*,
    2022 WL 1619637 (S.D. Fla. 2022) ................................................ 20, 21

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) ....................................................... 17, 18

*M.H. v. Omegle.com, LLC*,
    2022 WL 93575 (M.D. Fla. Jan. 10, 2022),
    *appeal docketed*, No. 22-10338 (11th Cir. Jan. 31, 2022) ......... 17, 20, 22

*Marroquin v. Pfizer, Inc.*,
    367 F. Supp. 3d 1152 (E.D. Cal. 2019) .................................................. 7

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) ................................................ 15

*Modisette v. Apple Inc.*,
    30 Cal. App. 5th 136 (2018) ................................................................. 9

*Morgan v. Apple Inc.*,
    2018 WL 2234537 (N.D. Cal. May 16, 2018) ....................................... 10

*Mueller v. Alma Lasers, Inc.*,
    2018 WL 4300520 (D. Colo. Sep. 10, 2018) ........................................ 12

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................ 13, 16

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) .............................................................. 15

*Personalized Media Commc'ns., LLC v. Apple, Inc.*,
    552 F. Supp. 3d 664 (E.D. Tex. 2021) ................................................... 4

*Peviani v. Nat. Balance, Inc.*,
    774 F. Supp. 2d 1066 (S.D. Cal. 2011) ........................................... 11, 12

*Phillips v. Apple Inc.*,
    2016 U.S. Dist. LEXIS 53148 (N.D. Cal. Apr. 19, 2016) ..................... 13

*PICC Prop. & Cas. Co. v. UNIS, LLC*,
    2021 WL 939069 (C.D. Cal. Feb. 1, 2021) .......................................... 11

*Pierson v. Sharp Mem'l Hosp., Inc.*,
    216 Cal. App. 3d 340 (1989) ................................................................. 4

*Quinteros v. Innogames*,
    2022 WL 898560 (W.D. Wash. Mar. 28, 2022),
    *appeal docketed*, No. 22-35333 (9th Cir. Apr. 26, 2022) ................ 4, 8, 9

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) .......................................................... 23, 25

*Roshkovan v. Bristol-Myers Squibb Co.*,
    2022 WL 3012519 (C.D. Cal. June 22, 2022) ........................................ 7

*Saelzler v. Advanced Grp. 400,*
  25 Cal. 4th 763 (2001) ................................................................................... 11

*Sanders v. Acclaim Entm't, Inc.,*
  188 F. Supp. 2d 1264 (D. Colo. 2002) ............................................................. 5

*Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.,*
  836 S.W.2d 907 (Ky. Ct. App. 1992) ............................................................. 14

*Smith v. Tobinworld,*
  2016 WL 3519244 (N.D. Cal. June 28, 2016) ............................................... 14

*Soule v. Gen. Motors Corp.,*
  882 P.2d 298 (Cal. 1994) ................................................................................. 3

*Tallon v. Lloyd & McDaniel,*
  497 F. Supp. 2d 847 (W.D. Ky. 2007) ........................................................... 14

*United States v. Afyare,*
  632 F. App'x 272 (6th Cir. 2016) ................................................................... 22

*Unwired Planet, LLC v. Apple Inc.,*
  829 F.3d 1353 (Fed. Cir. 2016) ....................................................................... 4

*Wanetick v. Mel's of Modesto, Inc.,*
  811 F. Supp 1402 (N.D. Cal. 1992) ............................................................... 11

*Watters v. TSR, Inc.,*
  904 F.2d 378 (6th Cir. 1990) ..................................................................... 6, 10

*Wilson v. Midway Games,*
  198 F. Supp. 2d 167 (D. Conn. 2002) ............................................................. 5

*Winter v. G.P. Putnam's Sons,*
  938 F.2d 1033 (9th Cir. 1991) ......................................................................... 5

**STATUTES**

18 U.S.C. § 1591 ............................................................................................ *passim*

18 U.S.C. § 1595 ............................................................................................ *passim*

47 U.S.C. § 230 ............................................................................................. *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................ 11, 12

**MISCELLANEOUS**

Restatement (Third) of Torts: Products Liability § 19 ..................................... 3, 5

**INTRODUCTION**

Plaintiffs were sexually abused by strangers, criminals who persuaded them to send explicit images of themselves on Snapchat and exchanged those images on other online services. What happened to Plaintiffs is horrifying. But their efforts to sue Google, in its capacity as the operator of an online app marketplace that distributed the Snapchat app along with millions of other apps, is misguided. Plaintiffs' claims against Google—whether based on theories of product liability, fraud, or alleged participation in a "sex trafficking venture"—fail as a matter of law. They do not state a viable cause of action, and they are an unsuccessful attempt to plead around 47 U.S.C. § 230 ("Section 230"), which protects Google from liability for hosting, disseminating, or failing to remove third-party apps on its platform.

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiffs are three minors who allege that third parties connected with them on Snapchat (a popular private messaging service) and coerced them into exchanging sexually explicit images or video through the app. ECF No. 43 (First Amended Complaint) ("FAC") ¶¶ 3, 6-11, 45, 51-53, 59-61, 70, 73-74, 77. The FAC contends that Snapchat is defectively designed based on the ephemerality of Snapchat messages, users' ability to create multiple accounts without identity verification, and the "Quick Add" function, which allegedly recommends that adult users connect with minors. *See, e.g.*, *id.* ¶¶ 85-90, 200.

Plaintiffs' allegations also implicate several other apps developed by third parties that are not defendants in this case. All three Plaintiffs initially met perpetrators on different apps and connected with them on Snapchat because the perpetrators directed them to do so. *Id.* ¶¶ 2-3 (perpetrator met L.W. on Instagram), *id.* ¶¶ 44-45 (perpetrator met C.A. on Twitter), *id.* ¶¶ 59-60 (perpetrator met C.A. on Kik), *id.* ¶¶ 69-70 (perpetrator met C.O. on Omegle). C.A. alleges that she also suffered a physical assault at a property that the perpetrator rented on Airbnb. *Id.* ¶ 55. Plaintiff L.W. further alleges that a now-convicted criminal (a third party identified as B.P.) used the Dropbox file-sharing app and

1   a messaging app called Chitter to share images depicting L.W. *Id.* ¶¶ 21-24.

2   Defendant Google LLC ("Google") develops Android, an operating system for

3   mobile phones. Android users can download mobile apps from various sources, including

4   Google Play, an online store that makes a vast array of mobile apps available for

5   download. *Id.* ¶ 151. The FAC alleges that Google is liable for distributing the Snapchat

6   and Chitter apps on Google Play (and that Defendant Apple, Inc. is liable for distributing

7   the same apps on its App Store). *Id.* ¶ 124. But the connection between Google and the

8   abuse Plaintiffs suffered is tenuous: Plaintiffs allege no more than that, "upon information

9   and belief, one or more of Plaintiffs and their perpetrators … downloaded Snapchat using

10  Apple and/or Google's App Stores." *Id.* ¶ 126; *see also id.* ¶¶ 38, 64, 79.

11  Based on these allegations, Plaintiffs sued Google, along with Snap and Apple. All

12  three Defendants moved to dismiss the original Complaint, which only asserted claims on

13  behalf of Plaintiff L.W., on June 30, 2022. ECF Nos. 35, 36, 37. Rather than oppose those

14  motions, Plaintiffs filed the FAC, adding C.A. and C.O. as named Plaintiffs, on August

15  18, 2022. ECF No. 41 (withdrawn and refiled as ECF No. 43). The FAC asserts various

16  claims under state and federal law. At bottom, these claims seek to hold Google

17  responsible for "enabl[ing], advertis[ing], steer[ing], and facilitat[ing] sales of" the

18  Snapchat and Chitter apps to "one or more of the perpetrators" and "one or more of [the]

19  users" of those apps. *Id.* ¶ 167.

