1 │ MORRISON & FOERSTER LLP
   │ Jessica L. Grant (CA SBN 178138)
2 │ Michael Burshteyn (CA SBN 295320)
   │ Ernesto Rojas Guzman (CA SBN 339964)
3 │ 425 Market Street
   │ San Francisco, California  94105-2482
4 │ Telephone: 415.268.7000

5 │ MORRISON & FOERSTER LLP
   │ J. Alexander Lawrence (CA SBN 208715)
6 │ Tamara Wiesebron (CA SBN 338967)
   │ 250 West 55th Street
7 │ New York, New York  10019-9601
   │ Telephone: 212.468.8000

8 │
   │ Attorneys for Defendant
9 │ SNAP INC.

10 │

11 │                **UNITED STATES DISTRICT COURT**

12 │              **SOUTHERN DISTRICT OF CALIFORNIA**

13 │ L.W., *minor child through her legal*
    │ *guardian Jane Doe, on behalf of*          Case No. 3:22-cv-00619-LAB-MDD
14 │ *herself and all others similarly*
    │ *situated*; C.A., *minor child through*
15 │ *her legal guardian John Doe I, on*       **SNAP INC.'S NOTICE OF MOTION**
    │ *behalf of herself and all others*        **AND MOTION FOR RULE 11**
16 │ *similarly situated*; C.O. *minor child*   **SANCTIONS**
    │ *through her legal guardian John Doe*
17 │ *II, on behalf of herself and all others*
    │ *similarly situated,*                      Date:    December 12, 2022
18 │                                            Time:    11:15 a.m.
    │                     Plaintiffs,           Dept.:   14A
19 │                                            Judge:   Hon. Larry Alan Burns
    │          v.
20 │
    │ SNAP INC., APPLE INC., and
21 │ GOOGLE LLC,

22 │                     Defendants.

23 │

24 │

25 │          <u>**Submitted Under Seal - Redacted Version**</u>

26 │

27 │

28 │

SF-4920437

1   **TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF**
2   **RECORD:**
3       PLEASE TAKE NOTICE that on December 12, 2022, at 11:15 a.m., or as
4   otherwise ordered, the parties may be heard in Courtroom 14A of the United States
5   District Court for the Southern District of California, located at 221 West
6   Broadway, San Diego, CA 92101, before the Honorable Larry Alan Burns, where
7   Defendant Snap Inc. ("Snap") will and hereby does move for sanctions pursuant to
8   Fed. R. Civ. P. 11. due to allegations in Plaintiffs' Amended Complaint that have
9   no factual basis, which would have been readily apparent to Plaintiffs' counsel had
10  they conducted the requisite reasonable inquiry.  Snap requests that the Court
11  impose sanctions in the form of the following:
12  - An order dismissing the Amended Complaint in its entirety without
13    prejudice, allowing Plaintiffs to remove the offending allegations in the
14    following paragraphs: Prelim Stmt. 2:7-8; 3:17-18; 3:22-24; 4:14-16; ¶¶ 15,
15    74, 75, 76, 89, 90, 108, 114, 119, 121, and 122 and refile without further
16    revision;
17  - An order to pay Snap's reasonable attorneys' fees incurred in bringing this
18    motion; and
19  - Any other sanctions that the Court deems appropriate.
20      This Motion is based upon this Notice of Motion and the concurrently-filed
21  Memorandum of Points & Authorities, the Declarations of J. Alexander Lawrence,
22  David Boyle, and Matt Dougherty, the files and records of this Court, and any and
23  all other materials submitted to the Court on or before the time of its decision on
24  this matter.
25      Pursuant to Fed. R. Civ. P. 11(c)(2), on October 6, 2022, Snap served this
26  motion on Plaintiffs' counsel.  Snap's counsel also met and conferred with
27  Plaintiffs' counsel on September 8, 2022 in advance of serving the motion, but
28  Plaintiffs' counsel refused to withdraw or otherwise correct the false and

1  misleading allegations in the Amended Complaint that are the subject of this

2  motion.  Snap now files this motion with the Court because Plaintiffs have not

3  withdrawn or otherwise corrected the Amended Complaint within the 21-day period

4  provided by Rule 11.

5

6

7

8  Dated:  October 27, 2022              MORRISON & FOERSTER LLP

9

10                                       By:  _____/s/ Jessica L. Grant_____

11                                            Jessica L. Grant
                                             JGrant@mofo.com
12
                                         Attorneys for Defendant
13                                       SNAP INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SF-4920437

MORRISON & FOERSTER LLP
Jessica L. Grant (CA SBN 178138)
Michael Burshteyn (CA SBN 295320)
Ernesto Rojas Guzman (CA SBN 339964)
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000

MORRISON & FOERSTER LLP
J. Alexander Lawrence (CA SBN 208715)
Tamara Wiesebron (CA SBN 5882287)
250 West 55th Street
New York, New York  10019-9601
Telephone: 212.468.8000

Attorneys for Defendant
SNAP INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.W., *minor child through her legal guardian Jane Doe, on behalf of herself and all others similarly situated*; C.A., *minor child through her legal guardian John Doe I, on behalf of herself and all others similarly situated*; C.O. *minor child through her legal guardian John Doe II, on behalf of herself and all others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>SNAP INC., APPLE INC., and GOOGLE LLC,<br><br>    Defendants. | Case No. 3:22-cv-00619-LAB-MDD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SNAP INC.'S MOTION FOR RULE 11 SANCTIONS**<br><br>Date:    December 12, 2022<br>Time:    11:15 a.m.<br>Dept.:   14A<br>Judge:   Hon. Larry Alan Burns |

<u>**Submitted Under Seal - Redacted Version**</u>

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............ 4

    A.   Snap Moved to Dismiss Plaintiff L.W.'s Initial Complaint ................ 4

    B.   Plaintiff Did Not Oppose Snap's Motion to Dismiss, and Instead
        Amended the Complaint with False Allegations Designed to
        Evade Controlling Law. ........................................................................ 5

    C.   Plaintiffs Refused to Withdraw these False Allegations
        Following a Meet and Confer. ............................................................. 5

III.  LEGAL STANDARD ............................................................................. 5

IV.   THE AMENDED COMPLAINT'S FALSE ALLEGATIONS MERIT
     RULE 11 SANCTIONS .......................................................................... 6

