Natalie J. Morgan, State Bar No. 211143
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real
San Diego, CA 92130
Telephone: (858) 350-2303
Facsimile: (858) 350-2399
Email:  NMorgan@wsgr.com

Brian M. Willen, New York State Bar No. 4191730 (*pro hac vice*)
Benjamin D. Margo, New York State Bar No. 5318944 (*pro hac vice*)
Vivek V. Tata, New York State Bar No. 5480470 (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Email:  BWillen@wsgr.com
         BMargo@wsgr.com
         VTata@wsgr.com

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.W., *minor child through her legal guardian Jane Doe, on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SNAP INC., APPLE INC., and GOOGLE LLC,<br><br>Defendants. | CASE NO.: 3:22-cv-00619-LAB-MDD<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>The Hon. Larry Alan Burns<br>Hearing Date: November 15, 2022<br>Time: 11:15 A.M.<br>Courtroom: 14A<br><br>Magistrate Judge: Mitchell D. Dembin<br>First Am. Complaint Filed: 8/22/2022 |

# **TABLE OF CONTENTS**

**PAGE**

I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW ............ 1

    A. Plaintiffs' Design Defect Claim Fails As A Matter Of Law ................ 1

        1. Google Play Is Not A Product ....................................................... 1

        2. Plaintiffs Fail To Establish Causation ........................................ 2

    B. Plaintiffs' Failure To Warn Claim Fails As A Matter Of Law ............ 3

    C. Plaintiffs' Negligence Claim Fails As A Matter Of Law ..................... 4

    D. Plaintiffs' Fraud-Based Claims Fail As A Matter Of Law ................. 5

II. SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS ............................. 7

    A. Plaintiffs Seek To Hold Google Liable As A Publisher ...................... 7

    B. Recent Ninth Circuit Authority Forecloses Plaintiffs' TVPRA Claim ................................................................................... 10

III. CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*A.M. v. Omegle.com, LLC*,
   2022 U.S. Dist. LEXIS 123695 (D. Or. July 13, 2022) ............................................ 7

*Anderson v. TikTok, Inc.*,
   2022 WL 14742788 (E.D. Pa. Oct. 25, 2022) ....................................................... 7, 8

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119, 1125 (9th Cir. 2003) ........................................................................ 8

*Crowe v. Tull*,
   126 P.3d 196 (Colo. 2006) ........................................................................................ 5

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016) ................................................................................ 4, 9

*Doe v. Internet Brands, Inc.*,
   2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) ...................................... 4

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021) ..................................................................... 8

*Does 1-6 v. Reddit, Inc.*,
   2022 WL 13743458 (9th Cir. Oct. 24, 2022) .................................................... 1, 10

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) .............................................................................. 7, 8

*Fair Hous. Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) .................................................................................. 8

*Hammerling v. Google LLC*,
   2022 WL 2812188 (N.D. Cal. July 18, 2022) .......................................................... 6

*HomeAway.com v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2018) ................................................................................ 8, 9

*Jackson v. Airbnb*,
   No. 2:22-cv-3084-DSF-JC (C.D. Cal. Nov. 4, 2022), ECF No. 34 ................. 1, 4, 5

*Jackson v. Airbnb*,
    No. 2:22-cv-3084-DSF-JC (C.D. Cal. Nov. 4, 2022), ECF No. 33 ...................... 2, 7

*Kempf v. Lumber Liquidators, Inc.*,
    2017 WL 4288903 (W.D. Ky. Sept. 27, 2017) ........................................................ 5, 6

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ..................................................................................... 8

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................................... 6

*Lemmon v. Snap*,
    995 F.3d 1085 (9th Cir. 2021) ........................................................................ 1, 2, 4, 7

*Loomis v. Slendertone Distrib., Inc.*,
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ...................................................................... 5

*Lounge v. Midvale Indem. Co.*,
    2022 WL 316674 (S.D. Cal. Feb. 2, 2022) ................................................................ 3

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ....................................................................... 5

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) ............................................................................... 1, 2

**STATUTES**

18 U.S.C. § 1591 ............................................................................................................... 10

47 U.S.C. § 230 ............................................................................................................ *passim*

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................................. 5

Plaintiffs' omnibus Opposition ("Opp.") (ECF No. 63), which focuses mainly on Plaintiffs' arguments against Snap, largely fails to respond to Google's Motion to Dismiss ("MTD") (ECF Nos. 51, 51-1). Where the Opposition does respond, it makes clear Plaintiffs' real goal: to radically expand products liability law and negligence in the hopes of evading the immunity provided by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"). But a decade of precedent—including the Ninth Circuit's very recent decision in *Does 1-6 v. Reddit, Inc.*, 2022 WL 13743458 (9th Cir. Oct. 24, 2022)—confirms that this effort fails as a matter of law. Plaintiffs have not pleaded any viable cause of action against Google, and even if they had, such claims are barred by Section 230. Because the defects in Plaintiffs' FAC (ECF No. 43) cannot be cured by further amendment, the Court should grant Google's MTD with prejudice.

