MORRISON & FOERSTER LLP
Jessica L. Grant (CA SBN 178138)
Michael Burshteyn (CA SBN 295320)
Ernesto Rojas Guzman (CA SBN 339964)
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000

MORRISON & FOERSTER LLP
J. Alexander Lawrence (CA SBN 208715)
Tamara Wiesebron (CA SBN 338967)
250 West 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000

Attorneys for Defendant
SNAP INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.W., *minor child through her legal guardian Jane Doe, on behalf of herself and all others similarly situated;* C.A., *minor child through her legal guardian John Doe I, on behalf of herself and all others similarly situated;* C.O. *minor child through her legal guardian John Doe II, on behalf of herself and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>SNAP INC., APPLE INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 3:22-cv-00619-LAB-MDD<br><br>**DEFENDANT SNAP INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hon. Larry Alan Burns<br>Date Action Filed: May 2, 2022<br><br>Date: November 15, 2022<br>Time: 11:15 a.m.<br>Courtroom: 14A |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................ 1

    I.    CDA § 230 immunizes Snap from liability for third-party criminal acts. ............................................................................................ 2

        A.    The Opposition ignores binding Ninth Circuit authority. .......... 2

        B.    Plaintiffs' claimed product liability exception to § 230 has no support in the law................................................................. 2

        C.    Plaintiffs' claimed failure to warn exception to § 230 has no support in the law................................................................. 6

        D.    Plaintiffs' claim that Snap materially contributed to the harmful content misstates the law. ............................................. 6

        E.    Plaintiffs' claims against Snap go to the core of what Congress intended § 230 to immunize. ...................................... 7

        F.    Recent Ninth Circuit authority forecloses Plaintiffs' TVPA claim. ................................................................................ 8

    II.    Nothing in the Opposition changes the fact that Plaintiffs fail to state a claim for any cause of action. ...................................................... 8

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.M. v. Omegle.com, LLC*,
   No. 3:21-CV-01674-MO, 2022 WL 2713721 (D. Or. July 13, 2022) .................. 3

*Anderson v. TikTok, Inc.*,
   No. 22-1849, 2022 WL 14742788 (E.D. Pa. Oct. 25, 2022) ........................... 3, 6

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) .............................. 5

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ................................................................................ 7

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016) ............................................................................. 6, 9

*Doe No. 14 v. Internet Brands, Inc.*,
   No. CV-12-3626-JFW, 2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) ....................................................................................................... 9

*Doe v. Kik Interactive, Inc.*,
   482 F. Supp. 3d 1242 (S.D. Fla. 2020) .................................................................. 6

*Doe v. Snap, Inc.*,
   No. H-22-00590, 2022 WL 2528615 (S.D. Tex. July 7, 2022) ............................ 3

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021) ............................................................... 3, 7

*Does v. Reddit, Inc.*,
   No. 21-56293, 2022 WL 13743458 (9th Cir. Oct. 24, 2022) ............................ 1, 8

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ...................................................................... *passim*

*Dyroff v. Ultimate Software Grp., Inc.*,
   No. 17-CV-05359-LB, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017), *aff'd,* 934 F.3d 1093 (9th Cir. 2019) ......................................................... 4

*In re Facebook, Inc.*,
  625 S.W.3d 80 (Tex. 2021) .................................................................................... 6

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) (en banc) ...................................................... 4, 6, 7

*Fields v. Twitter, Inc.*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd,* 881 F.3d 739 (9th
  Cir. 2018) .............................................................................................................. 4

*G.G. v. Salesforce.com, Inc.*,
  No. 20-cv-02335, 2022 WL 1541408 (N.D. Ill. May 16, 2022) .......................... 5

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021), *cert. granted*, No. 21-1333, 2022 WL
  4651229 (U.S. Oct. 3, 2022) .......................................................................... 1, 2, 7