20  Recognizing that claims seeking to hold online services liable for third-party

21  content are barred by Section 230, *e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 880 (9th

22  Cir. 2021), Plaintiffs try to plead around that immunity by framing their claims as

23  primarily grounded in products liability and fraud. Plaintiffs seek to characterize Google's

24  *decisions* about what third-party apps it should display or allow users to download as a

25  product defect. *E.g.*, FAC ¶ 238. Further, Plaintiffs contend that Google should be strictly

26  liable for "fail[ing] to warn users of the dangers" of Google Play. *Id.* ¶ 218. Plaintiffs also

27  contend that by not removing Snapchat and Chitter, Google contradicted its written

28  policies. *Id.* ¶¶ 157-62, 235-37, 250, 256, 266. Finally, Plaintiffs try to escape Section 230

GOOGLE'S MOTION                            2                    3:22-cv-00619-LAB-MDD
TO DISMISS FAC

by alleging that Google somehow participated in a sex trafficking venture by publishing Snapchat and Chitter. *Id.* ¶ 288.

Plaintiffs seek to represent a putative "Google Class" including "All United States residents who, between May 2, 2012 and the date of judgment in this action, were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on a Computer Application sold or listed for download on the Google Play Store." *Id.* ¶ 183. Plaintiffs do not limit this putative class to those appearing in CSAM, nor to those whose images were uploaded without consent.

## ARGUMENT

## I.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW

Plaintiffs' state law claims fail on their own terms and are barred by Section 230.

### A.   Plaintiffs' Design Defect Claim (Count I) Fails As A Matter of Law

The doctrine of strict product liability protects consumers from tangible products causing physical damage. *See generally Greenman v. Yuba Power Prods., Inc.*, 59 Cal.2d 57, 62-63 (1963). Here, however, Plaintiffs seek to apply this regime in an entirely unprecedented way: to an online marketplace that allegedly facilitated the distribution of third-party software messaging services that were misused by third-party criminals to share illegal content. California's strict liability regime cannot be stretched so far.

***Google Play is a service, not a "product."*** Strict product liability applies to "[a] manufacturer, distributor, or retailer" of a defective "product." *Soule v. Gen. Motors Corp.*, 882 P.2d 298, 303 (Cal. 1994). A "product" is defined under California law as "*tangible* personal property distributed commercially for use or consumption"; "[s]ervices, even when provided commercially, are not products." *Flores v. Uber Techs.*, 2022 Cal. Super. LEXIS 9648, at *6 (L.A. Cnty. Super. Ct. Mar. 22, 2022) (quoting Restatement (Third) of Torts: Products Liability § 19(a), (b)) (emphasis added).

Plaintiffs' strict liability claim against Google fails from the start because they allege defects in an intangible *service—i.e.*, Google Play itself (FAC at 1, ¶ 211) —not a tangible product. As a general matter, software that allows users to download other

software is a service. *See, e.g.*, *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1360 (Fed. Cir. 2016) (Apple's App Store is a "service[]"); *Personalized Media Commc'ns., LLC v. Apple, Inc.*, 552 F. Supp. 3d 664, 690 (E.D. Tex. 2021) (same). Just as bookstores, record stores, and libraries are *services*, so too is Play. *See Coffee v. Google, LLC*, 2021 WL 493387, at *5 (N.D. Cal. Feb. 10, 2021) (Google is an "interactive computer service provider" where "Google creates and maintains a virtual online 'store' where it makes available … Apps[] that are generally … created by other developers."); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 980, 983 (N.D. Cal. 2015) (Google Play is an "internet service provider").

Further, the alleged defects in Google's service are themselves entirely intangible, relating to algorithmic features of Google Play that help display or recommend apps. *E.g.*, FAC ¶ 212 (accusing "app monitoring algorithms and automated recommendation functions"). Such features simply are not *products* that can be the subject of strict liability claims. California courts have repeatedly refused to impose strict liability on similar service providers, including software developers and providers of telecommunications services. *See Flores*, 2022 Cal. Super. LEXIS 9648, at *6-7 ("California law recognizes 'a fundamental and reasonable basis for imposing strict tort liability on persons providing products but not upon those rendering services" like Uber's app for drivers); *Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 345 (1989) (collecting cases and explaining that a "product … is a physical article which results from a manufacturing process and is ultimately delivered to a consumer"); *Quinteros v. Innogames*, 2022 WL 898560, at *7 (W.D. Wash. Mar. 28, 2022) (video game was "software as a service, not an 'object,' hence Plaintiff's product liability claim must fail as a matter of law"), *appeal docketed*, No. 22-35333 (9th Cir. Apr. 26, 2022).

The impropriety of extending strict liability to Google Play is especially strong because this case involves platforms for the distribution of *expressive content*—private messaging apps that allow users to exchange information, along with countless other apps that offer games, music, videos, books, news, and other speech. Courts have consistently

rejected efforts to hold the creators or distributors of expressive content liable on product defect theories, even when that content allegedly led to horrifying consequences. *See, e.g.*, *James v. Meow Media, Inc.*, 300 F.3d 683, 700-01 (6th Cir. 2002) (violent video games and pornographic websites that allegedly inspired young man to commit mass shooting were "not sufficiently 'tangible' to constitute products"); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (violent video games accused of helping cause mass shooting were intangible and not a "product" for purposes of strict liability law); *Wilson v. Midway Games*, 198 F. Supp. 2d 167, 173-74 (D. Conn. 2002) (same for a video game that allegedly caused a child to stab his friend). Similarly, the Ninth Circuit expressly refused to "expand products liability law to embrace the ideas and expression in a book." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991).

Simply put, "[t]here is no strict liability for books, movies, or other forms of media." *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (rejecting product liability claim against Netflix for alleged defects relating to distribution of movie that caused a minor to commit suicide), *appeal docketed*, No. 22-15260 (9th Cir. Feb. 23, 2022); *accord* Restatement (Third) of Torts: Products Liability § 19 cmt. d (courts generally "refuse[] to impose strict products liability" for claims based on "information in media" where "plaintiff's grievance[s] [were] "with the information, not with the tangible medium."). And if those who actually create expressive content cannot be held liable under strict liability theories, those theories certainly cannot be applied to a *marketplace* distributing general-purpose tools for creating and exchanging expressive content. No more than hypothetical similar claims against libraries or movie theaters, Plaintiffs' effort to hold Google strictly liable for distributing (or failing to warn about) allegedly harmful media is not cognizable under established law.