    A.   The New Allegations Are Manifestly False and Prohibited by
        Rule 11. ................................................................................................ 6

        1.   Plaintiffs' Allegations Concerning Snapchat's Quick Add
              Feature Are Demonstrably False. ............................................ 7

        2.   There Is No Basis to Allege that Snap Knew of the
              Specific Crimes Committed Against Plaintiffs. ..................... 11

        3.   Allegations That Certain Unspecified Number of
              Perpetrators First Connected with Plaintiff C.O. Through
              Quick Add Lack Any Factual Basis. ....................................... 12

        4.   Allegations That Perpetrator B.P. Employed Multiple
              Accounts to Target Other Victims Lack Any Factual
              Support. .................................................................................... 14

        5.   Plaintiffs' Allegation that Snapchat Has *No* Procedures in
              Place to Guard Against Repeat Offenders Are
              Demonstrably False. ................................................................ 15

    B.   The False Allegations Demonstrate that Plaintiffs' Counsel Did
        Not Conduct an Objectively Reasonable Inquiry. .............................. 17

    C.   Plaintiffs' Inclusion of the False Allegations Is an Attempt to
        Stave Dismissal by Trying to Make this Case Analogous to
        Inapposite Case Law. .......................................................................... 19

D.    The Court Should Issue Non-Monetary and Monetary Sanctions, Including Dismissal of the FAC. .......................................................... 21

V.    CONCLUSION ................................................................................................ 22

SF-4920437

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5

*A.M. v. Omegle.com, LLC,*
    No. 3:21-CV-01674-MO, 2022 WL 2713721 (D. Or. July 13, 2022) ........... 3, 19

6
7

*Ayvazian v. Moore Law Grp.,*
    No. 2:12-CV-01506-ODW(Ex), 2012 WL 2411181 (C.D. Cal. June
    26, 2012) ...................................................................................................... 7, 12

8
9
10

*Brooks Ent., Inc. v. Activision Blizzard, Inc.,*
    No. 21-CV-2003 TWR (MDD), 2022 WL 2706162 (S.D. Cal. July
    12, 2022) .................................................................................................*passim*

11
12

*Bus. Guides v. Chromatic Comm'ns Enters., Inc.,*
    119 F.R.D. 685 (N.D. Cal. 1988) ...............................................................*passim*

13
14

*Buster v. Greisen,*
    104 F.3d 1186 (9th Cir. 1997) ...................................................................5, 6, 19

15
16

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (1990) ...................................................................................... 6, 21

17
18

*Ewing v. Flora,*
    No. 14CV2925 AJB (NLS), 2015 WL 12564225 (S.D. Cal. Mar.
    25, 2015) .............................................................................................................. 5

19
20

*G.C. & K.B. Invs., Inc. v. Wilson,*
    326 F.3d 1096 (9th Cir. 2003) ........................................................................... 6

21
22

*Gaskell v. Weir,*
    10 F.3d 626 (9th Cir. 1993) .............................................................................. 22

23
24

*Hunt v. Sunny Delight Beverages Co.,*
    8:18-CV-00557-JLS-DFM, 2018 WL 6786265 (C.D. Cal. Dec. 18,
    2018) .......................................................................................................*passim*

25
26
27

*Mogan v. Sacks, Ricketts & Case LLP,*
    No. 21-CV-08431-TSH, 2022 WL 119212 (N.D. Cal. Jan. 12,
    2022) ................................................................................................................... 6

28

iii

SF-4920437

*Moser v. Bret Harte Union High Sch. Dist.*,
   366 F. Supp. 2d 944 (E.D. Cal. 2005) ................................................................ 17

*Reina-Rodriguez v. United States*,
   655 F.3d 1182 (9th Cir. 2011) ......................................................................... 3

*Rattagan v. Uber Techs., Inc.*,
   19-CV-01988-EMC, 2019 WL 3891714 (N.D. Cal. Aug. 19, 2019) ................ 22

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) ......................................................................... 18

**Other Authorities**

Fed. R. Civ. P. 11 .......................................................................................... 6, 21, 22

Amendments to Fed. R. Civ. P., 146 F.R.D. 401, Committee Notes
   (1993) ...................................................................................................... 19, 21

## I.    INTRODUCTION

Plaintiff L.W. filed this lawsuit in an attempt to hold Snap liable for the crimes committed against her by a sexual predator.  In response, Snap moved to dismiss the initial complaint on numerous grounds.  Rather than oppose Snap's motion to dismiss, Plaintiff L.W. opted to amend her Complaint, joining two additional plaintiffs who allege similar claims based on the criminal acts committed by other sexual predators.  In their attempt to salvage their claims from dismissal, Plaintiffs' counsel resorted to pleading numerous false allegations in the Amended Complaint about how Snapchat works, and increased the inflammatory rhetoric in their complaint five-fold.  Plaintiffs' counsel know there is no evidentiary support or good-faith basis for many of their false and inflammatory allegations against Snap and its Snapchat platform.  Indeed, the lack of evidentiary support for these allegations is clear from the face of the Amended Complaint.

For instance, the Amended Complaint falsely alleges that Snap's Quick Add feature allows predators to identify and connect with children based on geographic location or mutual interests.  Quick Add has never operated in this way, as even the most cursory investigation—consisting of opening the Snapchat app and looking at the Quick Add feature—would reveal.  Instead, Quick Add suggests contacts to users only if they have mutual contacts in common, or if the Snapchat user has the other Snapchat user's email address or phone number in their phone's contacts and the user has granted Snapchat permission to access their contacts.  Further, the Snapchat profile displayed, even if there is a mutual contact, does not show a person's age, gender, birthday, interests, location, hometown, or, by default, pictures or other information.[1]  And any Snapchat user is free to reject or disregard

---

[1] A small minority of users change their default settings to allow their Snapchat Stories (pictures or short videos posted for sharing within the last 24 hours) to be viewed publicly.  For that minority of users, the user's Snapchat Stories from the past 24 hours would be visible on their profile. (Declaration of David Boyle ¶13.)