## I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW

### A. Plaintiffs' Design Defect Claim Fails As A Matter Of Law

#### 1. Google Play Is Not A Product

Google's MTD explained why software and algorithms are not considered "products" for purposes of strict product liability law—and that authority applies even more strongly to an app *store* like Google Play, a digital service that publishes third-party software for download. MTD at 3-6; *see also, e.g.*, *Jackson v. Airbnb*, No. 2:22-cv-3084-DSF-JC (C.D. Cal. Nov. 4, 2022), ECF No. 34 at 18 (dismissing product liability claim because Airbnb is a "'marketplace' and not a product") (filed herewith as Ex. A to the Declaration of Vivek Tata). Plaintiffs do not try to engage, much less distinguish, the authorities cited by Google. Instead, they mischaracterize two cases, *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991) and *Lemmon v. Snap*, 995 F.3d 1085 (9th Cir. 2021), as holding that software is a product. Opp. at 17-18.

Neither case says anything of the kind. Plaintiffs take out of context the Ninth Circuit's observation in *Winter*—in a statement that is barely even dicta—that some "software that fails to yield the result for which it was designed *may*" be analogous to a defective aeronautical chart, which *may* be considered a product in some jurisdictions.

938 F.2d at 1035-36 (emphasis added). But *Winter*'s actual holding firmly rejected an attempt to expand products liability law to "ideas and expression in a book"—even when limited to "books that give instruction on how to accomplish a physical activity and that are intended to be used as part of an activity that is inherently dangerous." *Id.* at 1035-36. *Winter* fully supports the conclusion that a software-based service like Snap, which is simply a vehicle for expressive content and communication, is not a tangible product— and, *a fortiori*, neither is the online app store that makes such apps available.[1]

*Lemmon* is even farther afield: the Ninth Circuit did not even reach the question of whether the Snapchat app was a product, because the district court had not addressed that issue. Plaintiffs selectively quote references to Snapchat as a "product"—but the court was limiting itself to the issue before it, which was whether Section 230 would bar the claim assuming, as the plaintiffs argued, that Snapchat was a defective product. 995 F.3d at 1095. The Ninth Circuit expressly refrained from addressing the merits of the product defect claim, and it agreed that Snapchat was the provider of a computer "service" for purposes of Section 230. *Id.* at 1091; *accord Jackson*, No. 2:22-cv-3084-DSF-JC (C.D. Cal. Nov. 4, 2022), ECF No. 33 at 4-5 (rejecting same argument about *Lemmon*) (filed herewith as Ex. B to the Declaration of Vivek Tata).

### 2.    Plaintiffs Fail To Establish Causation

Plaintiffs assert that Play injured them because "it is more than plausible that either the traffickers or those to whom Plaintiffs' CSAM images are being continuously circulated to on Snapchat and/or Chitter are customers of Google Play." Opp. at 18. But the FAC does not plausibly allege that any perpetrator (or recipient of CSAM) actually downloaded the apps in question from Google Play, much less did so because of anything Google supposedly did. MTD at 5-6. Moreover, speculation that third-party criminals *may*

---

[1] Plaintiffs' conclusory assertion that they are "*not* challenging any expressive content," Opp. at 17, ignores the basic thrust of their case—which is to claim that Snap, a service that exists to facilitate expressive conduct, and two app platforms that facilitate the dissemination of all manner of expression, are defectively designed as a matter of law.

have used a general-purpose app store to download a third-party communications app on which they later committed crimes simply does not suffice to establish that Google's allegedly defective algorithms proximately caused the injuries Plaintiffs suffered at the hands of those criminals. *Id*. That is especially so because, as the FAC concedes, the relevant apps were also available on at least one other app platform (Apple's) and the CSAM was distributed broadly on the "internet." *E.g.*, FAC ¶¶ 49, 56.[2]

### B. Plaintiffs' Failure To Warn Claim Fails As A Matter Of Law

Plaintiffs' defense of their failure to warn claim is confusing and inconsistent with the FAC. The FAC alleges Google is liable for failing to warn about purported flaws in its own "product" (Google Play). FAC ¶ 217. But the Opposition abandons that theory and instead argues that Google failed to warn about the risk that abusive or illegal behavior may occur *on third-party apps* like Chitter and Snap. Opp. at 19. This argument cannot save the claim.