*Herrick v. Grindr, LLC*,
  306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d
  Cir. 2019) .............................................................................................................. 6

*Jackson v. Airbnb Inc.*,
  No. CV-22-3084-DSF(JCx) (C.D. Cal. Nov. 4, 2022) (Order
  Granting Snap Inc.'s Motion to Dismiss) (ECF No. 33) ................................. 3, 4

*Jackson v. Airbnb Inc.*,
  No. CV-22-3084-DSF(JCx) (C.D. Cal. Nov. 4, 2022) (Order
  Granting Snap Inc.'s Motion to Compel Arbitration and Stay
  Proceedings and Granting Motion to Dismiss) (ECF No. 34) ............................ 9

*Lemmon v. Snap Inc.*,
  995 F.3d 1085 (9th Cir. 2021) .......................................................... 2, 3, 4, 11

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
  No. 20-cv-06703-TSH, 2021 WL 151978 (N.D. Cal. Jan. 18, 2021) ................ 10

*Loomis v. Slendertone Distribution, Inc.*,
  420 F. Supp. 3d 1046 (S.D. Cal. 2019) .............................................................. 10

*M.L. v. craigslist, Inc.*,
  No. C19-6153, 2022 WL 1210830 (W.D. Wash. Apr. 25, 2022) ................... 4, 5

*Pennie v. Twitter*,
  281 F. Supp. 3d 874 (N.D. Cal. 2017) ................................................................. 5

*Thompson v. County of Alameda*,
  27 Cal. 3d 741 (1980) .................................................................................. 9

*Winter v. G.P. Putnam's Sons*,
  938 F.2d 1033 (9th Cir. 1991) ..................................................................... 9

**Statutes**

18 U.S.C. § 1591 ................................................................................................ 8

47 U.S.C. § 230 ......................................................................................... *passim*

Cal. Bus. & Prof. Code § 17204 ...................................................................... 10

Ky. Rev. Stat. § 367.220 .................................................................................. 10

# INTRODUCTION

In an attempt to stave off dismissal, Plaintiffs completely ignore binding Ninth Circuit authority clearly holding that claims such as theirs are precluded by § 230. In *Dyroff* and *Gonzalez*,[1] neither of which Plaintiffs acknowledge, the Ninth Circuit held that interactive services like Snap cannot be liable for harm caused by third-party messages and content transmitted through their platforms. In *Dyroff*, the Ninth Circuit held that § 230 immunized a platform on which a criminal anonymously messaged others—in a chat room labeled "I Love Heroin"—to sell drugs leading to a fatal overdose. In *Gonzalez*, the Ninth Circuit held that § 230 precludes claims against Google arising out of pro-ISIS videos that allegedly spurred terrorist attacks. Cognizant that this binding authority dooms their claims, Plaintiffs treat the cases as if they do not exist.

With no path forward under the applicable law, Plaintiffs resort to misconstruing the cases they do cite, fabricating legal tests that are not grounded in case law, and misstating the purpose of § 230. Plaintiffs also double down on their false and inflammatory allegations about how Snapchat functions. These allegations are now the subject of a pending Rule 11 Motion. (ECF No. 67.)

Plaintiffs also press an interpretation of the Trafficking Victims Protection Act exception to § 230 that the Ninth Circuit has squarely rejected. *See Does v. Reddit, Inc.*, 2022 WL 13743458 (9th Cir. Oct. 24, 2022). Under this binding authority, merely alleging that an interactive computer service had *constructive* knowledge of sex trafficking is not enough to establish liability under the TVPA and is therefore insufficient to bring claims within the narrow TVPA exception to § 230. Instead, Plaintiffs must allege that the service *knowingly participated in or knowingly benefitted from* a specific, known sex trafficking venture. Because they have not—and cannot—allege any such facts, § 230 bars Plaintiffs' TVPA claim.

---

[1] *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019); *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021), *cert. granted*, 2022 WL 4651229 (U.S. Oct. 3, 2022).