**Plaintiffs have not alleged that the supposedly defective features of Google Play caused their injuries.** There is a separate problem with Plaintiffs' product defect claim: they fail to allege that the purported defects in Google Play caused them any cognizable harm. *See Flores*, 2022 Cal. Super. LEXIS 9648, at *5 (plaintiffs bringing strict product

1    defect claims must show that "the defect causes injury"). The FAC does not plausibly

2    allege that any particular Plaintiff—or the abuser of any particular Plaintiff—downloaded

3    the apps at issue from Google Play, and their vague allegations to the contrary are entirely

4    conclusory. FAC ¶¶ 38, 64, 79. But even if some relevant person had in fact obtained

5    those apps from Google Play, there is no allegation they did so because of Play's allegedly

6    defective "app monitoring algorithms and automated recommendation functions." *Id.*

7    ¶ 212. Plaintiffs do not allege that they or their abusers downloaded the apps at issue

8    because Google recommended them, or that Google's supposed defective monitoring

9    somehow led Plaintiffs to share explicit images with their abusers on Snapchat. In short,

10   there is no allegation—much less a plausible one—that the supposed defects of Google

11   Play had any causal connection to injuries suffered by any Plaintiff.

12       **B.**    **Plaintiffs' Failure to Warn Claim (Count II) Fails As A Matter of Law**

13       Plaintiffs also seek to hold Google strictly liable for failure to warn of risks in

14   Google Play. FAC ¶¶ 215-20. This theory fares no better. It fails, first, because (as

15   discussed) Google Play is not a "product" subject to strict liability, and failing to warn

16   about the risks of expressive media content is not a cognizable claim under established

17   law. *See, e.g.*, *Bill v. Superior Court*, 137 Cal. App. 3d 1002, 1011-15 (1982) (distributors

18   of film not liable for failing to warn public about "the tendency to attract violence-prone

19   individuals to the vicinity of theaters at which it was exhibited"); *Watters v. TSR, Inc.*,

20   904 F.2d 378, 379, 382-83 (6th Cir. 1990) (rejecting claims against makers of *Dungeons*

21   *and Dragons* for failing to warn that the "game could cause psychological harm in fragile-

22   minded children"). This claim also fails for two additional reasons: Plaintiffs do not

23   sufficiently plead a "particular risk" that was "known or knowable" such that Google

24   could have warned about it, and they fail to plead causation.

25       ***Plaintiffs do not plead a "particular risk" that was "known or knowable" to***

26   ***Google.*** Although the FAC is far from clear, Plaintiffs seemingly allege that Google

27   should have warned users that some third-party apps *might* have third-party users who

28   *might* engage in illegal activity. FAC ¶ 218. This fails to identify a "particular risk" that

was "known or knowable" to Google about its products. *See Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 1002-03 (1991). The generalized risks Plaintiffs describe apply to almost any medium of communication that permits interaction between users. But a manufacturer is not required to warn about "every conceivable risk" that arises from use of its own products—let alone risks about criminal misuse of others' products. *G.P v. Sears Roebuck & Co.*, 2014 WL 12966429, at *2 (C.D. Cal. Oct. 8, 2014) (a "generic allegation that [a] lawnmower was hazardous and could cause serious injury when touched does not identify a particular risk"); *Kimco Staffing Servs., Inc. v. Wolverine World Wide, Inc.*, 2015 WL 2227833, at *6 (C.D. Cal. May 11, 2015) (dismissing failure to warn claim because, *inter alia*, there is "no duty to warn of the possibility of rare, idiosyncratic, or unusual reactions to an otherwise useful product").

> **Plaintiffs fail to plead that a warning defect caused their injury.** Plaintiffs' claim is also deficient because they do not allege that they actually used Google Play, let alone identify any warning that could have prevented the criminal actions that occurred on third-party services. *See Roshkovan v. Bristol-Myers Squibb Co.*, 2022 WL 3012519, at *9 (C.D. Cal. June 22, 2022) ("A plaintiff pleading failure to warn must allege 'no warning was provided or the warning was inadequate, but also that the inadequacy or the lack of the warning caused plaintiff's injury"; "conclusory" allegations that fail to identify the missing warning are insufficient). Indeed, the FAC itself alleges (¶¶ 3, 45, 60, 70) that each Plaintiff connected with perpetrators on Snapchat because of coercion by their perpetrators or because of Snapchat's internal features—not because of anything Google did (or didn't) do or say. Plaintiffs therefore fail to plead that Google's supposed failure to warn was a "substantial factor in causing" the harm they suffered. *Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1161 (E.D. Cal. 2019).

Nor do Plaintiffs get anywhere with their allegation that Google is liable for alleged warning defects in Google Play because it "recommend[ed] apps that are inherently dangerous." FAC ¶ 218. Alleged defects in these *third-party* apps are not flaws in *Google's* "products," and "it was not any unreasonably dangerous condition or feature of

[Google's] product which caused the injury." *Garman v. Magic Chef, Inc.*, 117 Cal. App. 3d 634, 638 (1981) (stove manufacturer not liable for failing to warn because it "did not cause or create the risk" of explosion attributable to a different manufacturer's defective pipe). And again, there is no actual allegation in the FAC that Google ever recommended Snap (or any other app) to Plaintiffs or their abusers.

## C. Plaintiffs' Negligence Claim (Count III) Fails As A Matter of Law

Plaintiffs' negligence-based product liability claims fare no better. The FAC fails to establish any of the requisite elements of negligence: "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." *Carpenter v. Amazon.com, Inc.*, 2019 WL 1259158, at *6 (N.D. Cal. Mar. 19, 2019).

***No legal duty of care.*** Plaintiffs claim that Google had a duty "to exercise reasonable care to prevent foreseeable and known harms from CSAM distribution and sexual grooming of children." FAC ¶ 223. But "plaintiffs may not simply aver that a defendant owed them a duty." *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, at *7-8 (N.D. Cal. Sep. 14, 2016). And in general, "there is no duty to act to protect others from the conduct of third parties." *Brown v. USA Taekwondo*, 483 P.3d 159, 165 (Cal. 2021). California courts "have uniformly held the defendant owes no legal duty to the plaintiff" if "the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm." *Id.* at 166.

No duty exists here. Google "does not owe a general duty to the public base[d] on its operation of the Play Store" to prevent the criminal misuse of third-party software apps by third-party users. *See Ginsberg v. Google Inc.*, 2022 WL 504166, at *7 (N.D. Cal. Feb. 18, 2022). The Ninth Circuit has squarely rejected the idea that a website has a duty of care to its own users: "No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019); *cf. Quinteros*,

2022 WL 898560, at *4 (game developer had no duty to protect against harassment by third parties). That applies even more strongly here, because Plaintiffs are seeking to impose a duty on Google to prevent criminal conduct that occurred not on Google's services, but on services owned and operated by third parties.