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

a connection request.  So the notion, made repeatedly throughout the Amended Complaint, that Snapchat's Quick Add function lets adult users peruse profiles of unknown children, like a catalogue, to see if they want to add those children as contacts is demonstrably false.  At best, these allegations demonstrate that Plaintiffs' counsel did not undertake the "reasonable and competent inquiry" required by Rule 11.  *Brooks Ent., Inc. v. Activision Blizzard, Inc.*, No. 21-CV-2003 TWR (MDD), 2022 WL 2706162, at *3 (S.D. Cal. July 12, 2022).  At worst, they consist of outright lies.

The Amended Complaint further alleges without any basis that Snap purportedly knew of the *specific* crimes committed against all three named Plaintiffs.  These allegations are false and, not surprisingly, the Amended Complaint is devoid of any evidentiary or factual support for these allegations.

Manufacturing false allegations against Snap in an attempt to stave off a motion to dismiss falls squarely within the type of conduct Rule 11 was designed to prohibit.  A reasonable inquiry—even merely downloading the Snapchat app (which is available to the public and free) and using it—would have shown Plaintiffs' counsel that their new allegations are false.  Snapchat's Quick Add function does not recommend friend connections between any two people (whether adults or minors) unless there are indicia that they are likely to already know each other: either mutual friends on Snapchat or being contacts in each other's phone address books.  It does not, as Plaintiffs falsely suggest, allow an adult to stand next to a school and quickly add minor children inside the school as friends based on geolocation.  Nor does Snapchat permit connections based on shared interests— another false allegation asserted in the Amended Complaint.  By default, Snapchat profiles do not even include pictures of the user and do not identify any user by age or gender.

Plaintiffs' new allegations appear designed to parrot a recent decision (published after Snap's motion to dismiss filing) involving a website called

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

Omegle.com, which explicitly markets itself as a way to "Talk to Strangers!"  *A.M. v. Omegle.com, LLC*, No. 3:21-CV-01674-MO, 2022 WL 2713721, at *1 (D. Or. July 13, 2022).  The Court's decision allowing a claim against Omegle to proceed in the face of Section 230 hinged on Omegle's intentional pairing of strangers together randomly, something Snap ***does not do***.  Plaintiffs further allege that Snap "knew" (FAC ¶¶ 108, 114, 122) of the crimes being committed, in what appears to be a brazen attempt to analogize Snap to a website called Backpage.  In the case of Backpage, the Chief Executive Officer pled guilty to conspiracy to commit prostitution.[2]  He also admitted that Backpage's moderation efforts were designed to facilitate prostitution and were part of a "company-wide policy of concealing" prostitution services offered through Backpage.  The false claims about Snapchat automatically connecting adult strangers with children—and that Snap knew of the crimes—are offensive, without an iota of factual basis, and exactly the type of allegations Rule 11 sanctions are meant to deter.

After Plaintiffs filed their Amended Complaint with a number of inflammatory allegations that lack any factual support, Snap provided Plaintiffs' counsel with evidence demonstrating the falsity of these allegations and asked Plaintiffs to withdraw the Amended Complaint.  Plaintiffs' counsel refused, which necessitated the instant motion.  Because Plaintiffs' counsel failed to conduct a reasonable inquiry prior to filing baseless and false allegations, and because they failed to withdraw those allegations upon being made aware of their falsity, the Court should issue sanctions against Plaintiffs' counsel pursuant to Rule 11.  Specifically, the Court should exercise its discretion to dismiss the Amended

---

[2] *United States v. Ferrer*, No. CR-18-464-PHX-DJH (D. Ariz. 2018) (Dkt. 7-1 at 13:5-7.) The Court can judicially notice this publicly filed plea agreement, which is available at the following link: https://www.justice.gov/opa/pr/backpage-s-co-founder-and-ceo-well-several-backpage-related-corporate-entities-enter-guilty.  *See, e.g.*, *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1191 (9th Cir. 2011) (noting that "[j]udicially noticeable documents . . . include the charging document [and] written plea agreement").

Complaint in its entirety without prejudice allowing Plaintiffs to remove the offending allegations in the following paragraphs:  FAC Prelim Stmt. 2:7-8; 3:17-18; 3:22-24; 4:14-16; ¶¶ 15, 74, 75, 76, 89, 90, 108, 114, 119, 121, and 122 and refile without further revision.  If Plaintiffs want to argue that their claims should survive a motion to dismiss, they must do so on the basis of how Snapchat actually operates, which is ascertainable by anyone using the app—they cannot invent a fiction of how Snapchat operates and try to survive a motion to dismiss based on that false description.  The Court should further issue monetary sanctions to compensate Snap for its reasonable attorneys' fees incurred in having to bring this motion.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Snap Moved to Dismiss Plaintiff L.W.'s Initial Complaint.

On May 2, 2022, L.W. filed the initial Complaint in this action as the sole Plaintiff.  (Dkt. 1.)  She admitted in that pleading that she did not meet her sexual perpetrator on Snapchat, but on a different social media platform (Instagram).  (*Id.* at ¶ 2.)

Plaintiff L.W. focused her theory of liability on her claim that Snapchat's ephemeral messaging was a defectively designed product because it allegedly encourages criminals to contact and communicate with minors.

On June 30, 2022, Snap moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for numerous reasons including pursuant to Section 230 of the Communication Decency Act.  (Dkt. 35.)  Recent Ninth Circuit case law made Plaintiff L.W.'s ephemeral messaging theory untenable.  (*Id.* (citing, *e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020).)

**B.    Plaintiff Did Not Oppose Snap's Motion to Dismiss, and Instead Amended the Complaint with False Allegations Designed to Evade Controlling Law.**

Rather than opposing Snap's motion to dismiss, on August 18, 2022, Plaintiffs' counsel amended the complaint to add two new plaintiffs, C.O. and C.A., as well as adding a slew of false allegations against Snap to attempt to plead around Snap's motion to dismiss.  (Dkt. 41.)