Plaintiffs cite no authority for the proposition that a "manufacturer" of one "product" can be liable for failing to warn about the risk of criminal misuse of a separate third-party product—unsurprisingly, because as Google showed in the MTD, this is not the law. MTD at 7-8. Plaintiffs also never address a central causation problem in their "failure to warn" theory: they cannot identify any specific warning that would have prevented the criminal actions on these third-party services. Indeed, Plaintiffs do not even plausibly allege that they themselves used Google Play; but even if they had, a warning would have made no difference, as Plaintiffs' own allegations are that they downloaded Snapchat because they were *coerced* to do so by the perpetrators, not because of anything Google did. *Id.* at 7. Nor do Plaintiffs address Google's other arguments, including that there is no liability for failure to warn about risks of expressive media or about rare or

---

[2] Plaintiffs' assertion that "dangerous apps like Snapchat and Chitter are only downloadable through either Google Play or Apple App Store" (Opp. at 18) is false, as is the implied assertion that apps cannot be sideloaded onto phones. These assertions are not made anywhere in the FAC, and should not be considered in ruling on the MTD. *Lounge v. Midvale Indem. Co.*, 2022 WL 316674, at *2 (S.D. Cal. Feb. 2, 2022).

non-specific harms, like the abstract possibility that a third-party predator might use a communications app to commit crimes (which, in any event, would still not be a warning about a risk arising from Google's "product"). *Id.* at 6-7.

Plaintiffs grossly mischaracterize the only case they cite, *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) (Opp. at 20)—which was about a website's alleged negligent failure to warn of highly specific threats from particular perpetrators known to the website operators. As in *Lemmon*, the Ninth Circuit's decision in *Internet Brands* was limited to the issue of whether Section 230 barred the claim. The court made clear that it "express[ed] no opinion on the viability of the failure to warn allegations" and expected the parties would contest that issue on remand. 824 F.3d at 850, 854. And that is exactly what happened: the district court *dismissed* the case on remand after concluding that the defendants had *no* duty to warn their users. 2016 U.S. Dist. LEXIS 192144, at *14 (C.D. Cal. Nov. 14, 2016). The Court should reach the same result here.

C.   **Plaintiffs' Negligence Claim Fails As A Matter Of Law**

In its MTD, Google showed that Plaintiffs' negligence claim fails because they have not plausibly alleged the breach of any duty to users of Google Play. MTD at 8-11. Plaintiffs again ignore these arguments and the extensive authority supporting them. Without any cognizable duty (or breach), Plaintiffs' claim must be dismissed. *See, e.g.*, *Internet Brands*, 2016 U.S. Dist. LEXIS 192144, at *14; *Jackson*, Ex. A at 11-15 (dismissing negligence claim and holding that Airbnb had no legal duty to protect users against gun violence at a property it listed for rent).

As with Plaintiffs' strict liability claims, the negligence claim also fails for the independent reason that Plaintiffs do not show that Play was a "substantial factor" in causing their injury. MTD at 11. Plaintiffs again barely address causation, offering only the conclusory argument that Google is liable because "[its] tools ignore customers' warnings while recommending such apps to more users would cause more danger and harm[.]" Opp. at 21. But the harms at issue—distribution of CSAM, grooming, and sex abuse—were perpetrated by third-party criminals on third-party apps. They have nothing

to do with Google Play, particularly because the FAC cannot bring itself to allege that any particular Plaintiff actually used Play, let alone downloaded any relevant app because of Google's alleged negligence. MTD at 11; *Jackson*, Ex. A at 16-17 ("there is no meaningful connection between the alleged failures of Airbnb and the incident," and explaining that "Airbnb is not responsible for not outlawing illegal conduct").