**I.     CDA § 230 immunizes Snap from liability for third-party criminal acts.**

**A.     The Opposition ignores binding Ninth Circuit authority.**

Ninth Circuit precedent—which Plaintiffs ignore—clearly holds that, no matter how artfully the allegations are pled, if third-party content ultimately causes the harm, then § 230 provides immunity. In *Dyroff*, the Ninth Circuit dismissed claims against an anonymous online discussion forum arising out of a fatal drug sale arranged on the platform. (Mot. 9:18-21, 15:24-16:10). *Dyroff* is on all fours and completely undercuts Plaintiffs' claims. The site in question allowed users to create themed chat rooms (including one labeled "I Love Heroin"), used algorithms to steer users to those forums, and allowed users to sign up without any identifying information so they could communicate in complete anonymity. Nonetheless, the Ninth Circuit held that the site could not be liable for a fatal overdose resulting from a drug sale arranged on the site because the harm (the overdose) was caused by content (an offer to sell drugs) posted by a third party to the site. Plaintiffs ignore the case entirely. Likewise, Plaintiffs ignore the decision the Ninth Circuit issued last year in *Gonzalez*, holding that Google could not be held liable for harm stemming from pro-ISIS related content posted on YouTube. (Mot. 9:12-17; 15:13-24.)

**B.     Plaintiffs' claimed product liability exception to § 230 has no support in the law.**

Trying to get past § 230 immunity on their product liability claim, Plaintiffs manufacture their own test out of whole cloth, claiming that § 230 is inapplicable where (1) a product design can be made safer without altering third-party content, (2) the alleged designs encourage the harmful conduct alleged, and (3) the defendants were informed of criminal activity on their platforms by a third-party source. (Opp. 4-7.) Plaintiffs' proffered test is unmoored from the law.

Although Plaintiffs claim that *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) provides support, the case holds no such thing. The *Lemmon* holding hinged

on the Ninth Circuit's conclusion that the harm was completely **unrelated** to third-party content; unlike here, the alleged harm in *Lemmon* came *directly* from the design feature (a speedometer filter), not from any third-party content. *Lemmon* actually undercuts Plaintiffs' claims. The *Lemmon* Court emphasized that § 230 would, and does, apply when a plaintiff attempts to hold the online platform liable for "content that third parties generate." *Id.* at 1093-94. Indeed, "the [p]arents" in *Lemmon* "would not be permitted under 230(c)(1) to fault Snap for publishing other Snapchat-user content (*e.g.*, snaps of friends speeding dangerously)[,]" even if that "incentivized" "dangerous behavior[,]" because that "would treat Snap as a publisher of third-party content, contrary to [the Ninth Circuit's] holding[.]" *Id.* at fn. 4. Yet, that is precisely what Plaintiffs attempt to do here.[2]

Recognizing the limits of *Lemmon*, multiple courts have rejected products liability claims where, like here, the plaintiffs sought to rely on *Lemmon* notwithstanding that the harm arose from third-party content on the site.[3] Just last week, a district court distinguished *Lemmon* in dismissing a claim against Snap about gun sales allegedly arranged through Snapchat. *Jackson v. Airbnb Inc.*, No. CV-22-3084-DSF (C.D. Cal. Nov. 4, 2022) (ECF No. 33). The plaintiffs there, like here, "tr[ied] to avoid Section 230 immunity, insisting, in the *Lemmon* lingo,

---

[2] As to Plaintiffs' reliance on the non-binding decision in *Omegle*, there the platform's stated purpose was to enable "strangers" to talk with each other, and it randomly connected children with adults. *A.M. v. Omegle.com, LLC*, 2022 WL 2713721, at *1 (D. Or. July 13, 2022). Snap has never billed itself as a way to meet strangers, Snapchat does not work like Omegle, and Plaintiffs do not allege otherwise.