Nor does the FAC plausibly allege that Google committed any act that increased the risk of Plaintiffs' harm—let alone allege that Google "created" the relevant risk and the harm was a "necessary component of the [Google] business model." *Doe v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 427-28 (2022), *review denied* 2022 Cal. LEXIS 5038 (Aug. 24, 2022). In *Doe v. Uber*, the court found that Uber did not have a duty to protect users against third parties who falsely posed as authorized Uber drivers (using decals obtained from Uber's website) to abduct and assault riders, because Uber did not "create" the risk or take "action to stimulate the criminal conduct." *Id.* It held that even if "assault and rape by third parties is a foreseeable result of a defendant's actions, or … may not have occurred absent the defendant's actions" it would be "insufficient to establish" that the plaintiffs' harm was "a necessary component of the Uber business model." *Id.*

So too here. Plaintiffs do not even try to allege that the distribution of CSAM on third-party apps is "a necessary component" of Google Play or that Google actively took steps to stimulate criminal behavior by third-party users. Finding a duty here would be akin to finding that a store selling Polaroid cameras has a duty to protect the world from the possibility that abusers may use such cameras to produce child pornography. *Cf. Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 148-49 (2018) (no duty to design cell phones so that some applications "cannot be accessed while users are driving" because of the "burden" that would impose on manufacturers and society).

Public policy further counsels against the unprecedented expansion of negligence law that Plaintiffs seek. "California courts have declined to find a duty as a matter of law … for claims implicating expression." *Est. of B.H.*, 2022 WL 551701, at *3 (Netflix owed no duty to protect users from harms associated with movie alleged to cause plaintiff's suicide); *accord Bill*, 137 Cal. App. 3d at 1011, 1014-15. This principle squarely applies

here: Plaintiffs' legal theory would effectively prohibit—or significantly limit—the distribution of apps used for lawful communication, self-expression, and information sharing. Nothing in California law allows that result. *Cf. Watters*, 904 F.3d at 381.

Plaintiffs claim that Google is in a "special relationship" with minor Plaintiffs "akin to the special duty owed to business invitees by business owners." FAC ¶ 226. But no such special relationship can exist by virtue of distributing apps to the general public. *Morgan v. Apple Inc.*, 2018 WL 2234537, at *9 (N.D. Cal. May 16, 2018) (collecting cases). And Google's relationship to users of Google Play is not analogous to the "special relationships" that create an affirmative duty to protect, such as those "between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests." *Brown*, 483 P.3d at 166. These are "relationships involving dependence or control" such that by "virtue of those relationships [plaintiffs] have reason to expect the defendant's protection." *Id.* at 169. Neither Plaintiffs (who do not expressly allege that they ever actually used Google Play) nor their criminal assailants are "dependent" on or "controlled" by Google, and the criminal conduct underlying Plaintiffs' claims occurred on platforms controlled by third parties. This case is therefore *a fortiori* of those where courts concluded no special relationship existed even where the alleged danger arose from the digital platform itself. *See, e.g.*, *Doe v. Internet Brands, Inc.*, 2016 U.S. Dist. LEXIS 192144, at *12 (C.D. Cal. Nov. 14, 2016) (website had no "special relationship" or "duty" to protect user against third parties who sexually assaulted her); *Beckman v. Match.com, LLC*, 2017 WL 1304288, at *3 (D. Nev. Mar. 10, 2017), *aff'd*, 743 F. App'x 142 (9th Cir. 2018) (same for dating site); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 598 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019).

***No plausible allegation of breach.*** Even if Google did owe Plaintiffs a duty of care in its operation of Google Play, Plaintiffs' conclusory allegation of breach is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs allege without elaboration that "All defendants breached [their] duty by providing defectively designed services, tools and products to Plaintiffs and Plaintiffs' Class that render no protection from the known

harms of CSAM distribution and online sexual grooming of children." FAC ¶ 225. This boilerplate allegation gets Plaintiffs nowhere, not least because Plaintiffs fail to allege with any specificity what "services, tools and products" they are referring to or that they even used them. *See PICC Prop. & Cas. Co. v. UNIS, LLC*, 2021 WL 939069, at *2 (C.D. Cal. Feb. 1, 2021) ("Aside from its conclusory allegation of breach uniformly applying to all Defendants and their agents and employees, [plaintiff] does not plead any facts indicating how [this defendant's] acts or omissions breached any duty.").

***No proximate causation.*** Finally, Plaintiffs fail to allege causation. The FAC merely asserts that "Defendants' breach of duty was the proximate cause of the … harm" that they suffered. FAC ¶ 228. Again, this is a boilerplate legal conclusion unsupported by factual allegations that, if true, would show that Google Play's alleged negligent conduct "was a 'substantial factor' in bringing about the injury." *Saelzler v. Advanced Grp. 400*, 25 Cal. 4th 763, 778 (2001). As discussed, the FAC does not actually assert that Plaintiffs themselves even used Google Play, let alone that Google could have "reasonably prevented" criminal acts perpetrated by third parties on third-party services like Snapchat. *See id*. at 779. Plaintiffs' injury is simply far "too attenuated from Defendants' alleged conduct to meet the proximate causation requirement." *Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp 1402, 1408 (N.D. Cal. 1992).

## D. Plaintiffs' Consumer Protection, False Advertising, And Misrepresentation Claims Fail As A Matter of Law

Plaintiffs' fraudulent and negligent misrepresentation, UCL, FAL, CCPA, and KCPA claims (Counts IV, VI, VII, and VIII) all sound in fraud: they are based on the allegation that Google's app store policies and developer guidelines are misleading. FAC ¶¶ 234, 248, 254, 264. These claims fail for multiple reasons.

### 1. Plaintiffs' Fraud Allegations Do Not Satisfy Fed. R. Civ. P. 9(b)

First, Plaintiff's fraud-based claims fail to satisfy Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009); *Peviani v. Nat. Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) (Rule 9(b)'s "heightened pleading standards apply

1   to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud"); *Mueller*

2   *v. Alma Lasers, Inc.*, 2018 WL 4300520, at *4 (D. Colo. Sep. 10, 2018) (same for CCPA);

3   *Johnson v. Int'l Labs.*, 2019 WL 1877289, at *3 (E.D. Ky. Apr. 26, 2019) (same for

4   KCPA). "To satisfy Rule 9(b)'s particularity requirement, the complaint must include 'an

5   account of the time, place, and specific content of the false representations as well as the

6   identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans,*

7   *Inc.*, 915 F.3d 643, 668 (9th Cir. 2019).

8        While the FAC cites several statements from Google's Privacy Policy and

9   Developer Policy (¶¶ 157-61), Plaintiffs do not identify with particularity what allegedly

10  made these statements false or misleading. Nor could they. Nothing in the referenced

11  statements could be reasonably construed as a guarantee that no apps would ever be

12  permitted on Google Play if they could be used to distribute CSAM. A recent case

13  squarely rejected similar claims against Google based on statements in its app developer

14  guidelines. The court explained that despite pointing to statements that Google does not

15  allow apps promoting violence or hate speech on Play, "Plaintiffs do not allege that

16  Google promised Android owners that the Google Play Store would be free of hate

17  speech." *Ginsberg*, 2022 WL 504166, at *7. Those statements "govern Google's

18  relationship with app developers, not with the general public," and failure to enforce those

19  guidelines cannot amount to an allegation that "those guidelines constituted fraudulent

20  misrepresentations." *Id.* The same is true here. *See also, e.g.*, *Diep v. Apple, Inc.*, 2022

21  WL 4021776, at *3 (N.D. Cal. Sep. 2, 2022).

22        2.   <u>Plaintiffs Fail To Allege Reliance On Any Alleged Misrepresentations</u>

23        Second, Plaintiffs fail to allege that they read (or even knew about) Google's

24  allegedly misleading statements, much less that they took any action in reliance on those

25  statements, which they must show for each of their fraud-based claims. *See In re Tobacco*

26  *II Cases*, 207 P.3d 20, 26 (Cal. 2009); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1138

27  (N.D. Cal. 2014), *vacated on other grounds*, 645 F. App'x 593 (9th Cir. 2016); *accord*

28  *Crowe v. Tull*, 126 P.3d 196, 211 (Colo. 2006).