**C.    Plaintiffs Refused to Withdraw these False Allegations Following a Meet and Confer.**

In an attempt to resolve this issue without motion practice and to educate Plaintiffs' counsel about the falsity of the new allegations, on September 8, 2022, Snap's counsel met and conferred with Plaintiffs' counsel by telephone. (Declaration of J. Alexander Lawrence ¶¶ 2-3.)  On October 6, 2022, Snap served its Rule 11 motion on Plaintiffs' counsel.  Pursuant to the Rule, Plaintiffs had 21 days to withdraw the false and unsubstantiated allegations highlighted in the Rule 11 motion.  Because they did not, Snap has no choice but to file this motion.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 11 authorizes sanctions against a party who files a pleading that is frivolous, legally unreasonable, without factual foundation, or otherwise brought for an improper purpose.  *Ewing v. Flora*, No. 14CV2925 AJB (NLS), 2015 WL 12564225, at *6 (S.D. Cal. Mar. 25, 2015) (citing *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994)); *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997).  "Frivolous" filings are those that are "both baseless and made without a reasonable and competent inquiry."  *Id.*  Courts evaluating Rule 11 motions "conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Brooks Ent., Inc. v. Activision Blizzard, Inc.*, No. 21-CV-2003 TWR (MDD), 2022

WL 2706162, at *3 (S.D. Cal. July 12, 2022) (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)).

"[I]n determining whether Rule 11 has been violated, a 'court must consider factual questions regarding the nature of the attorney's pre-filing inquiry and the factual basis of the pleading.'" *Mogan v. Sacks, Ricketts & Case LLP*, No. 21-CV-08431-TSH, 2022 WL 119212, at *2 (N.D. Cal. Jan. 12, 2022) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990)). Rule 11 requires that pleadings contain more than guesswork and mandates that "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). When counsel files or later advocates a position after learning such a position is without merit, Rule 11 merits sanctions. *Buster*, 104 F.3d at 1190 n.4.

## IV. THE AMENDED COMPLAINT'S FALSE ALLEGATIONS MERIT RULE 11 SANCTIONS

### A. The New Allegations Are Manifestly False and Prohibited by Rule 11.

Plaintiffs' new allegations fail to meet Rule 11's first prong requiring that they have a basis in fact from an objective perspective. To evaluate this prong, the Ninth Circuit has noted that the "reasonable [person] against [whom] conduct is tested is a competent attorney admitted to practice before the district court." *See G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003) (citation omitted). The "subjective intent of the . . . [filer] to file a meritorious document is of no moment." *Id.*

Here, at a minimum, a competent attorney would have tested Snapchat's features to confirm the allegations in the Amended Complaint. Had Plaintiffs' counsel conducted the reasonable inquiry required under Rule 11, which they had ample time to do, it would have been readily apparent that the allegations at issue lack any factual support. *Bus. Guides v. Chromatic Comm'ns Enters., Inc.*, 119 F.R.D. 685, 689 (N.D. Cal. 1988) (sanctioning plaintiff for failure to make

reasonable inquiry because he "could easily have checked on the accuracy" of information alleged).  By "carelessly stating facts that have no evidentiary support, Plaintiff[s] [have] failed to comply with Rule 11."  *See Ayvazian v. Moore Law Grp.*, No. 2:12-CV-01506-ODW(Ex), 2012 WL 2411181, at *4 (C.D. Cal. June 26, 2012).

### 1.     Plaintiffs' Allegations Concerning Snapchat's Quick Add Feature Are Demonstrably False.

Plaintiffs mischaracterize Snapchat's Quick Add feature in order to allege that adult "perpetrators" can use it to "find minor aged children" even if they do not know them.  (FAC ¶ 90.)  Specifically, Plaintiffs allege as follows:

- "Even before any messaging occurs, the adult perpetrators know to 'quick add' young children by looking at recommended profiles of children."  (*Id.* Prelim Stmt. 2:7-8.)

- "Upon information and belief, for example, the Quick Add function recommends users to add others based on similar geo-location as well as similar topics of interest."  (*Id.* ¶ 76.)

- "Particularly troubling is the quick add function enabled based upon geo-location and mutual friendships – this allows local perpetrators to find minor aged children in their local area and add other friends of the minor users as they are recommended on the Quick Add function. This enables local perpetrators to connect with minor aged children and vice versa without warning or privacy."  (*Id.* ¶ 90.)

- "Snap also failed to warn its users about the fact that adult perpetrators of sex crimes who are charged of such crimes has unfettered access to minor children on Snapchat platform."  (*Id.* ¶ 119.)

As anyone who has ever opened the Snapchat platform and looked at the Quick Add feature would know, these allegations are false.

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

*First*, adults do not "know to 'quick add' young children" by "looking at recommended profiles of children," because Quick Add by default merely shows the person's Snapchat username, display name[3], and a cartoon avatar (called a Bitmoji) of the individual.  (Declaration of David Boyle ¶¶ 7-12.)



(*Figure 1.*)

Nothing in the profile would reveal whether a user is an adult or a minor. And because any user can choose any Bitmoji to represent themselves, there are no inferences criminals can draw from the cartoon avatars.  (Boyle Decl. ¶12.)  Even clicking on the person's name to pull up their profile does not reveal their age, gender, birthday, interests, or, by default, pictures or any identifying information.

---

[3] A display name is a nickname that the user chooses for themselves, it does not need to be unique to that user, and can be easily changed at any time.  A username, however, is the persistent identity that is harder to change, and which must be unique to the user.

(*Id.* ¶14.)  Nor does it typically reveal any of their posts.[4]  Plaintiffs' counsel could have easily verified all of this by downloading Snapchat and inspecting the Quick Add feature.  Either they intentionally did not do so, or they did and nevertheless chose to make these baseless allegations.

---

[4] As noted in fn. 1, *supra*, for the vast majority of users, no other information is displayed. Users do have the option, however, to adjust their "Story Settings" and change the default settings for who can view their Stories. The default setting—"My Friends"—is that Stories are visible only to a user's bi-directional friends. By manually adjusting the default settings, a user can decide to make the audience either narrower (the "Custom" setting, whereby users can select Friends who are not able to see their Stories) or broader (the "Everyone" setting, whereby any Snapchat user who views their profile can see their Stories). The "Everyone" setting is the least chosen option. Less than 10% of Snapchat users under 18 change their default settings to share with Everyone. And unlike other social media applications like Facebook or Instagram that include posts from years back, a user's Story posts are only available for 24 hours. A user's Story is comprised of photos or short videos taken by the user. Thus, if the user has changed their default settings to share their Stories with Everyone, it is possible for another user to view that user's profile and also see any Stories that user posted in the prior 24 hours. There is no setting, however, that would allow a Snapchat user to share any additional information—such as age, birthday, friend list, location, interests, etc.—with non-friends.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



*(Figure 2.)*

17     *Second*, Quick Add does not enable adults to find minors they do not know