### D. Plaintiffs' Fraud-Based Claims Fail As A Matter Of Law

Plaintiffs concede that their California Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), Colorado Consumer Protection Act ("CCPA"), and Kentucky Consumer Protection Act ("KCPA") claims must meet Rule 9(b)'s heightened fraud pleading standard. Opp. at 21-23. But the FAC does not allege any facts that "state with particularity the circumstances" of a violation of these statutes. Fed. R. Civ. P. 9(b). Instead, Plaintiffs assert that they meet Rule 9(b)'s strict standard because Google's Privacy Policy states that it collects user data to "[p]rotect Google, our users, and the public," and that it is "plausibl[e]" that Plaintiffs relied on that statement. Opp. at 23-24.[3]

This argument fails for two independent reasons. *First*, whether it is "plausible" that one of the Plaintiffs *may* have read Google's Privacy Policy is not the right question under Rule 9(b). What matters is whether Plaintiffs actually pleaded that they *did* read and rely on the allegedly misleading statement. MTD at 12-13 (citing, *inter alia*, *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014)). Even the cases Plaintiffs cite say as much. Opp. at 21-23; *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1079 (S.D. Cal. 2019) (finding "it sufficient that Plaintiff alleges [that] … [she] relied upon Defendant's representations"); *Crowe v. Tull*, 126 P.3d 196, 210 (Colo. 2006) (plaintiff's alleged injury was "based on his reliance on the allegedly false or misleading advertising"); *Kempf v. Lumber Liquidators, Inc.*, 2017 WL 4288903, at *5 (W.D. Ky.

---

[3] The FAC tried to premise these claims on Google's Developer Policy. But that Policy cannot give rise to a claim for misrepresentation, because—among other things—it governs Google's relationship with developers, not the public. MTD at 12. Plaintiffs do not respond and thus have abandoned any claim based on the Developer Policy.

Sept. 27, 2017) (defendants "caused [the plaintiff] harm because she decided to purchase the floor … based on the representations listed above"). The FAC's failure to allege that basic fact with particularity dooms their claims.

*Second*, even if Plaintiffs had adequately pleaded that they actually read and relied on the Privacy Policy, their claim still would fail. That Policy does not remotely say (or even suggest) that Google will never publish, or will immediately remove, any third-party app that might be misused by bad actors or that might enable criminals to create or exchange CSAM. Nor could it—as that would sweep in almost any application that permits communication. *See* MTD at 12. Instead, the stated purpose of the Privacy Policy is to advise users of one of the general reasons that Google collects user data. It is not any sort of promise or representation that Google will protect a given user from risks associated with third-party apps. FAC ¶ 158. Indeed, nothing in the Privacy Policy suggests that Google is even able to monitor what happens on third-party apps like Snap or Chitter; to the contrary, the policy refers to collecting information from *Google's* services. *See* https://policies.google.com/privacy#infocollect (emphasis added).[4]

The Court could stop there, but Plaintiffs also lack standing under the UCL and FAL, and Plaintiff C.A. lacks standing under the KCPA. MTD at 13-14. Plaintiffs do not respond to Google's arguments about the KCPA, and thus concede the point. As for the UCL and FAL, Plaintiffs claim they suffered "loss of personal data, mental and emotional suffering and costs for hospitals, treatments, and more" (Opp. at 27), ignoring the extensive authority holding that physical injuries and psychological harm do not establish a loss of "money or property" under the UCL. MTD at 13-14. In any event, medical bills and other damages are not restitutionary, as required by the UCL. *See, e.g., Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution").

---

[4] Because the FAC extensively cites the Google Privacy Policy, the court may treat it as incorporated into the pleading. *See Hammerling v. Google LLC*, 2022 WL 2812188, at *3 (N.D. Cal. July 18, 2022).

GOOGLE'S REPLY ISO MOTION TO DISMISS FAC     6     3:22-cv-00619-LAB-MDD

## II.     SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS

### A.     Plaintiffs Seek To Hold Google Liable As A Publisher

While Plaintiffs' claims fail on their own, they are also barred by Section 230, and Plaintiffs' attempt to avoid the immunity is equally unpersuasive. Plaintiffs barely engage with the arguments and authority in Google's MTD, which explained that an app store's content moderation and recommendation practices are core publisher activities protected by Section 230. MTD at 15-17.

**First**, citing *Lemmon v. Snap* and *A.M. v. Omegle.com*, Plaintiffs contend that Section 230 does not apply because the "core" claim of the FAC was that "the inherently dangerous design of Defendants' products … can be made safer without altering third-party content." Opp. at 4. But only pages later, Plaintiffs admit what was plain all along: their actual goal is to use their product design claims to hold Google liable for the "facilitation of sale and recommendation of inherently dangerous apps." *Id.* at 6.