[3] *See, e.g., Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 929 (N.D. Cal. 2021) (rejecting products liability claim "based on the theory that Twitter's platform is unreasonably dangerous and therefore defective because it is designed so as to make it easy for child predators and sex traffickers to quickly disseminate CSAM on a wide scale while making it difficult to report or block the dissemination of such material"); *Doe v. Snap, Inc.*, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022) (rejecting claim "that Snapchat designed its product with features that allegedly created the opportunity for [perpetrator] to send illicit messages to Doe"); *Anderson v. TikTok, Inc.*, 2022 WL 14742788, at *4 (E.D. Pa. Oct. 25, 2022) (recognizing the *Lemmon* case does not overcome § 230 immunity where the products liability and negligence claims arose out of harm caused by third-party content on the site, namely the promotion to minors of blackout challenge videos on TikTok that lead to the death of a young girl).

1  that they [were] seeking to hold Snap liable for Snap's actions and negligent
2  design." *Id.* at *5.  The court found that "no matter how it is dressed up," however,
3  "the negligent design claim is just a claim that Snap did not properly monitor and
4  curb third-party content on its platform." *Id.*  This was "exactly the sort of case for
5  which Section 230 provides an impenetrable shield." *Id.*  So too with Plaintiffs'
6  claims here.

7        Moreover, as to each aspect of Snap's service that Plaintiffs claim to be
8  defective, on-point precedent requires § 230 immunity.

9        <u>Identity verification and background checks</u>.  Plaintiffs concede that no
10  online platform outside of regulated financial services verifies and background
11  checks its users.  (Mot. 12:23-13:1-2.)  Plaintiffs do not distinguish *M.L. v.*
12  *craigslist*, which holds that "fail[ure] to verify the identity of posters" is
13  "insufficient" to overcome § 230.  2022 WL 1210830, at *16 (W.D. Wash. Apr. 25,
14  2022).  They also ignore *Fields v. Twitter*, which observed that requiring
15  background checks would be a major "exception to CDA's protections,"
16  "fundamentally change" how internet platforms work, and have a "chilling effect
17  on Internet free speech."  217 F. Supp. 3d 1116, 1129 (N.D. Cal. 2016), *aff'd,* 881
18  F.3d 739 (9th Cir. 2018).  "[P]roviding accounts . . . is publishing activity, just like
19  monitoring, reviewing, and editing content." *Id*. at 1123.  Plaintiffs have no
20  response to *Dyroff* either, which explained that while the anonymous platform
21  required no identifying information from users to open an account, holding the
22  platform liable for a user's drug overdose would "open[] the floodgates of
23  litigation" against platforms for not preventing every crime. *Dyroff v. Ultimate*
24  *Software Grp., Inc.*, 2017 WL 5665670, at *14 (N.D. Cal. Nov. 26,
25  2017), *aff'd,* 934 F.3d 1093 (9th Cir. 2019).

26        <u>Screening and censoring all private messages</u>.  Plaintiffs fail to address that
27  the Ninth Circuit has already held that screening and "deciding whether to exclude
28  material" posted by "third parties" is "perforce immune under section 230." *Fair*

*Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc); *see also* Mot. 14:1-3.

<u>Quick Add</u>.  Even accepting Plaintiffs' false allegations about how Quick Add works as true at this stage—which they are not—the Ninth Circuit has already ruled that "functions" that "recommend[]" users are "tools meant to facilitate the communication and content of others [and] not content in and of themselves." *Dyroff*, 934 F.3d at 1098; *see also* Mot. 15-16.  Plaintiffs also have no response to *craigslist*, which holds that "allowing users to filter by geographic area" does not turn an online platform into a content creator such that it could be liable for any subsequent harm.  2022 WL 1210830 at *16.

<u>Multiple accounts</u>.  Plaintiffs have no response to *Pennie v. Twitter*, which expressly held that an online platform cannot be held "liable for not taking steps to prevent blocked users from returning" with "new account names."  281 F. Supp. 3d 874, 890 (N.D. Cal. 2017).