Courts have consistently rejected fraud claims that suffer from this basic defect. In *Opperman v. Path, Inc.*, for example, the court dismissed UCL, FAL, and misrepresentation claims where plaintiffs merely alleged that they "visited Apple's website," but "failed to allege that any one of them saw any particular representation" on that website. 87 F. Supp. 3d 1018, 1046-47 (N.D. Cal. 2014) (cleaned up); *accord In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) ("Plaintiffs do not even allege that they actually read the alleged misrepresentation—the Privacy Policy—which would be necessary to support a claim of misrepresentation."); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (dismissing misrepresentation claims where the complaint "[did] not allege [plaintiff] ever visited [defendant's] Web site or even that he ever read the Agreement for Services").

Here, Plaintiffs do not claim to have used Google Play at all, let alone that they did so in reliance on Google's representations. Their boilerplate allegations therefore fail to specify whether and on what representations any named Plaintiffs actually relied. FAC ¶¶ 236, 250, 256, 266. Reliance requires a showing that the defendant's alleged misrepresentations "'played a substantial part' in the plaintiff's decisionmaking." *Phillips v. Apple Inc.*, 2016 U.S. Dist. LEXIS 53148, at *16 (N.D. Cal. Apr. 19, 2016) (quoting *Tobacco II*, 207 P.3d at 39). Nothing like that is alleged in the FAC. In short, Plaintiffs' injuries—which were brought about by the coerced creation and subsequent sharing of their images by malicious third parties—have nothing to do with statements supposedly made by Google about its operation of Play.

### 3. Plaintiffs Lack Standing Under the UCL and FAL

Plaintiffs' UCL and FAL claims suffer from an additional flaw: Plaintiffs cannot show that they suffered an economic injury—"a loss or deprivation of money or property" that "was the result of, i.e., *caused by*, the unfair business practice … that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011).

*First*, without minimizing Plaintiffs' physical and psychological injuries, they do not satisfy the economic injury requirement. *See, e.g.*, *Foyer v. Wells Fargo Bank, N.A.*,

2020 WL 3893031, at *13 (S.D. Cal. July 10, 2020) ("emotional harms are not 'money or property' for the purposes of statutory standing under the UCL"); *Smith v. Tobinworld*, 2016 WL 3519244, at *7 (N.D. Cal. June 28, 2016) (dismissing UCL claim where plaintiff suffered only "physical and psychological injuries").

*Second*, as discussed, Plaintiffs do not identify any causal link between Google's statements and any injury they claim to have suffered. *Ginsberg* is again directly on point. 2022 WL 504166. There, the plaintiffs claimed that Google violated the UCL by allowing a third-party messaging app on which users posted harmful content to be downloaded from Play. *Id.* at *6. The court dismissed that claim because "Plaintiffs have failed to allege facts demonstrating that they suffered an economic injury as a result of Google's allegedly unfair practice of failing to enforce its guidelines for app developers." *Id.* at *7. That was so even though the plaintiff had purchased an Android phone with access to Google Play, which he claimed amounted to monetary injury. Here, Plaintiffs do not even try to explain what "loss of money or property" they supposedly suffered because of Google's alleged misrepresentations.

### 4.   Plaintiff C.A. Lacks Standing Under the KCPA

Plaintiff C.A.'s KCPA claim also fails for lack of standing. "To maintain an action alleging a violation of the KCPA, an individual must fit within the protected class of persons, which includes 'any person who purchases or leases goods or services primarily for personal, family or household purposes.'" *Bristoe v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 951025, at *3 (W.D. Ky. Mar. 12, 2021) (quoting K.R.S. § 367.220). "Therefore, generally, there must be privity of contract between the parties in a suit where a violation of the KCPA is alleged." *Id.*; *see also Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847, 854-55 (W.D. Ky. 2007); *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992). C.A. does not allege privity of contract with Google, so her KCPA claim necessarily fails.

**E.     Plaintiffs' Remaining State Law Claims Fail As A Matter of Law**

Plaintiffs' token claims for unjust enrichment and injunctive relief also fail.

***Unjust enrichment.*** Plaintiffs' unjust enrichment claim (Count V) alleges that they and class members "conferred a tangible economic benefit upon Defendants by signing up as users and giving up personal data and information." FAC ¶ 243. But this makes no sense as to Google: Plaintiffs have not sufficiently alleged that they used Google Play at all, much less that they enriched Google by doing so.

***Injunctive relief.*** Plaintiffs style Count IX as a claim for injunctive relief. FAC ¶¶ 272-77. But that is not a standalone cause of action. *See Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1161 (N.D. Cal. 2020); *accord Advanced Exteriors, Inc. v. Allstate Vehicle & Prop. Ins. Co.*, 2022 WL 3577260, at *2 n.3 (D. Colo. Aug. 19, 2022).

**II.     SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS**

**A.     Plaintiffs Seek to Hold Google Liable As A Publisher**

Even if Plaintiffs had pleaded a viable cause of action, their claims against Google would run squarely into Section 230, which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The provision establishes "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (cleaned up). "Immunity from liability exists for (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat … as a publisher or speaker (3) of information provided by another information content provider." *Dyroff*, 934 F.3d at 1097 (cleaned up); *accord Dehen v. Does*, 2018 WL 4502336, at *3 (S.D. Cal. Sep. 19, 2018) (Burns, J.). Plaintiffs' claims satisfy all three prongs, as courts have repeatedly found in applying Section 230 to bar similar claims against Google. *See Ginsberg*, 2022 WL 504166, at *7 (dismissing claims against Google for distributing messaging app in Play); *Coffee*, 2021 WL 493387, at *8 (same as to claims based on distribution of gambling apps).

*First*, the "Google app store[] [is a] paradigmatic interactive computer service[], as [it is a] website[] from which customers can locate and download apps developed, written, and branded by third parties." *Free Kick Master*, 140 F. Supp. 3d at 981; *accord Coffee*, 2021 WL 493387, at *5; *Diep*, 2022 WL 4021776, at *5.