18 through geographic location or shared topic interests.  (*Id.* ¶15.)  It has never done

19 so.  (*Id.*)[5]  At all times relevant to Plaintiffs' allegations, Quick Add has not

20 suggested user profiles for connection unless there are indicia that the two users are

21 likely to already know each other.  (*Id.* at ¶¶15-16.)  Specifically, the two users who

22 appear as friend suggestions under "Quick Add" must either (1) have mutual

23 friends on Snapchat or (2) one must have the other's phone number or email

24 _____

25     [5] In support of their geolocation and mutual interest allegation, Plaintiffs make reference
   to a single blog post (FAC at 14, n.5), postulating how Quick Ad works, written by Deyan
26 Georgiev, whose credentials appear to be that he has "been fascinated by technology his whole
   life" and that he makes "mean dizzying Island Paradise cocktails."  *See* TechJury, About Deyan
27 Georgiev, available at https://techjury.net/author/deyangeo/.  Relying on a blog post by a random
   individual that lacks any evidentiary support is far from the type of investigation contemplated by
28 Rule 11.

SF-4920437

address in their phone's contact book.  (*Id.* at ¶16.)  An adult cannot, for example, stand in front of a high school and use Quick Add to get friend suggestions for the students inside.  (*Id.* at ¶17.)  Nor, for example, could an adult express a shared interest in a popular teen pop star with the hopes of connecting with teenagers.  (*Id.* at ¶18.)  This set of allegations could have easily been verified by Plaintiffs' counsel conducting rudimentary testing with the Snapchat app.  Either they did not conduct such a reasonable inquiry, or they did and proceeded to assert the false allegations anyway.

Rule 11 requires, at a minimum, that Plaintiffs' counsel investigate their allegations about how Snapchat and its Quick Add feature work in order to confirm their accuracy.  *Bus. Guides*, 119 F.R.D. at 689.  They could have easily done so, given that a few minutes using the Snapchat app would reveal how it works.  *Id.* That they did not make such an investigation (or chose to plead falsehoods regardless), warrants sanctions.  *Brooks Ent.*, 2022 WL 2706162 (issuing sanctions where facts detailed in the complaint were false or exaggerated and information confirming so was available to counsel); *Hunt v. Sunny Delight Beverages Co.*, 8:18-CV-00557-JLS-DFM, 2018 WL 6786265, at *4 (C.D. Cal. Dec. 18, 2018) (issuing sanctions where it was "apparent that Plaintiffs' counsel did not undertake the most fundamental of investigations—namely, examining the actual Product labels—before filing the First Amended Complaint").

## 2. There Is No Basis to Allege that Snap Knew of the Specific Crimes Committed Against Plaintiffs.

The Amended Complaint contains a slew of assertions that supposedly "Snap knew" about ***specific crimes*** committed against L.W., C.O., C.A., and other unidentified Snapchat users.  (FAC ¶¶ 108, 114, 122).  These allegations are false and manufactured for the purpose of attempting to plead around Snap's motion to dismiss, which Rule 11 prohibits.  Specifically, Plaintiffs allege the following, none of which has any basis in fact:

- "Given the troves of data and information about its users Snap collects, Snap knew about the instances of sexual grooming, and CSAM distribution, and other sex crimes committed against L.W., C.O. and C.A., as well as many other users."  (*Id.* ¶ 108.)

- "If one were to take Snap's own representations as true, Snap knew – through the troves of user data that they collect – that predators including B.P and other predators who committed crimes against minor plaintiffs L.W., C.A., and C.O. were having explicitly illegal, sexually abusive conversations with each of the minor Plaintiffs here[.]"  (*Id.* ¶¶ 114, 122.)

Plaintiffs' mere conjecture that the "troves of user data that [Snap] collect[s]" means that Snap knew of these and other crimes is exactly the type of conduct that Rule 11 is designed to prevent.  *Ayvazian*, 2012 WL 2411181, at *4.  There are no facts alleged in the Amended Complaint—or any evidence whatsoever—that Snap supposedly knew about any sexual abuse perpetrated by criminals against any of the named Plaintiffs.  (Declaration of Matt Dougherty ¶¶10-12.)  Indeed, during their meet and confer discussion, Plaintiffs' counsel was unable to identify a single factual basis to support these false allegations.  (Lawrence Decl. ¶ 2.)  Moreover, Snap does not mine its users' private messages for data to use for targeted advertisements or any other purpose.  (Boyle Decl. ¶ 6.)  Plaintiffs' counsel's refusal to withdraw these inflammatory and false allegations are clearly in violation of Rule 11 and merit the requested sanctions.  *See*, *e.g.*, *id.*; *Brooks Ent.*, *supra*; *Bus. Guides*, *supra; Hunt, supra*.

### 3. Allegations That Certain Unspecified Number of Perpetrators First Connected with Plaintiff C.O. Through Quick Add Lack Any Factual Basis.

Plaintiffs admit that they did not meet their adult perpetrators through Snapchat, but instead through various ***other apps*** such as Instagram, Twitter, Kik, or Omegle.  (FAC ¶¶ 2, 44, 45, 59, 69.)  Plaintiff L.W. concedes she met B.P., her adult perpetrator, on Instagram, not Snapchat.  (*Id.* ¶ 2.)  Plaintiff C.A. admits

meeting her first perpetrator on Twitter, not Snapchat.  (*Id*. ¶ 44.)  A second perpetrator allegedly contacted Plaintiff C.A., but again this was through another social media site, Kik—not Snapchat.  (*Id*. ¶ 59.)  Plaintiff C.O. admits to meeting her first perpetrator on Omegle, not Snapchat.  (*Id*. ¶ 69.)  The Quick Add allegations are therefore irrelevant to these plaintiffs' claims, since they do not even allege that Quick Add played any role in how they came to be in contact with their perpetrators.

Despite these admissions, Plaintiffs nevertheless vaguely allege in the same pleading that some unspecified number of perpetrators "approached" (*e.g.*, *id*. 3:21-24) Plaintiff C.O. directly via Quick Add on Snapchat:

- "Between 2018 until now, C.O. was approached by 4 or 5 adult perpetrators on Snapchat who connected with her using Snapchat's "Quick Add" function or through other contacts and apps."  (*Id*. Prelim. Stmt. 3:22-24.)