Using product design claims as a fig leaf for attacking the publication of third-party content is precisely the sort of "creative pleading" that the Ninth Circuit warned about in *Lemmon*, when it distinguished that case from those where "creative pleading has posed a concern [because] the plaintiff's claims … depended on a third party's content." 995 F.3d at 1094; *see also A.M. v. Omegle.com, LLC*, 2022 U.S. Dist. LEXIS 123695, at *8 (D. Or. July 13, 2022) (plaintiffs' claims did not depend on Omegle's decision to "review … or withdraw any third-party content."). Here, Plaintiffs' theory of liability is entirely dependent on third-party content—both the apps themselves (Snapchat and Chitter) and the content allegedly transmitted on those apps. That is the heartland of what Section 230 protects, *see Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019)—even when the claim is cloaked in the garb of products liability, *see, e.g.*, *Jackson*, Ex. B at 5 (distinguishing *Lemmon* and applying Section 230 to dismiss claim that Snapchat was negligently designed because it failed to monitor gun sales on its platform as "just a claim that Snap did not properly monitor and curb third-party content"); *Anderson v. TikTok, Inc.*, 2022 WL 14742788, at *4 (E.D. Pa. Oct. 25, 2022) (product

liability claims premised on TikTok's recommendation of third-party content "directly implicate[d] the manner in which [TikTok] [has] chosen to publish third-party content" and thus were barred by Section 230); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021) (Section 230 barred design defect claim that was "based on how well Twitter has designed its platform to prevent the posting of … child pornography and to remove that content after it is posted").[5]

**Second,** Google's "recommendation algorithms and search functions" did not "materially contribute[]" to the illegality of the third-party content. Opp. at 7, 9. Again, Plaintiffs do exactly what the Ninth Circuit has warned about: "Plaintiff[s] misread[] *Roommates.com* when [they] argue[] it holds that a website develops content if it manipulates the content in a unique way through content-neutral tools." *Dyroff*, 934 F.3d at 1098. The "material contribution" exception to Section 230 is narrow, and the Ninth Circuit has expressly held that the algorithmic display and recommendation of third-party content does not "materially contribute" to the illegality of that content. MTD at 17; *Dyroff*, 934 F.3d at 1099; *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1271 (9th Cir. 2016) ("[D]issemination of content does not equal creation or development of content."). Here, as in *Carafano v. Metrosplash.com, Inc.*—cited by Plaintiffs—Google "did not play a significant role in creating, developing, or transforming relevant information." Opp. at 7-8 (citing 339 F.3d 1119, 1125 (9th Cir. 2003)); *accord Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1171 (9th Cir. 2008) (explaining that Section 230 barred the claims in *Carafano* because the defendant "provided neutral tools … indeed, the defamatory posting was contrary to the website's express policies").

Nor does the alleged sale of third-party apps make this case anything like a "vacation rental platform's bookings of unlicensed properties in [*HomeAway.com v. City*

---

[5] Contrary to Plaintiffs' assertion, holding Google liable in this case would not comport with the "goals and intent of Section 230" to "encourage voluntary monitoring," Opp. at 12. The whole point of Plaintiffs' lawsuit is to *coerce* Google to remove apps like Snapchat from its platform because they disagree with Google's moderation decisions.

*of Santa Monica*, 918 F.3d 676 (9th Cir. 2018)]"—a contention Plaintiffs make with no analysis of how the court's reasoning applies to this case. Opp. at 6. *HomeAway* is inapposite: the unlawful conduct in that case was processing rental transactions for properties that were not on a government-approved list. *See* 918 F.3d at 682. As the Ninth Circuit explained, the ordinance at issue "[did] not require the Platforms to review the content provided by the hosts of listings on their websites"—and websites could comply with the law without in any way monitoring or removing third-party content. *Id*. That is not the situation here: Plaintiffs expressly seek to hold Google liable for alleged failures to monitor and remove third-party apps that developers upload to Play.