<u>Ephemeral messaging</u>.  Plaintiffs have no explanation for how Snap can be liable for ephemeral messaging, when telephone manufacturers, and other communications platforms in *craigslist* ("messaging system" was a "neutral tool") and *Dyroff* (confidential messaging supported "online privacy") would not be similarly liable under § 230.  Plaintiffs also fail to respond to the *Salesforce* ruling that in the CSAM context, "courts have consistently found that § 230 bars imposing liability on a provider of messaging[.]"  *G.G. v. Salesforce.com, Inc.*, 2022 WL 1541408, at *6 (N.D. Ill. May 16, 2022); *see also* (Mot. 8-15.)  Indeed, imposing liability on Snap for its decision as to how long messages remain by default on the platform would implicate a prototypical publishing function protected by § 230. *See, e.g., Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ("removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove").

### C. Plaintiffs' claimed failure to warn exception to § 230 has no support in the law.

Plaintiffs contend that § 230 immunity does not apply when the platform fails to warn users about dangerous crimes. (Opp. 10.) Again, this is not the law. If it were, a plaintiff could always get around § 230 by claiming an online platform failed to warn about harmful third-party content on the site.

In support of their argument, Plaintiffs mischaracterize the Ninth Circuit's holding in *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016). There, the alleged failure to warn did ***not*** arise from content on the site. Rather, the harm resulted from a criminal drug and rape scheme committed off the site by criminals who posted *nothing* to the site. Here in contrast, Plaintiffs seek to hold Snap liable for failing to warn about posted content. Plaintiffs' failure to warn claim, like in *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018), relies on a "close connection between the proposed warning and user-generated content." (Mot. 21:22-26). As in *Grindr*, courts routinely distinguish *Internet Brands* where such a claim implicates protected publishing functions based on § 230.[4]

### D. Plaintiffs' contention that Snap materially contributed to the harmful content misstates the law.

Plaintiffs contend that Snap loses § 230 immunity because it "materially contributed" to the harmfulness of the content at issue. This misstates the law. This court would have to find that Snap had a hand in creating the *substance* of the content, which it clearly did not. *Roommates,* 521 F.3d at 1168. In *Roommates*, which Plaintiffs misconstrue, the Ninth Circuit found that the site effectively

---

[4] *See, e.g., Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020) (holding "[b]y contrast [to *Internet Brands*], in this case Plaintiff's failure to warn claims are inextricably linked to the harmful content solicited and posted by Kik's users"); *In re Facebook, Inc.*, 625 S.W.3d 80, 93 (Tex. 2021) (holding alleged failures to "'implement any safeguards to prevent adults from contacting minors,' 'report suspicious messages,' 'warn[] of the dangers posed by sex traffickers,' or 'identify[] sex traffickers on its Platforms'," . . . "'treat[]' Facebook 'as the publisher or speaker' of third-party communication and are therefore barred"); *Anderson*, 2022 WL 14742788, at *4 (recognizing that *Internet Brands* does not stand for the proposition that a duty to warn of harmful content on a site evades § 230 immunity).

created the offending content by designing an apartment search system that *mandated* the inclusion of specific pieces of personal information used to discriminate against protected classes seeking housing. Snap does nothing of the sort. Instead, Snap is more like the platform in *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003), where the platform classified users' characteristics and collected responses to questions but was held not responsible for the "misinformation" posted to the site by a user because it had no hand in creating the illegal content. Here, Snap is a neutral messaging tool, nothing more; it is not alleged to have had any hand in the creation of the offensive messages that led to Plaintiffs' harm.[5]

### E. Plaintiffs' claims against Snap go to the core of what Congress intended § 230 to immunize.

Section 230 is meant to provide interactive computer services like Snap freedom to enable online communications without becoming mired in litigation every time communications result in harm. Plaintiffs misrepresent Congressional intent on this issue—claiming that Congress's goal was to force companies to police their platforms and monitor all private communications. (Opp. 12.) This is flatly wrong. Congress actually sought to (1) "promote the continued development of the Internet"; (2) "encourage the development of technologies which maximize user control over what information is received by individuals [and] families"; and (3) "remove disincentives for the development and utilization of blocking and filtering technologies[.]" *Twitter*, 555 F. Supp. 3d at 897; *see also* Mot. 19:8-15.