*Second*, Plaintiffs seek to hold Google liable for making Snapchat (and other apps) available on Play—or for failing to appropriately monitor or remove them. *See, e.g.*, FAC ¶¶ 167, 210-11. But "fail[ing] to remove offending apps from [an] App Store" or even "encourag[ing] consumers to download third-party apps and advertis[ing] third-party apps" is core publisher conduct that is "subject to [Section 230's] protections." *Opperman*, 87 F. Supp. 3d at 1044 n.12; *accord Gonzalez*, 2 F.4th at 892 ("Publishing encompasses any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online"); *Ginsberg*, 2022 WL 504166, at *4 ("Google's alleged activity boils down to deciding whether to exclude [an app] … that a third party seeks to place in the online Play Store. Thus, Plaintiffs' claims inherently require the Court to treat Google as the publisher of content provided by another."); *Coffee v. Google, LLC*, 2022 WL 94986, at *5 (N.D. Cal. Jan. 10, 2022) ("Plaintiffs were seeking to treat Google as publisher, as Plaintiffs wanted Google to screen all apps submitted for inclusion in the Play Store."); *Diep*, 2022 WL 4021776, at *5 ("[Apple's] review and authorization of the … app for distribution on the App Store . . . is inherently publishing activity.").

*Third*, Plaintiffs seek to hold Google liable based on information provided by third parties: Snap and other app developers (as well as third-party abusers who distributed Plaintiffs' images). FAC ¶¶ 83, 85, 131, 134. The FAC does not suggest that Google was involved in the creation or development of any app at issue—much less the creation of the abusive material depicting Plaintiffs. An online service "does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016); *accord Ginsberg*, 2022 WL 504166, at *5 ("Plaintiffs do not allege that Google helped to develop Telegram or created any of the online content giving

rise to this lawsuit."); *Diep*, 2022 WL 4021776, at *5 ("[P]laintiffs seek to hold Apple liable [for] 'allowing the Toast Plus application to be distributed on the App Store,' not the development of the app."). Thus, in similar cases brought by minors against various apps, Section 230 immunity applied because the relevant information (harmful images) was supplied by third parties—not by the app itself, much less the app *store*. *See Doe v. Snap, Inc.*, 2022 WL 2528615, at *13-15 (S.D. Tex. July 7, 2022), *appeal docketed*, No. 22-20408 (5th Cir. Aug. 9, 2022); *M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5 (M.D. Fla. Jan. 10, 2022), *appeal docketed*, No. 22-10338 (11th Cir. Jan. 31, 2022); *Doe v. Reddit, Inc.*, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021); *Doe v. Twitter*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020).

Nor did Google create or develop the relevant content by recommending apps to users. As the Ninth Circuit has made clear, a service "is not transformed into a content creator or developer by virtue of supplying 'neutral tools' that deliver content in response to user inputs." *Gonzalez*, 2 F.4th at 893; *id.* at 894-96 (applying Section 230 to "allegation that Google's algorithms recommend ISIS content to users"); *Dyroff*, 934 F.3d at 1096 (defendant "is immune from liability under the CDA because its functions, including recommendations and notifications, were content-neutral tools used to facilitate communications"); *Kimzey*, 836 F.3d at 1271 ("proliferation and dissemination of content does not equal creation or development of content"). In short, what the court said in *Coffee* applies equally here: "[T]he conduct alleged in the FAC amounts to Google's publication of third-party apps in the Play Store and provision of neutral tools and services to all developers across the Google Play platform. This alleged conduct falls squarely within the protection of § 230." 2022 WL 94986, at *6.

### B.   Plaintiffs Cannot Evade Section 230 With Product Liability Claims

Plaintiffs may invoke the Ninth Circuit's ruling in *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), to argue that Section 230 does not bar their product liability claims. But *Lemmon* is inapposite: the Ninth Circuit did not hold that product liability claims are

categorically exempt from Section 230, and its decision only underscored that claims like those here are barred.

*Lemmon* was about a feature developed by Snap (a "Speed Filter") that allegedly caused a user to drive recklessly and get into a fatal car crash. The court held that a defective design claim targeting the Speed Filter was not barred by Section 230. But the Ninth Circuit was careful to explain that its holding was premised on the fact that Snap's alleged duty "ha[d] nothing to do with its editing, monitoring, or removing of the content that its users generate through Snapchat." *Id.* at 1092. The court emphasized that the plaintiffs were ***not*** seeking to hold Snap liable for exposing them to "Snapchat-user content (e.g., snaps of friends speeding dangerously) that may have incentivized the boys to engage in dangerous behavior." *Id.* at 1093 n.4. In short, plaintiff's harm did not result from *third-party* content posted on Snapchat.

This case is different. The duty that Plaintiffs seek to impose on Google—to remove or refrain from displaying third-party apps—has everything to do with Google's publication, monitoring, and removal of such apps. Plaintiffs expressly seek to hold Google liable for allegedly failing to better monitor the apps it disseminates on its service, for recommending such apps to users, and for the allegedly harmful effects of content exchanged through those apps. *E.g.*, FAC ¶¶ 210-12, 288-89. Such claims are squarely barred by Section 230. Plaintiffs cannot evade Section 230 by relabeling core publisher functions as purported "product defects." *See Snap*, 2022 WL 2528615, at *14-16 (distinguishing *Lemmon* and holding that negligent design claim seeking to hold Snap liable for communications exchanged by minor plaintiff and abuser is "barred by Section 230"); *Twitter*, 555 F. Supp. 3d at 930 (same where alleged design flaw "is directly related to the posting of third-party content on Twitter").

The same is true of Plaintiffs' failure to warn theory. In *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016), the Ninth Circuit found that Section 230 did not bar a claim premised on an alleged failure to warn "about information [the defendant] obtained from an outside source" regarding "the threat of a known sexual predator." *Id.*

The plaintiff's harm did not result from any third-party content posted to the defendants' site, and the site was "not alleged to have learned of the predators' activity from any monitoring of postings on the website, nor is its failure to monitor postings at issue." *Id.* As such, preventing plaintiff's injuries would not require the defendant "to remove any user content or otherwise affect how it publishes or monitors such content." *Id.*

The opposite is true here. Plaintiffs seek to hold Google liable for failing to warn them about the dangers of third-party content published on its service. FAC ¶¶ 217-18. And they specifically allege that Google should have known about those dangers from third-party reviews posted on Play. *Id.* ¶¶ 165, 211. These claims are clearly premised on an alleged duty to monitor and regulate third-party content, and thus fall squarely within Section 230. *See, e.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80, 95-96 (Tex. 2021) (claims "premised on Facebook's alleged failures to warn or to adequately protect Plaintiffs from harm caused by other users—are barred by section 230 and must be dismissed"); *Herrick*, 765 F. App'x at 593 (same, for failure to warn claim based on deceptive profiles on defendant's online dating site); *In re Zoom Video Commc'ns Priv. Litig.*, 525 F. Supp. 3d 1017, 1034 (N.D. Cal. 2021) (same, for warning claims based on failure to do "more to moderate or block[] harmful content"); *Kik*, 482 F. Supp. 3d at 1252 (same, for warning claim "inextricably linked to the harmful content solicited and posted by Kik's users").