- "Since 2018, four or five additional perpetrators sought to connect with C.O. on Snapchat. These perpetrators similarly coerced her to send nude photos and CSAM.  Some of these individuals connected with C.O. using Snapchat's "Quick Add" function."  (*Id*. ¶¶ 74-75.)

The Amended Complaint is devoid of any other details as to the alleged "four or five additional perpetrators" who "sought to connect with C.O.[] on Snapchat," some of whom Plaintiffs allege "connected with C.O.[] using Snapchat's 'Quick Add'" feature.  (*Id*. ¶¶ 74-75.)

Plaintiffs' counsel failed to conduct the most rudimentary step of investigating whether their clients were contacted by additional perpetrators, and if so, the number of such individuals and how such connections were allegedly made. One would imagine that if each of these supposed "additional perpetrators" received nude photos and CSAM from Plaintiff C.O., each would have been reported to the authorities such that the number of additional perpetrators would be clear.  Nonetheless, Plaintiffs' counsel fails to plead which of these perpetrators

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

allegedly used the Quick Add feature, vaguely alleging only that "some" of them did.  If Plaintiffs' counsel had evidence that these perpetrators connected with Plaintiff C.O. by Quick Add, they would surely know the number who did.  The only allegations that have any factual basis at all show that Plaintiffs met the criminals through *other* apps—Instagram, Twitter, Kik, and Omegle—not Snapchat.

None of these allegations would have been difficult to investigate.  Plaintiffs' counsel had access to Plaintiff C.O.'s devices and accounts on Snapchat and other services.  They could have reviewed them to determine (a) where Plaintiff C.O. met each of the adult perpetrators, (b) how many adult perpetrators got Plaintiff C.O. to send them nude photographs and CSAM, and (c) whether Plaintiff C.O. and the additional perpetrators had already shared information about their Snapchat account, or had exchanged other contact information that would have sufficed for a mutual connection through Quick Add.  They either did not take the necessary and required time to do this investigation, or decided to knowingly plead falsehoods.

Either way, Plaintiffs' counsel's decision to plead allegations in the Amended Complaint that are devoid of any evidentiary support is sanctionable under Rule 11 because it constitutes frivolous guesswork and lacks basis in fact. *See*, *e.g.*, *id.*; *Brooks Ent.*, *supra*; *Bus. Guides*, *supra*; *Hunt, supra*.

### 4.   Allegations That Perpetrator B.P. Employed Multiple Accounts to Target Other Victims Lack Any Factual Support.

Plaintiffs allege that "[u]pon information and belief, B.P. used various accounts on Snapchat like a disposable burner phone, to approach new victims and hide his tracks from previous victims, legal guardians, or law enforcement."  (FAC ¶ 15.)  On June 17, 2022, the Court entered its Order Granting Joint Stipulation for Protective Order.  (Dkt. No. 22).  Following entry of the order, Plaintiffs' counsel provided counsel for Snap a *single username* for B.P. on Snapchat.  Plaintiffs fail to

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

identify any factual basis to support the allegation that B.P. had "multiple accounts" on Snapchat.  If B.P. had multiple accounts, his additional usernames could and should have been provided pursuant to this Court's Order.

### 5.   Plaintiffs' Allegation that Snapchat Has *No* Procedures in Place to Guard Against Repeat Offenders Are Demonstrably False.

Plaintiffs' counsel make a slew of false and inflammatory allegations about how adult perpetrators can supposedly create multiple "disposable" and "burner" accounts on Snapchat to repeatedly abuse children, such as:

- "Snapchat had no procedures in place to keep known offenders and repeat-abusers away from its platform."  (FAC Prelim Stmt. 3:17-18.)

- "[A] user may simply develop a new account each and every time to commit heinous crimes against minors." (*Id.* Prelim Stmt. 4:14-16.)

- "Snapchat's design allows one user to make a disposable account, abuse children with it, delete it, and then make new accounts. Analogous to a burner phone, this makes it difficult for adults and law enforcement to track down the perpetrator.  Such function essentially makes Snapchat akin to a burner phone or a disposable glove used to hide a crime. C.A.'s perpetrator as well as many other perpetrators made use of Snapchat's design in committing crimes over and over again" (*Id.* ¶ 89.)

All of these allegations are demonstrably false.  (Dougherty Decl. ¶¶2-9.) Snapchat does in fact have numerous procedures in place to try to stop repeat violators of its Terms and content policies.  (*Id.*)  For instance, Snap has processes to identify known instances of CSAM and restrict the accounts of those who post it. (*Id.*)  Snap also works with law enforcement to identify known perpetrators and stop them from using Snapchat to commit further crimes.  (*Id.*)  These measures are publicly available on Snap's website.  (*Id.*)  Plaintiffs even cite to some of these website pages in the Amended Complaint.  (FAC fn. 19.)

1    Plaintiffs do not merely allege that Snap's measures to prevent known

2    abusers from creating new accounts are inadequate; they go so far as to allege that

3    there are ***none***, when in fact they know these allegations to be untrue.  For instance,

4    Plaintiffs cite to some of the measures Snap takes to detect and stop criminal

5    activity in the Amended Complaint.[6]  (*Id.* ¶ 107.)  Thus, Plaintiffs' counsel clearly

6    knows that the allegation that Snap has "no procedures in place" to detect criminal

7    activity is untrue, yet Plaintiffs' counsel elected to allege the falsehood anyway.

8    Plaintiffs' counsel are no doubt aware that multiple account creation is

9    ubiquitous across online communications platforms.  People can create multiple

10   email accounts on Google, multiple Twitter accounts, and any number of services.

11   So too can people buy multiple phones.  Plaintiffs' counsel must know that they

12   cannot plead their claims against Snap based on this alone, as Snap cannot be

13   expected to guard against a criminal using a different phone number, name, and

14   email to create multiple accounts.  Snap is not a bank that requires identity

15   verification using passport and driver's license (and holding that it should be

16   obligated to do so would eviscerate privacy online).  Knowing this, in an apparent

17   attempt to plead around Snap's original motion to dismiss, Plaintiffs' counsel has

18   asserted allegations in the Amended Complaint that Snap has "no procedures in

19   place" (*Id.* Prelim Stmt. 3:17) against criminals creating multiple accounts for the

20   purpose of committing crimes.