***Third***, Plaintiffs' argument that Section 230 does not bar their failure to warn claim relies on *Internet Brands* (Opp. at 10-11), which is readily distinguishable. *Internet Brands* concerned a website that had actual knowledge—not from postings on its site—that specific criminals were using the site to stalk women. 824 F.3d at 848-49. The plaintiffs sought to hold the website liable for failing to warn about this specific, known risk. *Id.* at 849. The case (and the demanded warnings) had nothing to do with dangerous or illegal content—it was about bad users who were not alleged to have posted or created any content on the website. *Id.* at 851. In that unique context, the Ninth Circuit narrowly held that Section 230 did not apply because plaintiffs did not seek to hold the site liable for monitoring (or failing to monitor) postings on the site or for failing to warn about the dangers of third-party content. *See id.* at 851-52 ("[The] failure to warn claim has nothing to do with Internet Brands' efforts, or lack thereof, to edit, monitor, or remove user generated content."). Here, in contrast, Plaintiffs seek to hold Google liable for failing to warn them about (non-specific) potential dangers associated with third-party apps published on Google's service, and the content published through those apps. That claim is expressly premised on liability for monitoring "third-party reviews" about the apps in question. Opp. at 11. *Internet Brands* only confirms that this claim is barred. *See* 824 F.3d at 851 ("Internet Brands is also not alleged to have learned of the predators' activity from any monitoring of postings on the website, nor is its failure to monitor postings at issue.").

### B. Recent Ninth Circuit Authority Forecloses Plaintiffs' TVPRA Claim

In a decision issued after Google filed its MTD, the Ninth Circuit resolved the scope of FOSTA's Section 230 exemption: "for a plaintiff to invoke FOSTA's immunity exception, she must plausibly allege that the ***website's own conduct violated section 1591***." *Reddit*, 2022 WL 13743458, at *4 (emphasis added). Under this standard, the website must "knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities. Mere association with sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation." *Id.* at *7.

*Reddit* forecloses Plaintiffs' TVPRA claim. Plaintiffs have not come close to alleging that Google's conduct amounts to a criminal violation of 18 U.S.C. § 1591. MTD at 22-23. Plaintiffs barely suggest otherwise, instead relying on the negligence standard that the Ninth Circuit has now squarely rejected. Opp. at 14. Plaintiffs' only argument about § 1591 is that Google supposedly has knowledge of sex trafficking because it "represent[s] that [it is] monitoring apps to reject content that violates [its] guidelines such as illegal activity of CSAM distribution and sexual grooming." Opp. at 17. But even if user reviews indicate concerns about content exchanged on third-party apps, that does not remotely indicate that allowing the apps to remain on Play violates § 1591. In *Reddit*, the Ninth Circuit held that Reddit did not violate § 1591 even though (among other things) it was accused of "highlight[ing] subreddits that feature child pornography … and fail[ing] to remove child pornography even when users report it." 2022 WL 13743458, at *7. Such "allegations suggest only that Reddit 'turned a blind eye' to the unlawful content … not that it actively participated in sex trafficking." *Id*. at *8. The allegations against Google are even weaker: Play is an app store, not a platform for the exchange of user content; Plaintiffs identify no actual CSAM on Play that Google failed to remove; and they do not suggest that Google knowingly supported and knowingly benefitted from sex trafficking.

### III. CONCLUSION

The claims against Google should be dismissed with prejudice.

|  |  |  |
|---|---|---|
| 1 |  | Respectfully submitted, |
| 2 | Dated: November 7, 2022 | WILSON SONSINI GOODRICH & ROSATI |
| 3 |  | Professional Corporation |

By: */s/ Brian M. Willen*
Brian M. Willen, N.Y. State Bar No. 4191730 (*pro hac vice*)
Benjamin D. Margo, N.Y. State Bar No. 5318944 (*pro hac vice*)
Vivek V. Tata, N.Y. State Bar No. 5480470 (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Email: BWillen@wsgr.com
  BMargo@wsgr.com
  VTata@wsgr.com

Natalie J. Morgan, SBN 211143
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real
San Diego, CA 92130
Email: NMorgan@wsgr.com

*Attorneys for Defendant Google LLC*

# CERTIFICATE OF SERVICE

The undersigned certifies that on November 7, 2022, **DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** was filed with the Clerk of the U.S. Court for the Southern District of California, in compliance with L.R. 5.2 and using the Court's electronic filing system (ECF), in compliance with L.R. 5.4.

Dated: November 7, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Brian M. Willen*
Brian M. Willen, N.Y. State Bar No. 4191730
(*pro hac vice*)
Email: BWillen@wsgr.com

*Attorneys for Defendant Google LLC*