Plaintiffs' theory—which seeks to hold an innovative messaging platform liable for crimes committed by third parties who used it—would violate that intent and discourage development of innovative technologies. Plaintiffs do not explain

---

[5] Plaintiffs' material contribution argument further ignores *Dyroff* and *Gonzalez*, both of which involve the use of algorithms to actively promote offending content; heroin use in *Dyroff* and ISIS content in *Gonzalez*. And both of which rejected similar material contribution claims seeking to rely on *Internet Brands*. *Dyroff,* 934 F.3d at 1099; *Gonzalez*, 2 F.4th at 893.

how Snap can be held liable but not, by corollary, email, telephone, Zoom, FaceTime, or any of the many other ephemeral communication platforms that can be and are used by criminals to carry out illegal activities.

### F. Recent Ninth Circuit authority forecloses Plaintiffs' TVPA claim.

The Ninth Circuit's recent ruling in *Reddit* disposes of Plaintiffs' TVPA claim. *Reddit*, 2022 WL 13743458, at *4. The Ninth Circuit made clear that any exception to § 230 for TVPA claims is contingent upon a plaintiff proving that a defendant-website's *own conduct*—rather than its users' conduct—resulted in a violation of 18 U.S.C. § 1591. The Opposition focuses on one side of a district court split on this question, which the Ninth Circuit has now settled in favor of Snap's arguments in its Motion. The plaintiffs in *Reddit* made a variety of allegations parallel to Plaintiffs' allegations here: they alleged that (1) child pornography on Reddit is rampant, and Reddit did little to prevent or remove the unlawful content; (2) Reddit earns substantial advertising revenue from subreddits that feature child pornography because they generate controversy and attract viewers; (3) Reddit would sometimes (though not always) remove content, only for it to be re-posted; (4) Reddit did not implement security measures, such as age verification or IP-address tracking to ban repeat offenders, and it delayed adoption of automated image-recognition technologies like "PhotoDNA," which can detect child pornography and prevent it from being posted. *Id*. at *2. The Court rejected these arguments because they did not allege Reddit's *own conduct* (rather than its users') resulted in a TVPA violation. Alleging that Reddit turned a blind eye was not enough. *Id*. at *4-*5. Here, too, Plaintiffs fail to allege that Snap *knowingly* participated or benefited from the *specific* sex trafficking ventures that harmed them; thus § 230 precludes their TVPA claim in light of *Reddit*.

### II. Nothing in the Opposition changes the fact that Plaintiffs fail to state a claim for any cause of action.

*First*, Plaintiffs fail to explain how the services they describe are tangible

*products.* Plaintiffs cite to *Winter v. G.P. Putnam's Sons,* 938 F.2d 1033 (9th Cir. 1991), but ignore that the court held that product liability law focuses on "tangible items" and does not apply to services like the Snapchat messaging application. A court confirmed Snap's position just last week, holding that "Airbnb is a platform that connects users; it is more akin to a service than to a product," and dismissing product liability claims.[6] *Jackson*, No. CV-22-3084-DSF (ECF No. 34 at *19).