## III.   PLAINTIFFS' TVPRA CLAIM MUST BE DISMISSED

### A.   Plaintiffs' Sex Trafficking Claim Is Barred By Section 230

Finally, Plaintiffs assert a claim under federal law (Count X)—accusing Google of sex trafficking under the TVPRA. The theory underlying Plaintiffs' claim is that Google benefitted from a "sex trafficking venture" in violation of 18 U.S.C. § 1595 by distributing and failing to remove the Snapchat and Chitter apps. FAC ¶¶ 279-80, 288-89. Like their state law claims, this claim is barred by Section 230 because it seeks to hold Google liable as the publisher of third-party content. *See, e.g.*, *G.G. v. Salesforce.com, Inc.*, 2022 WL 1541408, at *3 (N.D. Ill. May 16, 2022) ("Specifically in the context of sex trafficking claims, including under § 1595, courts have found that § 230 precludes liability where the

allegations are predicated on the posting of user content."); *accord Reddit*, 2021 WL 5860904, at \*7; *Kik*, 482 F. Supp. 3d at 1252; *Omegle*, 2022 WL 93575, at \*6-7.

Plaintiffs will argue that a 2018 amendment to Section 230 that carves out certain causes of action brought under the TVPRA saves their claim. That is wrong.

1. FOSTA Only Exempts Claims Alleging That A Service Provider Defendant's Actions Constitute A Criminal Violation Of § 1591

In 2018, Congress carved out certain sex trafficking claims from Section 230's protection through the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA"). But the FOSTA exception is narrow: it applies to some criminal charges (§ 230(e)(5)(B)-(C)), and one specific kind of civil claim: "any claim in a civil action brought under section 1595 of title 18, *if the conduct underlying the claim constitutes a violation of section 1591 of that title*" (§ 230(e)(5)(A) (emphasis added)). Section 1595 creates civil liability for participating in and knowingly benefitting from a venture that the defendant "knew or should have known has engaged in an act in violation of" chapter 77 of title 18. 18 U.S.C. § 1595(a). Section 1591 is one of the criminal offenses in chapter 77, which establishes the crime of "sex trafficking of children or by force, fraud, or coercion." 18 U.S.C. § 1591.

While district courts have come to different conclusions on what is required to bring a § 1595 claim that falls within Section 230's FOSTA exemption, "a conspicuous majority" have correctly held that plaintiffs must allege that the online service provider defendant's *own conduct* amounted to sex trafficking in violation of § 1591. *L.H. v. Marriott Int'l, Inc.*, 2022 WL 1619637, at \*11 (S.D. Fla. 2022); *accord J.B. v. G6 Hosp., LLC*, 2021 WL 4079207, at \*12 (N.D. Cal. Sept. 8, 2021); *G.G.*, 2022 WL 1541408, at \*8; *Reddit*, 2021 WL 5860904, at \*8; *Kik*, 482 F. Supp. 3d at 1251; *Omegle*, 2022 WL 93575, at \*6. A minority of courts have held, in contrast, that the FOSTA exemption applies to any § 1595 claim predicated on sex trafficking in violation of § 1591, whether or not the online service provider committed the violation. *See Twitter*, 555 F. Supp. 3d at 922; *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 835-38 (C.D. Cal. 2021). Google

respectfully submits that those decisions are incorrect and that the majority interpretation properly reflects the language of the statute and Congress's intent. *See L.H.*, 2022 WL 1619637, at *11 n.7 (noting that *Twitter* and *Mindgeek* "did not fully address the contextual and legislative history arguments exhaustively considered in other cases").[1]

That conclusion is based, first and foremost, on the text of FOSTA. The "most straightforward reading" of the statute—which exempts "any claim in a civil action brought under section 1595 . . . if the conduct underlying the claim constitutes a violation of section 1591"—is that the defendant's own conduct must constitute the violation. *J.B.*, 2021 WL 4079207, at *6, *9; § 230(e)(5)(A). As the court in *G.G.* reasoned, "the 'claim in a civil action' and the 'claim' which the conduct must underlie are the same." 2022 WL 1541408, at *9.

As Judge Gilliam described in *J.B.*, FOSTA's legislative history shows that Congress intended to remove Section 230's protections only for "defendants whose own conduct violates section 1591"—that is, for online services that knowingly assist a sex trafficking violation. 2021 WL 4079207, at *9 (quoting legislative reports and floor statements). The final bill reflected a compromise "that § 1595's 'knew or should have known' language was too expansive and risked encouraging litigation against law-abiding intermediaries," *G.G.*, 2022 WL 1541408, at *10 so the final bill "require[d] plaintiffs to show the civil defendant's knowing assistance, support or facilitation" of sex trafficking. *J.B.*, 2021 WL 4079207 at *11; *accord Kik*, 482 F. Supp. 3d at 1250-51 & n.6.

In short, text, history, and purpose establish that the FOSTA exception limits "the scope of civil sex trafficking claims against interactive computer services that otherwise meet the requirements for CDA immunity to circumstances in which the defendant's conduct amounts to a violation of section 1591." *J.B.*, 2021 WL 4079207, at *12. Thus,

---

[1] This issue is currently on appeal before the Ninth Circuit. *See, e.g.*, *Doe v. Reddit, Inc.*, *appeal docketed*, No. 21-56293 (argued Aug. 29, 2022).

1   "a finding of actual knowledge and overt participation in a venture of sexual trafficking

2   is required to defeat CDA immunity." *Kik*, 482 F. Supp. 3d at 1250-51.

3              2.   Because Plaintiffs Do Not Allege That Google Violated Section 1591,

4                   The FOSTA Exception Does Not Apply

5        Nothing in the FAC suggests that Google engaged in criminal conduct under

6   § 1591. Section 1591(a)(2) makes it unlawful to knowingly "benefit[], financially or by

7   receiving anything of value, from participation in a venture which has engaged in" a sex

8   trafficking act as defined in subsection (a)(1). 18 U.S.C. § 1591(a)(2). The statute defines

9   "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation

10  of subsection (a)(1)," *id.* § 1591(e)(4), which requires "knowing and active participation

11  in sex trafficking by the defendants," *Kik*, 482 F. Supp. 3d at 1251 (citing *United States*

12  *v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)).

13       Plaintiffs do not allege Google did anything like that. For one, the FAC pleads the

14  TVPRA claim with a "knew or should have known" standard (FAC ¶¶ 280, 289), which

15  falls well short of the "knowing and active participation" required for a criminal violation

16  of § 1591. *See Kik*, 482 F. Supp. 3d at 1251. All Google did was distribute the Snapchat

17  and Chitter apps, along with millions of other online apps on Play. At most, the FAC

18  claims that Google "turn[s] a blind eye" to the acts of third-party users and "benefits from"

19  those acts, *Afyare*, 632 F. App'x at 286, through "commissions from in-app purchases"

20  and "advertisement and data revenue." FAC ¶ 288. But "mere negative acquiescence"

21  cannot constitute the "knowing[] participat[ion]" § 1591 requires. *Afyare*, 632 F. App'x

22  at 286 (cleaned up). There is no suggestion, nor could there be, that Google actively

23  promoted those apps as tools to distribute CSAM or deliberately structured its platform

24  to encourage the exchange of CSAM. Providing neutral tools to third-party apps on which

25  third-party users allegedly disseminate CSAM is nowhere near a criminal violation of §

26  1591. *See G.G.*, 2022 WL 1541408, at *11 (allegations that Salesforce provided services

27  to Backpage failed to state a claim for violation of § 1591, though Salesforce was aware

28  of allegations of sex trafficking on Backpage); *Omegle*, 2022 WL 93575, at *6

("generalized knowledge of past instances of sex trafficking are not enough to satisfy an exception to immunity"); *Reddit*, 2021 WL 5860904, at *8 (similar); *Kik*, 482 F. Supp. 3d at 1251 (similar).