21   Based on their own cited sources, Plaintiffs' counsel are aware of that Snap

22   does have processes to detect and stop abuse of its platform and account creation

23   process.  Choosing to file their Amended Complaint, in the face of this knowledge,

24

25   _____

26   [6]  As conceded by Plaintiffs, Snap takes measures to (1) "enhance the safety and security
     of our products and services"; (2) "verify your identity and prevent fraud or other unauthorized or

27   illegal activity"; and (3) "enforce, investigate, and report conduct violating our Terms of Service
     and other usage policies, respond to requests from law enforcement, and comply with legal

28   requirements" (FAC ¶ 107.)

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

with allegations they knew lacked any evidentiary support merits sanctions.  *See*, *e.g.*, *id.*; *Brooks Ent.*, *supra*; *Bus. Guides*, *supra*; *Hunt*, *supra*.

**B.    The False Allegations Demonstrate that Plaintiffs' Counsel Did Not Conduct an Objectively Reasonable Inquiry.**

Plaintiffs' counsel's failure to conduct a "reasonable and competent inquiry" before signing and filing the Amended Complaint violates Rule 11.  *See*, *e.g.*, *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 950 (E.D. Cal. 2005) ("[A] paper . . . is sanctionable if counsel neglected to make 'reasonable inquiry' beforehand").

Counsel failed to conduct such an inquiry with respect to each category of allegations referenced in sections A(1)-(5) above:

Quick Add.  A quick test of the Snapchat app would show that Quick Add requires mutual connections, either mutual friends on Snapchat or being present in the other user's phone contacts.  It does not allow adults to target or connect with minors based on geolocation or shared interests.  Nor does Quick Add show the age or gender of suggested contacts.  A reasonable inquiry would have revealed that Quick Add, by default, shows only one's username, display name, and a cartoon avatar.  Counsel could have tested Quick Add in different geographic locations.  They could have tested it after expressing topic-related interests on Snapchat.  (Boyle Decl. ¶18.)  They apparently failed to conduct any such investigation, or if they did, deliberately chose to assert baseless and false allegations about how Quick Add works.

Snap's Purported Knowledge of Specific Crimes.  Counsel could have asked their clients if they ever advised Snap about the perpetrators' criminal activity.  The complete lack of any facts to support the allegations that Snap purportedly "knew" about any of the sexual predators' criminal acts against any of the plaintiffs demonstrates that Plaintiffs' counsel has no such evidence, and failed to conduct the requisite reasonable investigation which would have disclosed their falsity.

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

<u>Purported Source of Plaintiff C.O.'s Connections with Additional</u>
<u>Perpetrators</u>.  Plaintiffs did not initially connect with their respective perpetrators on Snapchat, but rather through other apps like Twitter, Instagram, Kik or Omegle. (FAC ¶¶ 2, 44, 59, 69.)  Yet in the Amended Complaint, counsel for Plaintiffs vaguely claims that a certain unspecified number of perpetrators initially connected with Plaintiff C.O. using Quick Ad on Snapchat.  The Amended Complaint is devoid of any facts to support these allegations.

<u>B.P.'s Purported Use of Multiple Usernames</u>.  Plaintiffs claim that B.P. used multiple usernames on Snapchat to perpetrate his crimes.  (*Id.* ¶ 15.)  But when asked to provide Snapchat usernames for B.P. pursuant to this Court's Order, Plaintiffs' counsel was apparently aware of only one username associated with B.P., demonstrating that their allegations regarding "multiple" usernames to be false or unsupported by any facts.

<u>Alleged Lack of Procedures for Blocking Previously Banned Offenders</u>.  The information belying these allegations is available on Snap's website.  Plaintiffs' counsel cites to it in their pleadings.  (*Id.* fn. 19.)  Either they did not read the website pages they cite, or they did and decided to proceed with these allegations in order to plead around Snap's motion to dismiss.  Under any circumstance, this is sanctionable.

Even if the Amended Complaint mixes false allegations with those that have some reasonable basis, this does not excuse Plaintiffs' counsel from sanctions.  A pleader may not avoid sanctions for making frivolous allegations by arguing that his complaint also contains non-frivolous allegations.  *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1990).

Nor can Plaintiffs' counsel stand behind an excuse that they were unaware of the falsehoods at the time they pleaded them before the Court.  Counsel for Snap met and conferred with Plaintiffs' counsel on September 8, 2022 to make them aware of the falsity of the new allegations at issue and asked that the Amended

Complaint be withdrawn.  (Lawrence Decl. ¶ 2.)  And Plaintiffs had 21 days after the service of this motion before it was filed.  But Plaintiffs' counsel did not withdraw those allegations or the Amended Complaint.  Such conduct is sanctionable conduct under Rule 11.  *See*, *e.g.*, *Amendments to Federal Rules of Civil Procedure*, 146 F.R.D. 401, 585, Committee Notes (1993) (sanctions appropriate where, as here, a party "advocate[es] positions contained in . . . pleadings and motions after learning that they cease to have any merit"); *see also Buster*, 104 F.3d at 1190 n.4 (affirming district court's decision to impose sanctions).

### C.   Plaintiffs' Inclusion of the False Allegations Is an Attempt to Stave Dismissal by Trying to Make this Case Analogous to Inapposite Case Law.

Snap suspects the impetus behind Plaintiffs' counsel's decision to include the new allegations at issue—especially the Quick Add allegations—constitutes an attempt to stave off dismissal by trying to make the instant case analogous to a recent decision issued (after Snap's initial motion to dismiss was filed) by a district court in Oregon involving another social media platform, Omegle.  *A.M. v. Omegle.com, LLC*, No. 3:21-CV-01674-MO, 2022 WL 2713721, at *1 (D. Or. July 13, 2022).

The court in *Omegle* denied a motion to dismiss on Section 230 grounds because Omegle "randomly pair[ed] strangers" together, including an "eleven year[] old" and a "man in his late thirties."  *Id.*  Importantly, Omegle was specifically designed for the purpose of introducing *strangers to strangers*, not to try to help people connect with people they already know in real life, which is how Snapchat works.  Indeed, Omegle's tagline is: Omegle: Talk to strangers! According to the Oregon district court, plaintiff's allegation that Omegle automatically connects adults with children they do not know was sufficient, at the pleading stage, to allege a product liability theory.  *Id* at *4.