*Second, Plaintiffs concede that Snap did not have a duty to warn about obvious dangers.* Relying solely on *Internet Brands*, distinguished above (*supra* Section I.C), Plaintiffs argue that Snap should have warned of sexual perpetrators on Snapchat. Because the decision in *Internet Brands* was "based entirely on the CDA," however, the Ninth Circuit *did not* analyze whether a special relationship existed to create such a duty. 824 F.3d at 850. And on remand, the *Internet Brands* court ultimately ruled that, as a website operator, "Internet Brands did not have a 'special relationship' with Jane Doe and thus did not have a duty to warn." *Doe No. 14 v. Internet Brands, Inc.*, 2016 U.S. Dist. LEXIS 192144, at *12 (C.D. Cal. Nov. 14, 2016). Moreover, the general dangers of online predators are clear to all. Additional warnings from Snap would do nothing, given that parents already "instruct[] their children to beware of strangers." *Thompson v. County of Alameda*, 27 Cal. 3d 741, 755 (1980).

*Third, Plaintiffs fail to state a claim for negligence, conceding that Snap had no duty to prevent every instance of sexual misconduct.* Plaintiffs focus only on the foreseeability element of negligence. (Opp. 20-21.) They do not address their failure to plead the other negligence elements: duty, breach and proximate causation. They also fail to cite or distinguish any of the cases Snap cited in its Motion on foreseeability, or otherwise. (Mot. at 26-27.) Indeed, as the court in

---

[6] Plaintiffs also fail to address that their allegations simply parrot the legal elements of a product liability claim and should be dismissed for that reason as well. (Opp. 17-18.)

*Dyroff* noted, "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." 934 F.3d at 1100-01.  This warrants dismissal.

*Fourth*, *Plaintiffs fail to meet Rule 9(b)'s standard.*  Plaintiffs concede that they fail to allege that they read or relied on any of Snap's statements.[7]  This alone requires dismissal of Counts IV - VIII.  Plaintiffs also do not contest that Rule 9(b) applies to their misrepresentation and consumer claims (Opp. 21:22-24), and they do not meet this heightened pleading standard.  *Loomis v. Slendertone Distrib., Inc.*, which Plaintiffs cite, confirms that Plaintiffs must plead the "who, what, when, where, and how" of Snap's statements and Plaintiffs' purported reliance, which they have not done.  420 F. Supp. 3d 1046, 1079 (S.D. Cal. 2019).  In a last-ditch attempt to allege that Snap made "false" representations, Plaintiffs mischaracterize Snap's statements and make the implausible claim that Snap promised to report all instances of child sexual exploitation, *even those instances that Snap did not know about*.  (Opp. 24:2-11, citing Snap's statement that it reports instances *of which it becomes aware* to authorities.)  Plaintiffs' threadbare consumer protection allegations are similarly insufficient as a matter of law.[8]

Finally, Plaintiffs' Opposition does not address their failure to state a claim for unjust enrichment or injunctive relief, warranting dismissal.  *See* Mot. 30:8-15.

## CONCLUSION

For the foregoing reasons, Snap requests that the Court grant its Motion to Dismiss Plaintiffs' First Amended Complaint without leave to amend.

---

[7] Plaintiffs allege that users are "prompted to read" Snap's statements and suggest that it can be "inferred" that because they are "required to read the statements, they have actually relied upon these statements." (Opp. 24.)  This is insufficient to allege that Plaintiffs actually read or relied on the statements.  *See Lona's Lil Eats, LLC v. DoorDash, Inc.*, 2021 WL 151978, at *11 (N.D. Cal. Jan. 18, 2021).

[8] Plaintiffs' failure to allege lost money or property is fatal to these claims. *See*, *e.g.*, Cal. Bus. & Prof. Code § 17204; Ky. Rev. Stat. § 367.220; *Reddit*, 2021 WL 5860904, at *9 ("there is no indication" that claims about sexual misconduct involved "lost money or property").

Dated: November 7, 2022         MORRISON & FOERSTER LLP

By: */s/ Jessica L. Grant*
JESSICA L. GRANT

Attorneys for Defendant
SNAP INC.