Because the FAC does not, and could not, allege that Google did anything amounting to a criminal violation of § 1591, Plaintiffs' claim does not fit within FOSTA's narrow exception and is barred by Section 230.

## B. Even If FOSTA Carved Out All Claims Under Section 1595, Plaintiffs' Claim Against Google Still Fails Under A Negligence Standard

Even if § 1595 did not require Google's conduct to amount to a violation of § 1591, Plaintiffs' claim would still fail. To establish a violation of § 1595, a plaintiff must show that the defendant "(1) knowingly benefitted, (2) from participation in a venture … , (3) which [it] knew or should have known was engaged in conduct that violated the TVPRA." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *see also Twitter*, 555 F. Supp. 3d at 921-22. Plaintiffs have not met that standard.

*First*, Plaintiffs' allegations involving Google simply do not describe a "sex trafficking venture." Section 1591 sets forth what constitutes sex trafficking for this purpose: the "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing]" of a victim to engage in a "commercial sex act." 18 U.S.C. § 1591(a)(1). Google obviously did none of those things. And there is no suggestion that it had any relationship, business dealings, or communications with any of the perpetrators who actually obtained and shared Plaintiffs' images—much less the "continuous business relationship" required for "participation in a venture" under § 1591. *See Twitter*, 555 F. Supp. 3d at 922 (plaintiffs "must 'allege … a continuous business relationship between the trafficker and Twitter'"); *Reddit,* 2021 WL 5860904, at *8 (allegations that Reddit "enabl[es]" posting and dissemination of CSAM are "not sufficient to show a continuous business relationship").

Instead, Plaintiffs' theory is that Google "derive[d] financial benefit and ha[d] a[n] [ongoing] business relationship with … Snapchat and Chitter." FAC ¶ 288. But Snapchat

and Chitter are not sex traffickers either. There is no suggestion that either app lured Plaintiffs (or anyone else) into a "commercial sex act" or that it created or posted the CSAM at issue. At most, Snapchat and Chitter are alleged to have facilitated the dissemination of CSAM by third parties. But that is not "sex trafficking" covered by § 1591. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1251 (messaging platform used by third parties to solicit sexual activity with minors did not violate § 1591); *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (rejecting argument that "'all web[-]based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public,' lest such platforms be deemed to have participated in the venture"). Publishing these messaging apps, which can be used for good or ill, does not make Google a participant in a sex trafficking "venture." That is all the more so because there is no allegation that Google's "relationship" with Snapchat or Chitter was any different than its relationship with any of the millions of other developers whose apps are hosted on Google Play.

*Second*, there are no plausible allegations that Google "knew or should have known" that third-party apps were involved in conduct that violated § 1591. Courts have held that § 1595 requires "that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021) (emphasis added); *accord G.G.*, 2022 WL 1541408, at *13 (§ 1595 requires the plaintiff "to allege that the defendant knew (or should have known) about the *specific* sex trafficking venture—that is, the venture tied to the underlying § 1591 violation *of the plaintiff*") (emphasis in original).

The FAC does not suggest that Google had any knowledge that CSAM images of Plaintiffs were exchanged on Snapchat or Chitter. There certainly is no allegation that Plaintiffs ever notified Google. Instead, Plaintiffs claim that Google "knew or should have known that CSAM is readily produced, distributed and traded on Snapchat and Chitter" because of user reviews, government warnings, and its own monitoring tools. FAC ¶ 289. But these generalized allegations are not sufficient to allege that Google "knew or should

have known" that Plaintiffs were victims of sex trafficking. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1250 n.5 (dismissing TVPRA claim as "conclusory and lack[ing] factual support" because the plaintiff did not plausibly allege facts that would "establish Defendants knew or should have known about her particular situation"); *Doe v. Red Roof Inns, Inc.*, 2020 WL 1872333, at *3 (N.D. Ga. Apr. 13, 2020) (Allegations of customer complaints about prostitution "is insufficient to meet a known or should have known standard under either 18 U.S.C. §§ 1595(a) or 1591(a)"), *aff'd*, 21 F.4th 714; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *6 (N.D. Cal. Oct. 28, 2020) ("[G]eneral allegations about sex trafficking problems" in hotels are insufficient to put defendants on notice about trafficking of the plaintiff); *accord Ratha*, 35 F.4th at 1177 ("Sweeping generalities about the Thai shrimp industry" are insufficient to show defendant "knew or should have known" about TVPRA violations at a specific factory).

In short, even apart from Section 230 and FOSTA, Plaintiffs' TVPRA claim still would fail. No court has ever applied the statute to hold a general use platform liable because certain of the apps it makes available were (mis)used by criminals.[2]

## CONCLUSION

Plaintiffs' claims against Google should be dismissed under Fed. R. Civ. P. 12(b)(6) because they fail as a matter of law and are barred by Section 230.

---

[2] Because Google did not violate the TVPRA, Plaintiffs' follow-on negligence per se claim necessarily fails as well. FAC ¶ 223; *see Amato v. Narconon Fresh Start*, 2014 WL 5390196, at *9 (S.D. Cal. Oct. 23, 2014).

Respectfully submitted,

Dated:  September 19, 2022          WILSON SONSINI GOODRICH & ROSATI

Professional Corporation


By:   */s/ Brian M. Willen*
      Brian M. Willen, N.Y. State Bar No. 4191730
          (*pro hac vice*)
      Benjamin D. Margo, N.Y. State Bar
          No. 5318944 (*pro hac* forthcoming)
      Vivek V. Tata, N.Y. State Bar No. 5480470
          (*pro hac vice*)
      1301 Avenue of the Americas, 40th Floor
      New York, NY 10019
      Email: BWillen@wsgr.com
              BMargo@wsgr.com
              VTata@wsgr.com

      Natalie J. Morgan, SBN 211143
      WILSON SONSINI GOODRICH & ROSATI
      12235 El Camino Real
      San Diego, CA 92130
      Email: NMorgan@wsgr.com


      *Attorneys for Defendant Google LLC*

1

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 19, 2022, **DEFENDANT GOOGLE LLC'S RENEWED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** was filed with the Clerk of the U.S. Court for the Southern District of California, in compliance with L.R. 5.2 and using the Court's electronic filing system (ECF), in compliance with L.R. 5.4.


Dated:  September 19, 2022            WILSON SONSINI GOODRICH & ROSATI
                                      Professional Corporation


                             By:   */s/ Brian M. Willen*
                                   Brian M. Willen, N.Y. State Bar No. 4191730
                                     (*pro hac vice*)
                                   Email: BWillen@wsgr.com


                                   *Attorneys for Defendant Google LLC*