Here, in a transparent attempt to (mis)characterize Snapchat as analogous to Omegle, Plaintiffs allege that Snapchat's Quick Add feature can be used to match children and adult sexual predators based on geographic proximity or shared interests, even if they do not know each other and have no mutual connections. (FAC ¶¶ 76, 90).  This allegation is completely false. Snapchat does not connect strangers—like the Omegle app.  Instead, Snapchat connects users with other users *they already know or with whom they share mutual connections*.  This is evident by the fact that Quick Add is dependent on one user having the other user's contact information already in their phone or already sharing a mutual connection.

The features of Omegle on which the district court's decision turned are not—and have never been—part of Snapchat.  Plaintiffs' counsel would know this had they conducted even a cursory investigation.  Regardless, Snap's counsel informed them during the meet and confer process and by service of this motion.

Further, as to the false allegations about Snap's knowledge of the crimes committed, these appear to be an attempt to analogize Snap's conduct to Backpage, a website whose Chief Executive Officer pled guilty to state and federal crimes including conspiracy to commit prostitution.  (*See* fn. 1, supra.)  Here too Plaintiffs have no basis for these allegations.  Backpage's CEO explicitly acknowledged that he "conspired with other Backpage principals . . . to find ways to knowingly facilitate the state-law prostitution crimes being committed by Backpage's customers."  (*Id.*)  He further admitted that the "moderation" process instituted at Backpage was "merely intended to create a veneer of deniability for Backpage" and "did not . . . change the essential nature of the illegal service being offered."  (*Id.* at 13:12-18.)  There is no basis to allege anything of the sort as to Snap, and it is outrageous that Plaintiffs attempt to do so.

In all, the decision by Plaintiffs' counsel to manufacture allegations about how Snapchat supposedly works in an attempt to make this case like *Omegle*, when it is not, and to allege that Snap "knew" of the crimes being committed to make this

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

case like *Backpage*, when it did not, is in bad faith and the type of conduct Rule 11 is designed to deter.

### D. The Court Should Issue Non-Monetary and Monetary Sanctions, Including Dismissal of the FAC.

Sanctions under Rule 11 are appropriate because (1) the new allegations at issue in the Amended Complaint lack any factual basis and (2) Plaintiffs' counsel failed to make an objectively reasonable inquiry. The Court has discretion to impose both nonmonetary and monetary sanctions. *See* Amendments to Federal Rules of Civil Procedure and Forms, 146 F.R.D. 401, 587, Committee Notes (1993) (noting the "Court['s] significant discretion in determining what sanctions" should be imposed). Sanctions in such circumstances are designed "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Cooter*, 496 U.S. at 393 ("[T]he central purpose of Rule 11 is to deter baseless filings in district court").

Both monetary and non-monetary sanctions are warranted under the circumstances of this case.

First, the Court should dismiss Plaintiffs' Amended Complaint in its entirety. To the extent Plaintiffs wish to refile their Amended Complaint, the Court should require that they strike the allegations identified in this motion (FAC Prelim Stmt. 2:7-8; 3:17-18; 3:22-24; 4:14-16; ¶¶ 15, 74, 75, 76, 89, 90, 108, 114, 119, 121, and 122) and refile without further revision. Plaintiffs should be required to strike the "sanctionable misrepresentations" that Snap identifies because they "taint the entire pleading." *Hunt*, 2018 WL 6786265, at *4 (granting Rule 11 sanctions and dismissing entire complaint containing false allegations). The Court should "not parse through Plaintiffs' allegations to determine which, if any, are salvageable, unimplicated by Plaintiffs' dishonesty[.]" *Id*. at *4. Nor should the Court "require Defendant to do the same on another motion to dismiss or motion to strike" the Amended Complaint as it currently stands. *See id.* Allowing the case "to proceed

SF-4920437

1   on the First Amended Complaint" absent removal of the false allegations, having

2   "arrived at the current posture on false premises[,]" would be "manifestly unjust."

3   *Id.*  This would also "not deter Plaintiffs' conduct or comparable conduct by others

4   similarly situated." *Id.* (citing Rule 11).

5          Because the "false factual premises underpin the [Amended Complaint] as it

6   is currently framed," the Court should dismiss it in its entirety and require that

7   Plaintiffs refile it without the false allegations that are the subject of the instant

8   motion and that violate Rule 11.  *See Rattagan v. Uber Techs., Inc.*, 19-CV-01988-

9   EMC, 2019 WL 3891714, at *5 (N.D. Cal. Aug. 19, 2019).  Second, the Court

10  should award monetary sanctions to remedy the resources Snap was forced to

11  expend because Plaintiffs' counsel refused to voluntarily remove the false

12  allegations from the Amended Complaint despite having ample time to do so.  Fed.

13  R. Civ. P. 11(c)(4) (the court may direct "payment to the movant of part or all of

14  the reasonable attorney's fees and other expenses directly resulting from the

15  violation").  This should include the fees for Snap to prepare this motion, to confer

16  with Plaintiffs' counsel regarding the allegations that clearly violate Rule 11, and

17  any subsequent costs Snap is forced to incur in order to litigate this motion.  *See*

18  *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993) (where the "original complaint is

19  the improper pleading, all attorney fees reasonably incurred in defending against

20  the claims asserted in the complaint form the proper basis for sanctions") (citation

21  omitted).

22  **V.   CONCLUSION**

23         Because the Amended Complaint contains multiple allegations that lack any

24  factual support, and since Plaintiffs' counsel failed to conduct an objectively

25  reasonable inquiry before or after filing the Amended Complaint, the Court should

26  issue Rule 11 sanctions dismissing the Amended Complaint in its entirety without

27  prejudice, requiring Plaintiffs to strike the false allegations Snap identifies prior to

28  re-filing, with no further revision, and compensating Snap for the resources it was

SF-4920437

CASE NO. 3:22-cv-00619-LAB-MDD
MOTION FOR RULE 11 SANCTIONS

1  forced to expend as a result of Plaintiffs' counsel's decision to file a complaint that

2  violates Rule 11.

3

4

5  Dated:  October 27, 2022          MORRISON & FOERSTER LLP

6

7                                   By:  _____/s/ Jessica L. Grant_____

8                                        Jessica L. Grant
                                         JGrant@mofo.com

9                                        Attorneys for Defendant

10                                       SNAP INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SF-4920437